D. EDWARD HAYS, #162507
ehays@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for Chapter 7 Trustee,
LARRY D. SIMONS

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

In re

DAVID ROBERT STONE, dba
CORNERSTONE FINANCIAL SERVICES,

    Debtor.

Case No. 6:25-bk-12353-SY

Chapter 7

CHAPTER 7 TRUSTEE'S MOTION
FOR ORDER AUTHORIZING USE OF
CASH COLLATERAL;
MEMORANDUM OF POINTS AND
AUTHORITIES AND
DECLARATIONS LARRY D. SIMONS
AND D. EDWARD HAYS IN
SUPPORT

Hearing:
Date:    August 28, 2025
Time:    9:30 a.m.
Ctrm:    302
Place:    3420 Twelfth Street,
           Riverside, CA 92501

/ / /
/ / /
/ / /
/ / /
/ / /

# TABLE OF CONTENTS

1.  Summary of Argument ...................................................................................................1

2.  Statement of Facts .......................................................................................................2

    **A.**  Relevant Background Information.....................................................................2

    **B.**  Debtor's Secured and Purportedly Secured Creditors ...................................2

    **C.**  Proposed use of the Cash Collateral ..............................................................8

3.  Legal Argument ...........................................................................................................8

    A.  The Court may authorize the Trustee to use the Cash Collateral. ...............8

    B.  Westamerica is adequately protected by the Trustee's proposed use of the

        Cash Collateral.................................................................................................9

    C.  The proposed form of order – FRBP 4001(d)(1)(A) ...................................12

    D.  Required Local Form F4001-2.STMT.FINANCE........................................12

4.  Conclusion .................................................................................................................12

Declaration of Larry D. Simons.......................................................................................13

Declaration of D. Edward Hays .......................................................................................21

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

# TABLE OF AUTHORITIES

**Cases**

*First Federal Bank of California v. Weinstein (In re Weinstein)*,

227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) ..................................................................... 10

*General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*,

25 B.R. 987, 989-90 n.4 (Bankr. D. Utah 1982) .......................................................... 10

*In re Columbia Gas Sys., Inc.*,

146 B.R. 114 (Bankr. D. Del. 1992) ............................................................................. 10

*In re Deico Elecs., Inc.*,

139 B.R. 945, 947 (B.A.P. 9th Cir. 1992) ..................................................................... 10

*In re Heatron, Inc.*,

6 B.R. 493, 496 (Bankr. W.D. Mo. 1980) ..................................................................... 11

*In re Martin*,

761 F.2d 472 (8th Cir. 1985) ........................................................................................ 10

*In re Mellor*,

734 F.2d 1396, 1400 (9th Cir. 1984) .............................................................................. 9

*In re Pine Lake Village Apartment Co.*,

19 B.R. 819, 826 (Bankr. S.D.N.Y. 1982) .................................................................... 10

*In re Shaw Indus., Inc.*,

300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) .................................................................. 10

*In re Swedeland Dev. Group, Inc.*,

16 F.3d 552, 564 (3d Cir. 1994) ................................................................................... 10

*Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*,

808 F.2d 1393, 1397-98 (10th Cir. 1987) .................................................................... 11

*Mellor*,

734 F.2d at 1400 .......................................................................................................... 11

*O'Connor*,

808 F.2d at 1396 .......................................................................................................... 10

*Secured Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*,

   314 B.R. 436, 440 (B.A.P. 9th Cir. 2004) .......................................................... 8

*Stein v. FHA (In re Stein)*,

   19 B.R. 458, 460 (Bankr. E. D. Pa. 1982) ........................................................ 10

*Stein*,

   19 B.R. at 460 ..................................................................................................... 10

*United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*,

   484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) ................................... 10

**Statutes**

11 U.S.C. § 361(2) ...................................................................................................... 11

11 U.S.C. § 363 ....................................................................................................... 1, 9

11 U.S.C. § 363(c)(1) ................................................................................................... 1

11 U.S.C. § 363(c)(2) ................................................................................................... 9

11 U.S.C. § 363(e) ........................................................................................................ 9

11 U.S.C. §§ 361, 363(e) ........................................................................................... 10

11 U.S.C. §361 ............................................................................................................. 9

11 U.S.C. §363(c)(1) .................................................................................................... 8

11 U.S.C. §363(c)(2) .................................................................................................... 8

**Rules**

Fed. R. Bankr. P. 4001(d)(1)(A) ............................................................................... 12

Rule 4001(d)(1)(A) of the Federal Rules of Bankruptcy Procedure.......................... 12

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR, AND ALL INTERESTED PARTIES:

Larry D. Simons, in his capacity as the chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of David Robert Stone dba Cornerstone Financial Services ("Debtor"), submits this motion for an order authorizing him to use cash collateral ("Motion"), and the declaration of Larry D. Simons ("Simons Decl.") and D. Edward Hays ("Hays Decl."). In support of the Motion, the Trustee respectfully represents as follows:

## 1.    Summary of Argument

Under 11 U.S.C. § 363(c)(1), a trustee may use, sell, or lease property of the estate in the ordinary course of business without court approval. But a trustee may not use, sell or lease cash collateral unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use. A court may authorize the use of cash collateral if the secured creditor with an interest in the cash collateral is adequately protected.

Prior to the Petition Date (defined below), the Debtor's sole proprietorship, Cornerstone Financial Services ("CFS"), engaged in lease agreements and equipment financing agreements for semi-trucks and trailers. The sole secured creditor with a properly perfected security interest in the accounts receivable from the leases and equipment finance agreements ("Cash Collateral") is Westamerica Bank ("Westamerica").

To that end, the Trustee seeks authority to use the Cash Collateral to pay limited operating expenses necessary to maintain CFS's business in the ordinary course. Westamerica is adequately protected by a substantial equity cushion as according to the Debtor's Schedules A/B, the Cash Collateral is valued at over $13 million, while Westamerica asserts a secured claim of only $800,000. In addition, the Trustee intends to make monthly adequate protection payments to Westamerica and, to the extent the use of Cash Collateral diminishes the value of Westamerica's interest, the Trustee will grant Westamerica a replacement lien on the Cash Collateral.

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1    Accordingly, the Trustee asks for an order permitting the Trustee to use the Cash Collateral

2 to pay the limited operating expenses of CFS detailed in the Expense Chart (defined below) within

3 the ordinary course of CFS's business.

4 **2.    Statement of Facts**

5    **A.    Relevant Background Information**

6    On April 14, 20205 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 7

7 of Title 11 of the United States Code, commencing Case No. 6:25-bk-1253-SY ("Bankruptcy

8 Case").

9    On April 14, 2025, as Docket No. 5, Larry D. Simons was appointed as the chapter 7 trustee.

10    On April 28, 2025, as Docket No. 20, the Trustee filed a Notice of Assets.

11    On May 6, 2025, as Docket No. 30, the Trustee filed a Motion for Authority to Operate

12 Debtor's Business Under 11 U.S.C. § 721 ("Operations Motion").

13    On May 15, 2025, as Docket No. 45, the Court entered an order granting the Operations

14 Motion ("Operations Order"). Under the Operations Order, the Trustee has the authority to operate

15 Debtor's business, Cornerstone Financial Service ("CFS"), as set forth in the Operations Motion and

16 accordingly continues to operate CFS.

17    **B.    Debtor's Secured and Purportedly Secured Creditors**

18    The Debtor has one properly perfected secured creditor with a security interest in the Cash

19 Collateral, Westamerica.

20    On May 12, 2025, Westamerica filed proof of claim 9-1 asserting a secured claim in the

21 amount of $800,000 secured by "Chattel paper, accounts, and general intangibles" and describes the

22 basis of the perfection as "security agreement and UCC financing statement" ("Westamerica

23 POC").[1] In support of the Westamerica POC, Westamerica attached a copy of a commercial security

24 agreement dated November 24, 2017, wherein the Debtor and CFS granted Westamerica a security

25 interest in "All Chattel Paper, Accounts and General Intangibles." *See* Simons Decl., Ex. 1, pg. 24.

26

27

28

---

[1] A true and correct copy of the Westamerica POC is attached to the Simons Decl. as **Exhibit "1."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1  In addition, Westamerica attached a copy of a UCC-1 Financing Statement dated December 9, 2002

2  ("Westamerica Financing Statements"). *Id*., at pgs. 40-41.

3        After conducting a UCC-1 search, the Trustee located copies of continuation statements for

4  Westamerica's Financing Statement.[2] Most recently, on October 4, 2022, Westamerica filed a

5  continuation statement continuing the effectiveness of the Westamerica Financing Statement. *See*

6  Simons Decl., at Ex. 2, pg. 47. Accordingly, Westamerica perfected its security interest in the Cash

7  Collateral as of the Petition Date.

8        The Trustee understands that certain investor/creditors maintain that they are secured

9  creditors with security interests in the Leases and Equipment Finance Agreements, as detailed

10 below. *See* Simons Decl., ¶16. After conducting a UCC-1 search, the Trustee was unable to locate

11 any creditors with active UCC-1 Financing Statements for CFS.[3] *Id*. Accordingly, the Trustee

12 maintains that none of these purportedly secured creditors detailed below properly perfected their

13 security interests as of the Petition Date. *Id*.

14       On May 7, 2025, the Leachman Family Trust ("Leachman") filed proof of claim 4-1

15 asserting a secured claim in the amount of $100,000 secured by "Money loaned and evidenced by

16 Secured Note" and described the basis of the perfection as "Note and Schedule A" ("Leachman

17 POC").[4] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing

18 Statement filed by Leachman perfecting its alleged security interest in the Cash Collateral. *See*

19 Simons Decl., ¶17.

20       On May 9, 2025, Kevin Cavalli ("Cavalli") filed proof of claim 6-1 asserting a secured claim

21 in the amount of $700,000 secured by "Commercial Trucks and Trailers" and described the basis of

22 the perfection as a "Financing Statement" ("Cavalli POC").[5] After conducting a UCC-1 search, the

23

24

---

25 [2] True and correct copies of the Westamerica Financing Statement and the related continuation statements filed by Westamerica with the California Secretary of State are attached to the Hays Decl.
26 as **Exhibit "2."**

27 [3] A true and correct copy of a UCC-1 search for the Debtor is attached to the Hays Decl. as **Exhibit "3."**

28 [4] A true and correct copy of the Leachmann POC is attached to the Simons Decl. as **Exhibit "4."**
[5] A true and correct copy of the Cavalli POC is attached to the Simons Decl. as **Exhibit "5."**

1  Trustee has been unable to locate a UCC-1 Financing Statement filed by Cavalli perfecting his

2  alleged security interest in the Cash Collateral. *See* Simons Decl., ¶19.

3      On May 16, 2025, Jack Pizza ("Pizza") filed proof of claim 12-1 asserting a secured claim in

4  the amount of $100,000 secured by "Balance owing to Debtor in leased trucks" and did not describe

5  a basis for the perfection ("Pizza POC").[6] After conducting a UCC-1 search, the Trustee has been

6  unable to locate a UCC-1 Financing Statement filed by Pizza perfecting his alleged security interest

7  in the Cash Collateral. *See* Simons Decl., ¶21.

8      On June 5, 2025, Robert Terheyden ("Terheyden") filed proof of claim 15-1 asserting a

9  secured claim in the amount of $450,000 secured by "Multiple transactions" and described the basis

10 of the perfection as "Notes" ("Terheyden POC").[7] After conducting a UCC-1 search, the Trustee has

11 been unable to locate a UCC-1 Financing Statement filed by Terheyden perfecting his alleged

12 security interest in the Cash Collateral. *See* Simons Decl., ¶23.

13     On June 9, 2025, Marc Sebastian ("Sebastian") filed proof of claim 17-1 asserting a secured

14 claim in the amount of $500,000 secured by "notes on multiple semi trucks" and described the basis

15 of the perfection as "my 1099 from cornerstone and multiple emails from Dawn" ("Sebastian

16 POC").[8] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing

17 Statement filed by Sebastian perfecting his alleged security interest in the Cash Collateral. *See*

18 Simons Decl., ¶25.

19     On June 16, 2025, Barbara A. Stenning ("Stenning") filed proof of claim 21-1 asserting a

20 secured claim in the amount of $1,259,327.34 secured by "LargeTruck loans to borrowers and loan

21 amounts for each note" and described the basis for the perfecting as "financing statements"

22 ("Stenning POC").[9] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-

23 1 Financing Statement filed by Stenning perfecting her alleged security interest in the Cash

24 Collateral. *See* Simons Decl., ¶27.

25

26

[6] A true and correct copy of the Pizza POC is attached to the Simons Decl. as **Exhibit "6."**
[7] A true and correct copy of the Terheyden POC is attached to the Simons Decl. as **Exhibit "7."**
[8] A true and correct copy of the Sebastian POC is attached to the Simons Decl. as **Exhibit "8."**
[9] A true and correct copy of the Stenning POC is attached to the Simons Decl. as **Exhibit "9."**

On June 23, 2025, Patricia Ann Lateef ("Lateef") filed proof of claim 23-1 asserting a secured claim in the amount of $240,000 secured by "Receivables" and did not describe a basis for the perfection ("Lateef POC").[10] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Lateef perfecting her alleged security interest in the Cash Collateral. *See* Simons Decl., ¶29.

On June 23, 2025, Katherine L. Munson ("Munson") filed proof of claim 24-1 asserting a secured claim in the amount of $1,700,000 secured by "owners of trucks leased trucks w/ loans supplied by cornerstone/IOU the creditors" and did not describe a basis for the perfection ("Munson POC").[11] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Munson perfecting her alleged security interest in the Cash Collateral. *See* Simons Decl., ¶31.

On June 30, 2025, Desert Equity Group Inc. ("Desert Equity Group") filed proof of claim 26-1 asserting a secured claim in the amount of $250,000 secured by "lease payment streams equipment finance agreement" and described the basis of the perfection as "note attached" ("Desert Equity Group POC #1").[12] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Desert Equity Group perfecting its alleged security interest in the Cash Collateral. *See* Simons Decl., ¶33.

On July 24, 2025, Thomas Rauda ("Rauda") filed proof of claim 40-1 asserting a secured claim in the amount of $20,000 secured by a "lease-to-own truck agreement and financed purchase of 2015 Peterbilt 389" and did not describe a basis for the perfection ("Rauda POC").[13] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Rauda perfecting his alleged security interest in the Cash Collateral. *See* Simons Decl., ¶35.

On July 29, 2025, Janet H. Simkins individually and as Trustee of the Janet H. Simkins Survivor's Trust ("Simkins") filed amended proof of claim 42-2 asserting a secured claim in the

---

[10] A true and correct copy of the Lateef POC is attached to the Simons Decl. as **Exhibit "10."**
[11] A true and correct copy of the Munson POC is attached to the Simons Decl. as **Exhibit "11."**
[12] A true and correct copy of the Desert Equity POC #1 is attached to the Simons Decl. as **Exhibit "12."**
[13] A true and correct copy of the Rauda POC is attached to the Simons Decl. as **Exhibit "13."**

amount of $275,021.88 secured by "Equipment financing agreements of equipment leases agts." and described the basis of the perfection as "Constructive trust; agency" ("Simkins POC").[14] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Simkins perfecting her alleged security interest in the Cash Collateral. *See* Simons Decl., ¶37.

On July 31, 2025, Linda Marijke Bruggenkamp ("Bruggenkamp") filed proof of claim 63-1 asserting a secured claim in the amount of $4,548,674.80 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Bruggenkamp POC").[15] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Bruggenkamp perfecting her alleged security interest in the Cash Collateral. *See* Simons Decl., ¶39.

On July 31, 2025, Alan L Thomas Revocable Trust dated 6/5/2004 ("Thomas") filed proof of claim 65-1 asserting a secured claim in the amount of $350,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Thomas POC").[16] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Thomas perfecting his alleged security interest in the Cash Collateral. *See* Simons Decl., ¶41.

On July 31, 2025, Desert Equity Group filed a second proof of claim, proof of claim 66-1 asserting a secured claim in the amount of $250,000 secured by "Lease/Loan Payments/Equipment Finance Agreement" and described the basis of the perfection as "Note Attached" ("Desert Equity Group POC #2").[17] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Desert Equity Group perfecting its alleged security interest in the Cash Collateral. *See* Simons Decl., ¶43.

On July 31, 2025, Michael Joel Stone ("Michael Stone") filed proof of claim 67-1 asserting a secured claim in the amount of $1,682,843.17 secured by "Lease/Loan Payments" and described the

---

[14] A true and correct copy of the Simkins POC is attached to the Simons Decl. as **Exhibit "14."**
[15] A true and correct copy of the Bruggenkamp POC is attached to the Simons Decl. as **Exhibit "15."**
[16] A true and correct copy of the Thomas POC is attached to the Simons Decl. as **Exhibit "16."**
[17] A true and correct copy of the Desert Equity Group POC #2 is attached to the Simons Decl. as **Exhibit "17."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

basis of the perfection as "Note Attached" ("Michael Stone POC").[18] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Michael Stone perfecting his alleged security interest in the Cash Collateral. *See* Simons Decl., ¶45.

On July 31, 2025, Michael G. McGrath ("McGrath") filed proof of claim 68-1 asserting a secured claim in the amount of $1,000,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("McGrath POC").[19] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by McGrath perfecting his alleged security interest in the Cash Collateral. *See* Simons Decl., ¶47.

On July 31, 2025, Scott E. Cunningham ("Cunningham") filed proof of claim 69-1 asserting a secured claim in the amount of $750,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Cunningham POC").[20] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Cunningham perfecting his alleged security interest in the Cash Collateral. *See* Simons Decl., ¶49.

On July 31, 2025, Dmitry Erenkov and Elena Erenkov ("Erenkov") filed proof of claim 80-1 asserting a secured claim in the amount of $564,652 secured by "3rd party leases & purchase contracts per Exhibit A to Notes" and described the basis of the perfection as "Assignment in above contracts per Debtor's Schedule D" ("Erenkov "POC")[21] After conducting a UCC-1 search, the Trustee has been unable to locate a UCC-1 Financing Statement filed by Erenkov perfecting their alleged security interest in the Cash Collateral. *See* Simons Decl., ¶51.

Accordingly, the Trustee disputes the extent, validity, and priority of any alleged security interest in the Leases and Equipment Finance Agreements, other than the security interest asserted by Westamerica, which was properly perfected as of the Petition Date. *See* Simons Decl., ¶53.

---

[18] A true and correct copy of the Michael Stone POC is attached to the Simons Decl. as **Exhibit "18."**
[19] A true and correct copy of the McGrath POC is attached to the Simons Decl. as **Exhibit "19."**
[20] A true and correct copy of the Cunningham POC is attached to the Simons Decl. as **Exhibit "20."**
[21] A true and correct copy of the Erenkov POC is attached to the Simons Decl. as **Exhibit "21."**

## C.    Proposed use of the Cash Collateral

The Trustee proposes to use the Cash Collateral to pay limited operational expenses for CFS within the ordinary course of CFS's business, as set forth below ("Expense Chart"):

| Expense Description | Amount |
|---|---|
| Proposed Independent Contractors Monthly Combined Rate | $38,653.33 |
| PG&E Electricity Bill | $1,100.00 |
| Repossession Costs | $20,000.00 |
| PO Box | $50.00 |
| Adequate Protection Payment to Westamerica Bank | $10,000.00 |
| **Total** | **$69,803.33** |

*See* Simons Decl., ¶54.

In addition, the Trustee's proposes to use the Cash Collateral to make a one-time payment to the Trustee's proposed independent contractors, Dawn Stanley, Rosie Esteban, and Stephanie Molina ("Contractors"), for backpay for outstanding fees not paid from the Petition Date to present, totaling **$36,532.00** ("Backpay"). *See* Simons Decl., ¶55.

## 3.    Legal Argument

### A.    The Court may authorize the Trustee to use the Cash Collateral.

A trustee may use, sell, or lease property of the estate in the ordinary course of business without court approval. 11 U.S.C. §363(c)(1). But a trustee "may not use, sell or lease cash collateral . . . unless: (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2); *see, e.g., Secured Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 440 (B.A.P. 9th Cir. 2004).

Here, the Trustee seeks to use the cash collateral of Westamerica, specifically the accounts receivable from the Leases and Equipment Finance Agreements (defined above as "Cash Collateral") to pay limited operational expenses for CFS within the ordinary course of

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1  CFS's business. *See* Simons Decl., ¶58. Westamerica has not yet consented to the Trustee's

2  proposed use of the Cash Collateral. *Id*. Nevertheless, the proposed use of Cash Collateral may

3  be authorized because Westamerica is adequately protected, as further detailed below. *Id*.

### B.    Westamerica is adequately protected by the Trustee's proposed use of the Cash Collateral.

6       To the extent that an entity has a valid security interest in the revenues generated by property

7  of the estate, those revenues constitute "cash collateral" under § 363(a). A debtor's use of cash

8  collateral is governed by 11 U.S.C. § 363, which permits a debtor to use cash collateral only if: (a)

9  each entity having an interest in the cash collateral consents to such use; or (b) the Court, after notice

10  and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2).  In addition, 11 U.S.C. § 363(e) provides

11  that, at the request of a party with an interest in the cash collateral, the Court shall prohibit or

12  condition the use of cash collateral "as is necessary to provide adequate protection of any interest

13  asserted in the cash collateral." 11 U.S.C. § 363(e).

14       The bankruptcy court can authorize use of said cash collateral under § 363(c)(2)(B) if the

15  court determines that the debtor has provided "adequate protection" of the secured creditor's interest

16  in the cash collateral. *See e.g., In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). Although the term

17  "adequate protection" is not explicitly defined, § 361 provides that when adequate protection is

18  required, it may be provided by:

19       (1) requiring the trustee to make a cash payment or periodic cash
20           payments to such entity, to the extent that the . . . use . . . under section
             363 of this title . . . results in a decrease in the value of such entity's
21           interest in such property;

22       (2) providing to such entity an additional or replacement lien to the extent
             that such . . . use . . . results in a decrease in the value of such entity's
23           interest in such property; or

24       (3) granting such other relief . . . as will result in the realizing by such
25           entity of the indubitable equivalent in such entity's interest in such
             property.
26
11 U.S.C. §361.

27

28

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1   Section 361 does not define "interest in property" of which a secured creditor is entitled to

2   adequate protection. But the statute plainly provides that a qualifying interest demands protection

3   only to the extent that the use of the creditor's collateral will result in a decrease in the "value of

4   such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See e.g.*, *First Federal Bank of*

5   *California v. Weinstein (In re Weinstein*), 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998); *In re Deico*

6   *Elecs., Inc*., 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992); *General Electric Mortgage Corp. v. South*

7   *Village, Inc. (In re South Village, Inc*.), 25 B.R. 987, 989-90 n.4 (Bankr. D. Utah 1982).

8   The phrase "value of such entity's interest" was addressed by the Supreme Court in *United*

9   *Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd*., 484 U.S. 365, 108 S. Ct. 626, 98

10  L. Ed. 2d 740 (1988). *Timbers* instructs that a secured creditor is entitled to adequate protection only

11  against the diminution in the value of the collateral securing the creditor's allowed secured claim.

12  484 U.S. at 630. Therefore, where the value of the collateral is not diminishing by its use, sale, or

13  lease, the creditor's interest is adequately protected. Ultimately, what constitutes adequate protection

14  must be decided on a case-by-case basis. *In re Swedeland Dev. Group, Inc*., 16 F.3d 552, 564 (3d

15  Cir. 1994); *O'Connor*, 808 F.2d at 1396; *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw*

16  *Indus., Inc*., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003); *In re Columbia Gas Sys., Inc*., 146 B.R. 114

17  (Bankr. D. Del. 1992).

18  In other words, the Court may allow the Trustee's proposed use of the Cash Collateral,

19  whether consensual or not, where such use maintains, preserves or enhances the value of the

20  bankruptcy estate. For example, in *Stein v. FHA (In re Stein)*, 19 B.R. 458, 460 (Bankr. E. D. Pa.

21  1982), the court allowed a debtor to use cash collateral where the secured party was under-secured,

22  finding that the use of the cash collateral was necessary to the continued operations of the debtor and

23  the creditor's "secured position can only be enhanced by the continued operation of the [debtor's

24  business]." *Stein*, 19 B.R. at 460; *see also, In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 826

25  (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to

26  enhance the value of real property and secured creditor's claim). Further, it is well-established that a

27  bankruptcy court, where possible, should resolve issues in favor of maximizing value for all

28

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1  creditors, not just the secured creditors. *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808

2  F.2d 1393, 1397-98 (10th Cir. 1987); *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).

3  Here, the Trustee intends to pay the limited operational expenses for CFS within the ordinary

4  course of CFS's business, as set forth in the Expense Chart, and the one-time payment of the post

5  petition Backpay to the Contractors incurred at the Trustee's request to preserve the Estate's assets.

6  *See* Simons Decl., ¶¶58, 59. The Trustee proposes to pay adequate protection payments to

7  Westamerica, as well. *Id.*, ¶¶54, 59. In addition, to the extent that the Trustee's proposed use of the

8  Cash Collateral results in a decrease in the value of Westamerica's interest in the Cash Collateral,

9  the Trustee will provide Westamerica with a replacement lien against its post-petition accounts

10  receivable and inventory. *Id.*, ¶59; *see also* 11 U.S.C. § 361(2).

11  Moreover, according to the Debtor's Schedules A/B, the value of the accounts receivable for

12  the Leases and Equipment Financing Agreements is $13,792,815.25.[22] As a result, Westamerica is

13  adequately protected by a sufficient equity cushion, as its secured claim is only for $800,000. *See*

14  *e.g.*, *Mellor*, 734 F.2d at 1400 (explaining that "it has been held that the existence of an equity

15  cushion, standing alone, can provide adequate protection" and "[a] 20% cushion has been held to be

16  adequate protection for a secured creditor"). In this case, Westamerica is protected by a 94.20%

17  equity cushion, which is more than adequate based on the standard set forth in *Mellor*.

18  In addition, the Trustee contests the extent, validity, and priority of the alleged security

19  interests asserted by Leachman, Cavalli, Pizza, Terheyden, Sebastian, Stenning, Lateef, Munson,

20  Desert Equity Group, Rauda, Simkins, Bruggenkamp, Thomas, Desert Equity Group, Michael Stone,

21  McGrath, Cunningham, and Erenkov ("Purportedly Secured Creditors") because no UCC-1

22  financing statements were ever filed with respect to their alleged security interests. *See* Simons

23  Decl., ¶61.

24

25

26

27

---

28  [22] A true and correct copy of the Debtor's Amended Schedules A/B, filed on June 5, 2025, as Docket
No. 63 is attached to the Simons Decl. as **Exhibit "22."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

## C.    The proposed form of order – FRBP 4001(d)(1)(A)

Rule 4001(d)(1)(A) of the Federal Rules of Bankruptcy Procedure ("FRBP") requires that a motion for the authority to use cash collateral or for approval of a cash collateral agreement be accompanied by a proposed form of order. Fed. R. Bankr. P. 4001(d)(1)(A).

In this case, the proposed form of order is attached to the Hays Decl. as **Exhibit "23."** Thus, the Debtor has complied with the FRBP.

## D.    Required Local Form F4001-2.STMT.FINANCE

As required by Local Bankruptcy Rule 4001-2(a), the Trustee will be filing the required local form for approval of the use of cash collateral.

## 4.    Conclusion

The Trustee requests that the Court enter an order substantially in the form of the order attached as **Exhibit "23"** as follows:

(1)    Granting the Motion;

(2)    Authorizing, on a final basis, the Trustee's proposed use of the Cash Collateral to pay the monthly expenses detailed in the Expense Chart and the one-time payment of Backpay to the Contractors;

(3)    Determining that Westamerica is adequately protected by the proposed adequate protection payment, replacement lien, and sufficient equity cushion;

(4)    Granting such further relief as the Court deems just and proper.

Dated: August 7, 2025                    MARSHACK HAYS WOOD LLP

                        By:  */s/ D. Edward Hays*
                            D. EDWARD HAYS
                            AARON E. DE LEEST
                            SARAH R. HASSELBERGER
                            Attorneys for Chapter 7 Trustee,
                            LARRY D. SIMONS

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

# Declaration of Larry D. Simons

I, LARRY D. SIMONS, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the chapter 7 trustee of the bankruptcy estate ("Estate") of David Robert Stone dba Cornerstone Financial Services ("Debtor").

5.      I make this Declaration in support of the Motion for Order Authorizing Use of Cash Collateral ("Motion").

6.      All terms not defined herein are used as they are defined in the Motion.

7.       On April 14, 2025 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, commencing Case No. 6:25-bk-1253-SY ("Bankruptcy Case").

8.      On April 14, 2025, as Docket No. 5, I was appointed as the chapter 7 trustee.

9.      On April 28, 2025, as Docket No. 20, I filed a Notice of Assets.

10.     On May 6, 2025, as Docket No. 30, the Trustee filed a Motion for Authority to Operate Debtor's Business Under 11 U.S.C. § 721 ("Operations Motion").

11.     On May 15, 2025, as Docket No. 45, the Court entered an order granting the Operations Motion ("Operations Order"). Under the Operations Order, I have the authority to operate Debtor's business, Cornerstone Financial Service ("CFS"), as set forth in the Operations Motion. I continue to operate the Debtor's business, CFS.

12.     The Debtor has one properly perfected secured creditor with a security interest in the Cash Collateral, Westamerica.

13.     On May 12, 2025, Westamerica filed proof of claim 9-1 asserting a secured claim in the amount of $800,000 secured by "Chattel paper, accounts, and general intangibles"

and describes the basis of the perfection as "security agreement and UCC financing statement"
("Westamerica POC").

14.    A true and correct copy of the Westamerica POC is attached here as **Exhibit
"1."**

15.    I am informed that my counsel has conducted a UCC-1 search with the
California Secretary of State online search portal, wherein my counsel located copies of
continuance statements for Westamerica's Financing Statement. Accordingly, I believe that
Westamerica perfected its security interest in the Cash Collateral as of the Petition Date.

16.    I am informed that certain investor/creditors maintain that they are secured
creditors with security interests in the Leases and Equipment Finance Agreements, as detailed
in the Motion. I am informed that, after there are no creditors with active UCC-1 Financing
Statements for CFS, other than Westamerica. Accordingly, I believe that none of the
Purportedly Secured Creditors properly perfected their security interests as of the Petition Date.

17.    On May 7, 2025, the Leachman Family Trust ("Leachman") filed proof of claim
4-1 asserting a secured claim in the amount of $100,000 secured by "Money loaned and
evidenced by Secured Note" and described the basis of the perfection as "Note and Schedule
A" ("Leachman POC"). I am informed that Leachman did not file a UCC-1 Financing
Statement perfecting its alleged security interest in the Cash Collateral.

18.    A true and correct copy of the Leachman POC is attached here as **Exhibit "4."**

19.    On May 9, 2025, Kevin Cavalli ("Cavalli") filed proof of claim 6-1 asserting a
secured claim in the amount of $700,000 secured by "Commercial Trucks and Trailers" and
described the basis of the perfection as a "Financing Statement" ("Cavalli POC"). I am
informed that Cavalli did not file a UCC-1 Financing Statement perfecting his alleged security
interest in the Cash Collateral.

20.    A true and correct copy of the Cavalli POC is attached here as **Exhibit "5."**

21.    On May 16, 2025, Jack Pizza ("Pizza") filed proof of claim 12-1 asserting a
secured claim in the amount of $100,000 secured by "Balance owing to Debtor in leased

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

trucks" and did not describe a basis for the perfection ("Pizza POC"). I am informed that Pizza did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

22.     A true and correct copy of the Pizza POC is attached here as **Exhibit "6."**

23.     On June 5, 2025, Robert Terheyden ("Terheyden") filed proof of claim 15-1 asserting a secured claim in the amount of $450,000 secured by "Multiple transactions" and described the basis of the perfection as "Notes" ("Terheyden POC"). I am informed that Terheyden did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

24.     A true and correct copy of the Terheyden POC is attached here as **Exhibit "7."**

25.     On June 9, 2025, Marc Sebastian ("Sebastian") filed proof of claim 17-1 asserting a secured claim in the amount of $500,000 secured by "notes on multiple semi trucks" and described the basis of the perfection as "my 1099 from cornerstone and multiple emails from Dawn" ("Sebastian POC"). I am informed that Sebastian did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

26.     A true and correct copy of the Sebastian POC is attached here as **Exhibit "8."**

27.     On June 16, 2025, Barbara A. Stenning ("Stenning") filed proof of claim 21-1 asserting a secured claim in the amount of $1,259,327.34 secured by "LargeTruck loans to borrowers and loan amounts for each note" and described the basis for the perfecting as "financing statements" ("Stenning POC"). I am informed that Stenning did not file a UCC-1 Financing Statement perfecting her alleged security interest in the Cash Collateral.

28.     A true and correct copy of the Stenning POC is attached here as **Exhibit "9."**

29.     On June 23, 2025, Patricia Ann Lateef ("Lateef") filed proof of claim 23-1 asserting a secured claim in the amount of $240,000 secured by "Receivables" and did not describe a basis for the perfection ("Lateef POC"). I am informed that Lateef did not file a UCC-1 Financing Statement perfecting her alleged security interest in the Cash Collateral.

30.     A true and correct copy of the Lateef POC is attached here as **Exhibit "10."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

31.     On June 23, 2025, Katherine L. Munson ("Munson") filed proof of claim 24-1 asserting a secured claim in the amount of $1,700,000 secured by "owners of trucks leased trucks w/ loans supplied by cornerstone/IOU the creditors" and did not describe a basis for the perfection ("Munson POC"). I am informed that Munson did not file a UCC-1 Financing Statement perfecting her alleged security interest in the Cash Collateral.

32.     A true and correct copy of the Munson POC is attached here as **Exhibit "11."**

33.     On June 30, 2025, Desert Equity Group Inc. ("Desert Equity Group") filed proof of claim 26-1 asserting a secured claim in the amount of $250,000 secured by "lease payment streams equipment finance agreement" and described the basis of the perfection as "note attached" ("Desert Equity Group POC #1"). I am informed that the Desert Equity Group did not file a UCC-1 Financing Statement perfecting its alleged security interest in the Cash Collateral.

34.     A true and correct copy of the Desert Equity Group POC #1 is attached here as **Exhibit "12."**

35.     On July 24, 2025, Thomas Rauda ("Rauda") filed proof of claim 40-1 asserting a secured claim in the amount of $20,000 secured by a "lease-to-own truck agreement and financed purchase of 2015 Peterbilt 389" and did not describe a basis for the perfection ("Rauda POC"). I am informed that Rauda did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

36.     A true and correct copy of the Rauda POC is attached here as **Exhibit "13."**

37.     On July 25, 2025, Janet H. Simkins individually and as Trustee of the Janet H. Simkins Survivor's Trust ("Simkins") filed proof of claim 42-1 asserting a secured claim in the amount of $275,021.88 secured by "Equipment financing agreements of equipment leases agts." and described the basis of the perfection as "Constructive trust; agency" ("Simkins POC"). I am informed that Simkins did not file a UCC-1 Financing Statement perfecting her alleged security interest in the Cash Collateral.

38.     A true and correct copy of the Simkins POC is attached here as **Exhibit "14."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

39.    On July 31, 2025, Linda Marijke Bruggenkamp ("Bruggenkamp") filed proof of claim 63-1 asserting a secured claim in the amount of $4,548,674.80 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Bruggenkamp POC"). I am informed that Bruggenkamp did not file a UCC-1 Financing Statement perfecting her alleged security interest in the Cash Collateral.

40.    A true and correct copy of the Bruggenkamp POC is attached here as **Exhibit "15."**

41.    On July 31, 2025, Alan L Thomas Revocable Trust dated 6/5/2004 ("Thomas") filed proof of claim 65-1 asserting a secured claim in the amount of $350,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Thomas POC"). I am informed that Thomas did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

42.    A true and correct copy of the Thomas POC is attached here as **Exhibit "16."**

43.    On July 31, 2025, Desert Equity Group filed a second proof of claim, proof of claim 66-1 asserting a secured claim in the amount of $250,000 secured by "Lease/Loan Payments/Equipment Finance Agreement" and described the basis of the perfection as "Note Attached" ("Desert Equity Group POC #2"). I am informed that Desert Equity Group did not file a UCC-1 Financing Statement perfecting its alleged security interest in the Cash Collateral.

44.    A true and correct copy of the Thomas POC is attached here as **Exhibit "17."**

45.    On July 31, 2025, Michael Joel Stone ("Michael Stone") filed proof of claim 67-1 asserting a secured claim in the amount of $1,682,843.17 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Michael Stone POC"). I am informed that Michael Stone did not file a UCC-1 Financing Statement perfecting his alleged security interest in the Cash Collateral.

46.    A true and correct copy of the Michael Stone POC is attached here as **Exhibit "18."**

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

47.    On July 31, 2025, Michael G. McGrath ("McGrath") filed proof of claim 68-1 asserting a secured claim in the amount of $1,000,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("McGrath POC"). I am informed that McGrath did not file a UCC-1 Financing Statement perfecting its alleged security interest in the Cash Collateral.

48.    A true and correct copy of the McGrath POC is attached here as **Exhibit "19."**

49.    On July 31, 2025, Scott E. Cunningham ("Cunningham") filed proof of claim 69-1 asserting a secured claim in the amount of $750,000 secured by "Lease/Loan Payments" and described the basis of the perfection as "Note Attached" ("Cunningham POC"). I am informed that Cunningham did not file a UCC-1 Financing Statement perfecting its alleged security interest in the Cash Collateral.

50.    A true and correct copy of the Cunningham POC is attached here as **Exhibit "20."**

51.    On July 31, 2025, Dmitry Erenkov and Elena Erenkov ("Erenkov") filed proof of claim 80-1 asserting a secured claim in the amount of $564,652 secured by "3rd party leases & purchase contracts per Exhibit A to Notes" and described the basis of the perfection as "Assignment in above contracts per Debtor's Schedule D" ("Erenkov "POC"). I am informed that Erenkov did not file a UCC-1 Financing Statement perfecting their alleged security interest in the Cash Collateral.

52.    A true and correct copy of the Erenkov POC is attached here as **Exhibit "21."**

53.    Accordingly, I dispute the extent, validity, and priority of any alleged security interest in the Leases and Equipment Finance Agreements, other than the security interest asserted by Westamerica, which was properly perfected as of the Petition Date.

54.    I propose to use the Cash Collateral to pay limited operational expenses for CFS within the ordinary course of CFS's business, as set forth below ("Expense Chart"):

| Expense Description | Amount |
|---|---|
| Proposed Independent Contractors Monthly | $38,653.33 |

18

| Combined Rate | |
|---|---|
| PG&E Electricity Bill | $1,100.00 |
| Repossession Costs | $20,000.00 |
| PO Box | $50.00 |
| Adequate Protection Payment to Westamerica Bank | $10,000.00 |
| **Total** | **$69,803.33** |

55.    In addition, I propose to use the Cash Collateral to make a one-time payment to my proposed independent contractors, Dawn Stanley, Rosie Esteban, and Stephanie Molina ("Contractors"), for backpay for outstanding fees not paid from the Petition Date to present, totaling **$36,532.00** ("Backpay") incurred at my request to preserve the Estate's assets.

56.    A true and correct copy of the Debtor's Amended Schedules A/B, filed on June 5, 2025, as Docket No. 63, is attached here as **Exhibit "22."**

57.    Other than Westamerica, I am not aware of any other parties that have filed UCC-1 financing statements in connection with the Debtor.

58.    I seek to use the Cash Collateral of Westamerica, specifically the accounts receivable from the Leases and Equipment Finance to pay limited operational expenses for CFS within the ordinary course of CFS's business. Westamerica has not yet consented to my proposed use of the Cash Collateral. Nevertheless, the proposed use of Cash Collateral may be authorized because Westamerica is adequately protected, as further detailed below.

59.    I believe that Westamerica is adequately protected because I propose to pay adequate protection payments to Westamerica, as set forth in the Expenses Chart. In addition, to the extent that my proposed use of the Cash Collateral results in a decrease in the value of Westamerica's interest in the Cash Collateral, I will provide Westamerica with a replacement lien against its post-petition accounts receivable and inventory.

60.    In addition, I believe that Westamerica is adequately protected by a sufficient equity cushion, as its secured claim is only for $800,000, and the value of the accounts receivable for the

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1  Leases and Equipment Financing Agreements disclosed in the Debtor's Schedules A/B is

2  $13,792,815.25.

3       61.    I contest the extent, validity, and priority of the alleged security interests asserted by

4  Leachman, Cavalli, Pizza, Terheyden, Sebastian, Stenning, Lateef, Munson, Desert Equity Group,

5  Rauda, Simkins, Bruggenkamp, Thomas, Desert Equity Group, Michael Stone, McGrath,

6  Cunningham, and Erenkov ("Purportedly Secured Creditors") because no UCC-1 financing

7  statements were ever filed with respect to their alleged security interests.

8       I declare under penalty of perjury that the foregoing is true and correct. Executed on August

9  6, 2025.

10

11                                    LARRY D. SIMONS
                                      Chapter 7 Trustee for the Bankruptcy Estate of
12                                    DAVID ROBERT STONE *dba*
                                      CORNERSTONE FINANCIAL SERVICES
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

# Declaration of D. Edward Hays

I, D. EDWARD HAYS, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

5.      I am a partner in the law firm of Marshack Hays Wood, LLP, attorneys for Larry D. Simons, in his capacity as the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of David Robert Stone *dba* Cornerstone Financial Services ("Debtor") in the above-captioned case.

6.      I make this Declaration in support of the Chapter 7 Trustee's Motion for Order Authorizing Use of Cash Collateral ("Motion").

7.      All terms not defined herein are used as they are defined in the Motion.

8.      I attempted to determine the party that perfected their security interests in the Debtor's Cash Collateral by conducting a UCC search with the California Secretary of State online search portal.

9.      On or about July 29, 2025, I am informed that my office performed a UCC search with the California Secretary of State online search portal, which did not reveal any active UCC-1 financing statements for the Debtor, other than the Financing Statement filed by Westamerica. During my search, I located copies of the Westamerica Financing Statement and related continuation statements filed by Westamerica.

10.     True and correct copies of the Westamerica Financing Statement and the related continuation statements filed by Westamerica are attached here as **Exhibit "2."**

11.     A true and correct copy of a UCC-1 search for the Debtor is attached here as **Exhibit "3."** I have highlighted the only active search result listing the Debtor as a debtor.

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

1       12.      I was unable to locate a UCC-1 Financing Statement filed by any of the Purportedly

2  Secured Creditors.

3       13.      A true and correct copy of the draft proposed order granting this Motion is attached

4  here as **Exhibit "23."**

5       I declare under penalty of perjury that the foregoing is true and correct. Executed on August

6  6, 2025.

7                                                */s/ D. Edward Hays*
                                                D. EDWARD HAYS
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

Exhibit "1"

**Fill in this information to identify the case:**

Debtor 1     David Robert Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   6:25-bk-12353-SY

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Westamerica Bank<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| | Peter L. Hofman - Westamerica Bank<br>Name<br><br>4550 Mangels Boulevard, A-1B<br>Number      Street<br><br>Fairfield              CA        94534<br>City                State      ZIP Code<br><br>Contact phone  (707) 863-6830<br><br>Contact email<br><br>Uniform claim identifier (if you use one):<br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | Name<br><br>Number      Street<br><br>City                State      ZIP Code<br><br>Contact phone<br><br>Contact email |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____      Filed on ____/____/_____<br>MM   DD   YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

**Exhibit "1"**
**Page 23**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

6.  **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  0   4   0   1

7.  **How much is the claim?**    $_____800,000.00.  **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8.  **What is the basis of the claim?**    Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Working funds for truck leasing business.

9.  **Is all or part of the claim secured?**
☐ No
☑ Yes.  The claim is secured by a lien on property.
**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    Chattel paper, accounts, and general intangibles.

**Basis for perfection:**    security agreement and UCC financing statement
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $____2,300,000.00
**Amount of the claim that is secured:**    $____800,000.00
**Amount of the claim that is unsecured:**    $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____0.00

**Annual Interest Rate** (when case was filed)__9.75_%
☐ Fixed
☑ Variable

10.  **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11.  **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**Exhibit "1"**
**Page 24**

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

### Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    05/22/2025
                   MM / DD / YYYY

/s/ Charles L. Doerksen
              Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Charles Leonard Doerksen |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 25920 Elwood Road |
| | Number    Street |
| | Sanger    CA    93657 |
| | City    State    ZIP Code |
| Contact phone | (559) 233-3434    Email    cld@doerksentaylor.com |

Exhibit "1"
Page 25

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $800,000.00 | 11-24-2017 | 11-30-2018 | 507-03411 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:**  DAVID R. STONE DBA: CORNERSTONE
FINANCIAL SERVICES
4310 REDWOOD HWY, STE 100
SAN RAFAEL, CA  94903

**Lender:**  WESTAMERICA BANK
FAIRFIELD CREDIT ADMINISTRATION
4550 MANGELS BOULEVARD
PO BOX 1200 MAC A-1B
SUISUN, CA  94585

---

THIS BUSINESS LOAN AGREEMENT dated November 24, 2017, is made and executed between DAVID R. STONE ("Borrower") and WESTAMERICA BANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.**  This Agreement shall be effective as of November 24, 2017, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.**  The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority:  DAVID R. STONE.

**CONDITIONS PRECEDENT TO EACH ADVANCE.**  Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.**  Borrower shall provide to Lender the following documents for the Loan:  (1) the Note;  (2) Security Agreements granting to Lender security interests in the Collateral;  (3) financing statements and all other documents perfecting Lender's Security Interests;  (4) evidence of insurance as required below;  (5) guaranties;  (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Payment of Fees and Expenses.**  Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.**  The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.**  There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.**  Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Business Activities.**  Borrower maintains an office at 4310 REDWOOD HIGHWAY, SUITE 100, SAN RAFAEL, CA  94903. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.**  Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:  CORNERSTONE FINANCIAL SERVICES.

**Authorization.**  Borrower's execution, delivery, and performance of this Agreement and all the Related Documents do not conflict with, result in a violation of, or constitute a default under  (1)  any provision of any agreement or other instrument binding upon Borrower or  (2)  any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.**  Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.**  This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.**  Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.**  Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that:  (1)  During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral.  (2)  Borrower has no knowledge of, or reason to believe that there has been  (a)  any breach or violation of any Environmental Laws;  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters.  (3)  Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's

Exhibit "1"
Page 26

**Loan No: 507-03411**

## BUSINESS LOAN AGREEMENT
### (Continued)

Page 2

expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

    **Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower.

    **Interim Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

    **Tax Returns.** As soon as available, but in no event later than 10 days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by Borrower.

    **Additional Requirements.**

    BORROWER SHALL MAINTAIN ITS PRIMARY BANKING RELATIONSHIP WITH LENDER.

    BORROWER SHALL PROVIDE LENDER A COPY OF BORROWER'S AGING OF ACCOUNTS RECEIVABLE (IN FORM AND SUBSTANCE SATISFACTORY TO LENDER) WITHIN SIXTY (60) DAYS OF THE END OF EACH QUARTER.

    BUSINESS FINANCIAL STATEMENTS ARE DUE FROM CORNERSTONE FINANCIAL SERVICES.

    ANNUALLY THE LINE IS TO BE REDUCED TO MAXIMUM BALANCE OF $300,000.00 FOR THIRTY (30) CONSECUTIVE DAYS DURING THE TERM OF THE LINE OF CREDIT.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

    **Working Capital Requirements.** Maintain Working Capital in excess of **$750,000.00.** Other Working Capital requirements are as follows: **WORKING CAPITAL REQUIREMENTS SHOULD BE MAINTAINED AT ALL TIMES AND MAY BE EVALUATED AT ANY TIME.**

    **Tangible Net Worth Requirements.** Maintain a minimum Tangible Net Worth of not less than: **$1,000,000.00.** Other Net Worth requirements are as follows: **TANGIBLE NET WORTH REQUIREMENTS SHOULD BE MAINTAINED AT ALL TIMES AND MAY BE EVALUATED AT ANY TIME.**

    EXCLUDING SUBORDINATED DEBT. In addition, Borrower shall comply with the following net worth ratio requirements:

        **Debt / Worth Ratio.** Maintain a ratio of Debt / Worth not in excess of **1.000 to 1.000.** The ratio "Debt / Worth" means Borrower's Total Liabilities divided by Borrower's Tangible Net Worth. This leverage ratio should be maintained at all times and may be evaluated at any time.

    Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender

**Loan No: 507-03411**

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Page 3

---

may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| DAVID R. STONE, AS TRUSTEE OF THE DAVID R. STONE LIVING TRUST | $800,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: **SUPPORT CURRENT ASSETS.**

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of

**Exhibit "1"**
**Page 28**

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 507-03411                                                                                      Page 4

Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**COMPLIANCE CERTIFICATION.** THE CERTIFICATION requirements in the paragraph titled "Compliance Certificate" is hereby waived, however, the Lender reserves the option to reinstate the requirements upon notification to the Borrower.

**TANGIBLE NET WORTH.** THE DEFINITION of Tangible Net Worth, as defined under paragraph heading "Definitions" is modified as follows: Net Worth, less intangibles and deferred accounts.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Exhibit "1"**
**Page 29**

**Loan No: 507-03411**

## BUSINESS LOAN AGREEMENT
### (Continued)

---

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SOLANO County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means DAVID R. STONE and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and

**Exhibit "1"**

**Page 30**

**Loan No: 507-03411**

## BUSINESS LOAN AGREEMENT
### (Continued)

Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means WESTAMERICA BANK, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated November 24, 2017 and executed by DAVID R. STONE in the principal amount of $800,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i.e., goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total debt.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 24, 2017.

BORROWER:

X _____
DAVID R. STONE

LENDER:

WESTAMERICA BANK

By: _____
Authorized Signer

Case 6:25-bk-12353-SY    Claim 9-1    Filed 05/12/25    Desc Main Document    Page 10

## TRUST CERTIFICATE

| Principal<br>$800,000.00 | Loan Date<br>11-24-2017 | Maturity<br>11-30-2018 | Loan No<br>507-03411 | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  DAVID R. STONE DBA:  CORNERSTONE
FINANCIAL SERVICES
4310 REDWOOD HWY, STE 100
SAN RAFAEL, CA  94903

**Lender:**  WESTAMERICA BANK
FAIRFIELD CREDIT ADMINISTRATION
4550 MANGELS BOULEVARD
PO BOX 1200 MAC A-1B
SUISUN, CA  94585

**Trust:**  DAVID R. STONE, AS TRUSTEE OF THE DAVID R.
STONE LIVING TRUST
170 GREENWOOD AVENUE
SAN RAFAEL, CA  94901

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**CERTIFICATION OF TRUST.**  This Trust Certificate is given by the Trustee voluntarily, pursuant to Section 18100.5 of the California Probate Code and under penalty of perjury, intending that the facts set forth in this Certificate be relied upon by Lender as true and correct.

(A)  Trust is in existence as of this date and is evidenced by a Trust instrument executed on September 11, 2008.

(B)  The name of the Trustee is:  DAVID R. STONE.

(C)  The name of the Trust Settlor is:  DAVID R. STONE.

(D)  The powers of Trustee include the power to do, or perform, all of the acts and things on behalf of Trust set forth in this Certificate.

(E)  Trust is revocable, and the name of the person holding any power to revoke the trust is:  DAVID R. STONE.

(F)  The trust instrument requires the signature of any 1 Trustee to exercise any powers of the Trustee.

(G)  Trust's tax or employer identification number is 57-0889299.

(H)  Title to Trust assets is to be taken in the name of DAVID R. STONE, AS TRUSTEE OF THE DAVID R. STONE LIVING TRUST

(I)  Trustee hereby certifies that Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Certificate to be incorrect and this Certificate is being signed by all of the currently acting Trustees of Trust.  Trustee acknowledges and agrees that Lender may require Trustee to provide copies of excerpts from the trust instrument and amendments which designate the Trustee and confer upon the Trustee the power to act in these transactions, and that Lender may require such further identification or legal opinion supporting the Trustee authority and power as Lender shall deem necessary and prudent.

**BORROWING CERTIFICATE.**  Trustee, for and on behalf of Trust, is authorized and empowered on behalf of Trust:

**Guaranty.**  To guarantee or act as surety for loans or other financial accommodations to Borrower from Lender on such guarantee or surety terms as may be agreed upon between the Trustee of Trust and Lender and in such sum or sums of money as in his or her judgment should be guaranteed or assured, not exceeding, however, at any one time the amount of **Eight Hundred Thousand & 00/100 Dollars ($800,000.00)**, in addition to such sum or sums of money as Trust currently may have guaranteed to Lender (the "Guaranty").

**Execute Security Documents.**  To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.**  To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to Trust or in which Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to Trust's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.**  To do and perform such other acts and things and to execute and deliver such other documents and agreements, **including agreements waiving the right to a trial by jury**, as the Trustee may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Certificate.

**TERMINATION OR TRANSFER.**  Trustees agree that the Trustees will provide to Lender written notice prior to any termination or revocation of Trust or prior to the transfer from Trust of any Trust asset upon which Lender may be relying for repayment of Trust's indebtedness to Lender.

**NOTICES TO LENDER.**  The Trustees will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any  (A)  change in Trust's name;  (B)  change in Trust's assumed business name(s);  (C)  change in the Trustees of the Trust;  (D)  change in the authorized signer(s);  (E)  change in Trust's state of organization;  (F)  conversion of Trust to a new or different type of business entity; or  (G)  change in any other aspect of Trust that directly or indirectly relates to any agreements between Trust and Lender.  No change in Trust's name or state of organization will take effect until after Lender has received notice.

**FURTHER TRUST CERTIFICATIONS.**  The persons named above is duly appointed and acting Trustee of Trust and is duly authorized to act on behalf of Trust in the manner described above; I am familiar with the purpose of the Indebtedness; the Indebtedness proceeds are to be used for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries.

**CONTINUING VALIDITY.**  This Certificate shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time).  Any such notice shall not affect any of Trust's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand.**

**I have read all the provisions of this Certificate, and I personally and on behalf of Trust certify that all statements and representations made in this Certificate are true and correct.  This Trust Certificate is dated November 24, 2017.**

**Exhibit "1"**
**Page 32**

**Loan No: 507-03411**

# TRUST CERTIFICATE
## (Continued)

**Page 2**

CERTIFIED TO AND ATTESTED BY:

X _Dawn Stone_

DAVID R. STONE, as Trustee of THE DAVID R. STONE
LIVING TRUST

---

# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _California_ )
) SS
COUNTY OF _Marin_ )

On _December 5_ , 20_17_ before me, _Dawn Stanley_
(here insert name and title of the officer)

personally appeared **DAVID R. STONE**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

**DAWN STANLEY**
COMM. #2095297
NOTARY PUBLIC - CALIFORNIA
MARIN COUNTY
My Comm. Exp. Dec. 29, 2018

(Seal)

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $800,000.00 | 11-24-2017 | 11-30-2018 | 507-03411 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:**  DAVID R. STONE DBA: CORNERSTONE
FINANCIAL SERVICES
4310 REDWOOD HWY, STE 100
SAN RAFAEL, CA  94903

**Lender:**  WESTAMERICA BANK
FAIRFIELD CREDIT ADMINISTRATION
4550 MANGELS BOULEVARD
PO BOX 1200 MAC A-1B
SUISUN, CA  94585

THIS COMMERCIAL SECURITY AGREEMENT dated November 24, 2017, is made and executed between DAVID R. STONE ("Grantor") and WESTAMERICA BANK ("Lender").

**GRANT OF SECURITY INTEREST.**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All Chattel Paper, Accounts and General Intangibles**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.  **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any  (1)  change in Grantor's name;  (2)  change in Grantor's assumed business name(s);  (3)  change in the authorized signer(s);  (4)  change in Grantor's principal office address;  (5)  change in Grantor's principal residence;  (6)  conversion of Grantor to a new or different type of business entity; or  (7)  change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender.  No change in Grantor's name or principal residence will take effect until after Lender has received notice.

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.  At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor.  So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts.  There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender.  Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following:  (1)  all real property Grantor owns or is purchasing;  (2)  all real property Grantor is renting or leasing;  (3)  all storage facilities Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

**Exhibit "1"**

**Page 34**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 507-03411                                                                                                Page 2

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Exhibit "1"**
**Page 35**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 507-03411                                                                                     Page 3

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own

**Exhibit "1"**
**Page 36**

**Loan No: 507-03411**     **COMMERCIAL SECURITY AGREEMENT**     **Page 4**
**(Continued)**

name or that of Grantor.  Lender may sell the Collateral at public auction or private sale.  Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made.  However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale.  The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition.  All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.**  Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral.  Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine.  Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due.  For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral.  To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.**  If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement.  Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.**  Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time.  In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.**  Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.**  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of SOLANO County, State of California.

**Preference Payments.**  Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.**  Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties.  Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 507-03411                                                                                      Page 5

statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means DAVID R. STONE and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means DAVID R. STONE.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means WESTAMERICA BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated November 24, 2017 and executed by DAVID R. STONE in the principal amount of $800,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 24, 2017.**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 507-03411

Page 6

GRANTOR:

X ~~Dann Stone~~

DAVID R. STONE

LaserPro, Ver. 17.2.10.037  Copr. D+H USA Corporation 1997, 2017.   All Rights Reserved.   - CA  E:\WIN\LASPPRAPPS\CF8\LPL\E40.FC  TR-12353  PR-7

**0234760040**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO:  (Name and Address)

┌─────────────────────────────────────────┐
│ WESTAMERICA BANK                         │
│ 1177 EAST FRANCISCO BOULEVARD, SUITE B   │
│ SAN RAFAEL, CA  94901                    │
│                                          │
└─────────────────────────────────────────┘

6/9/07

**FILED
SACRAMENTO, CA
DEC 09, 2002 AT 1700
BILL JONES
SECRETARY OF STATE**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME **STONE** | FIRST NAME **DAVID** | MIDDLE NAME **R.** | | SUFFIX |
| 1c. MAILING ADDRESS **777 GRAND AVENUE** | CITY **SAN RAFAEL** | STATE **CA** | POSTAL CODE **94901** | COUNTRY **USA** |
| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Individual** | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **WESTAMERICA BANK** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **1177 EAST FRANCISCO BOULEVARD, SUITE B** | CITY **SAN RAFAEL** | STATE **CA** | POSTAL CODE **94901** | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

**All Chattel Paper, Accounts and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)**

COPY

| 5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING |
|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] ☒ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA **LOAN #507-03411, 12-02-2002** | 1920550401 |

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon  97204

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**Exhibit "1"
Page 40**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    15802 - WESTAMERICA

Lien Solutions            89143018
P.O. Box 29071
Glendale, CA 91209-9071    CALI

File with: Secretary of State, CA

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : U220232585929
File Date   : 04-Oct-2022

*TicKler*
*6-9-27*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
0234760040  12/9/2002  SS CA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination
Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is
continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete    ☐ ADD name: Complete item    ☐ DELETE name: Give record name
item 6a or 6b; and item 7a or 7b and item 7c    7a or 7b, and item 7c    to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | |
|---|---|
| 6a. ORGANIZATION'S NAME | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | |
|---|---|
| 7a. ORGANIZATION'S NAME | |

OR

| 7b. INDIVIDUAL'S SURNAME | |
|---|---|
| | |

| INDIVIDUAL'S FIRST PERSONAL NAME | |
|---|---|
| | |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| WEST AMERICA BANK | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: CORNERSTONE FINANCIAL SERVICES

89143018            507047482            1920550401-50703411

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Exhibit "2"

**0234760040**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

WESTAMERICA BANK
1177 EAST FRANCISCO BOULEVARD, SUITE B
SAN RAFAEL, CA  94901

**FILED**
**SACRAMENTO, CA**
**DEC  09, 2002 AT 1700**
**BILL JONES**
**SECRETARY OF STATE**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| STONE | DAVID | R. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 777 GRAND AVENUE | SAN RAFAEL | CA | 94901 | USA |
| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Individual | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WESTAMERICA BANK | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1177 EAST FRANCISCO BOULEVARD, SUITE B | SAN RAFAEL | CA | 94901 | |

4. This FINANCING STATEMENT covers the following collateral:

All Chattel Paper, Accounts and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | ☒ All Debtors ☐ Debtor 1 ☐ Debtor 2 | | | |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| LOAN #507-03411, 12-02-2002 | | | | | | |

*192055040l*

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon  97204

**Exhibit "2"**
**Page 42**

**04-70090462**

**12/15/2004 17:00**

**FILED**

CALIFORNIA
SECRETARY OF STATE

SOS

1921060002    UCC 3 FILING

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Jennifer Waters (707) 863-6127

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> **Westamerica Bank**
> **San Rafael Credit Administration**
> **1177 East Francisco Boulevard, Suite B**
> **San Rafael, CA 94901**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #<br>0234760040 | ORIGINAL FILING DATE<br>12/9/2002 | 1b. ☐ | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|---|---|

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☒ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☒ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME<br>CORNERSTONE FINANCIAL SERVICES | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS<br>4310 REDWOOD HWY, STE. 100 | CITY<br>SAN RAFAEL | STATE<br>CA | POSTAL CODE<br>94903 | COUNTRY<br>USA |
|---|---|---|---|---|

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION<br>DBA | 7f. JURISDICTION OF ORGANIZATION<br>CA | 7g. ORGANIZATIONAL ID #, if any<br>☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ Deleted or ☐ Added, or give entire ☐ Restated collateral description, or describe collateral ☐ assigned

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME<br>WESTAMERICA BANK | | | |
|---|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA<br>507-03411  11/18/04  STONE, DAVID R.     192C55C411 |
|---|

FILING OFFICE COPY– NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

**DOCUMENT NUMBER:** 13556000002
**FILING NUMBER:** 07-71233971
**FILING DATE:** 07/30/2007 15:25
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #**
02-34760040

**1b.** ☐ **This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.**

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

| OR | **6a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| OR | **7a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| **7d. SEE INSTRUCTIONS** | ADD'L DEBTOR INFO | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| OR | **a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | WEST AMERICA BANK | | | |
| | **b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
CA-0-25601615-503047

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Gisella Melendez<br>800-331-3282 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | **DOCUMENT NUMBER:** 34854860002<br>**FILING NUMBER:** 12-73317377<br>**FILING DATE:** 10/05/2012 09:27<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>02-34760040 | **1b.** ☐ **This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.** |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | | | | |
|---|---|---|---|---|
| OR | **6a. ORGANIZATION'S NAME** | | | |
| | **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | | | | |
|---|---|---|---|---|
| OR | **7a. ORGANIZATION'S NAME** | | | |
| | **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| **7d.** SEE INSTRUCTIONS | ADD'L DEBTOR INFO | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any**<br>☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | | | | |
|---|---|---|---|---|
| OR | **a. ORGANIZATION'S NAME**<br>WEST AMERICA BANK | | | |
| | **b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
CA-0-35062910-46857144

FILING OFFICE COPY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Gisella Melendez
800-331-3282

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Lien Solutions
2929 ALLEN PARKWAY, Suite#3300
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 65267560002
FILING NUMBER: 17-76159135
FILING DATE: 11/09/2017 15:46

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
02-34760040

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:          AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| OR  INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| WEST AMERICA BANK | | | |
| OR  b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
CA-0-61375696-54224906

FILING OFFICE COPY




U220232585929



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U220232585929 |
| Date Filed: 10/4/2022 |

| Submitter Information: | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 |
| | GLENDALE, CA 912099071 |

| Amendment Action Information: | |
| --- | --- |
| Initial Financing Statement File Number | 0234760040 |
| Date Filed | 12/09/2002 |
| Amendment Action | Continuation |

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

| Authorizing Secured Party Name | WEST AMERICA BANK |
| --- | --- |

Optional Filer Reference Information:
89143018

**Exhibit "2"**
**Page 47**

B1152-8544  10/04/2022  4:34 PM Received by California Secretary of State

# Exhibit "3"



**1 OF 1 RECORD(S)**

**UCC Filings**

**1:CALIFORNIA UCC Record**

**Debtor Information**

**Debtor 1**

|  |  |
|---|---|
| **Name:** | CORNERSTONE FINANCIAL SERVICES |
| **Standardized Address:** | 4310 REDWOOD HWY STE 100 |
|  | SAN RAFAEL, CA 94903 |
| **Original Address:** | 4310 REDWOOD HWY, STE 100 |
|  | SAN RAFAEL, CA USA 94903-2145 |

**Debtor 2**

|  |  |
|---|---|
| **Name:** | CORNERSTONE FINANCIAL SERVICES |
| **Standardized Address:** | 4310 REDWOOD HWY STE 100 |
|  | SAN RAFAEL, CA 94903 |
| **Original Address:** | 4310 REDWOOD HWY, STE 100 |
|  | SAN RAFAEL, CA 94903-2145 |

**Debtor 3**

|  |  |
|---|---|
| **Name:** | MR DAVID R STONE |
| **Standardized Address:** | 777 GRAND AVE |
|  | SAN RAFAEL, CA 94901 |
| **Original Address:** | 777 GRAND AVENUE |
|  | SAN RAFAEL, CA USA 94901-3500 |
| **SSN:** | 570-88-XXXX |

**Debtor 4**

|  |  |
|---|---|
| **Name:** | MR DAVID R STONE |
| **Standardized Address:** | 777 GRAND AVE |
|  | SAN RAFAEL, CA 94901 |
| **Original Address:** | 777 GRAND AVENUE |
|  | SAN RAFAEL, CA 94901-3500 |

cornerstone_financial_services

**UCC Filings**

**SSN:**   570-88-XXXX

**Secured Party Information**

**Secured 1**

| | |
|---|---|
| **Name:** | WEST AMERICA BANK |
| **Standardized Address:** | 1177 FRANCISCO BLVD E STE B |
| | SAN RAFAEL, CA 94901 |
| **Original Address:** | 1177 EAST FRANCISCO BOULEVARD, SUITE B |
| | SAN RAFAEL, CA USA 94901-5403 |

**Secured 2**

| | |
|---|---|
| **Name:** | WEST AMERICA BANK |
| **Standardized Address:** | 1177 FRANCISCO BLVD E STE B |
| | SAN RAFAEL, CA 94901 |
| **Original Address:** | 1177 EAST FRANCISCO BOULEVARD, SUITE B |
| | SAN RAFAEL, CA 94901-5403 |

**Filing Information**

| | |
|---|---|
| **Original Filing Type:** | FINANCING STATEMENT |
| **Original Filing Number:** | 0234760040 |
| **Original Filing Date:** | 12/09/2002 |
| **Original Filing Time:** | 5:00 PM |
| **Filing Number:** | 0234760040 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |
| **Filing Type:** | UCC3 AMENDMENT |
| **Filing Number:** | 0470090462 |
| **Filing Date:** | 12/15/2004 |

**Exhibit "3"**
**Page 49**

cornerstone_financial_services

**UCC Filings**

|  |  |
|---|---|
| **Filing Time:** | 17:00 |
| **Filing Expiration Date:** | 12/09/2012 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |
| **Microfilm Number:** | 1921060002 |

|  |  |
|---|---|
| **Filing Type:** | AMENDMENT |
| **Filing Number:** | 0470090462 |
| **Filing Date:** | 12/15/2004 |
| **Filing Time:** | 17:00 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |

|  |  |
|---|---|
| **Filing Type:** | UCC3 CONTINUATION |
| **Filing Number:** | 0771233971 |
| **Filing Date:** | 07/30/2007 |
| **Filing Time:** | 15:25 |
| **Filing Expiration Date:** | 12/09/2012 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |
| **Microfilm Number:** | 13556000002 |

|  |  |
|---|---|
| **Filing Type:** | CONTINUATION |
| **Filing Number:** | 0771233971 |
| **Filing Date:** | 07/30/2007 |
| **Filing Time:** | 15:25 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |

|  |  |
|---|---|
| **Filing Type:** | CONTINUATION |
| **Filing Number:** | 1273317377 |
| **Filing Date:** | 10/05/2012 |
| **Filing Time:** | 09:27 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |

cornerstone_financial_services

**UCC Filings**

|  |  |
|---:|:---|
| **Filing Type:** | CONTINUATION |
| **Filing Number:** | 1776159135 |
| **Filing Date:** | 11/09/2017 |
| **Filing Time:** | 15:46 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |

|  |  |
|---:|:---|
| **Filing Type:** | CONTINUATION |
| **Filing Number:** | U220232585929 |
| **Filing Date:** | 10/04/2022 |
| **Filing Time:** | 16:34 |
| **Filing Expiration Date:** | 12/09/2027 |
| **Filing Status:** | ACTIVE |
| **Pages:** | 1 |

**Important:**  The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.
Your DPPA Permissible Use: Litigation
Your Secondary DPPA Permissible Use: None
Your GLBA Permissible Use: I have no permissible use
Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

End of Document

Exhibit "4"

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor 1   David Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **25-12353**

</td></tr>
</table>

**FILED**

**U.S. Bankruptcy Court
Central District of California**

5/7/2025

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/25

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Leachman Family Trust

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    Theresa Y. Leachman / Justus H. and Theresa Y. Leachman Family Trust Dated November 9, 2004

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Leachman Family Trust

Name

121 Oak Ave
Greenbrae, CA 94904

Contact phone    415-464-1077

Contact email
   tyleachman@comcast.net

Uniform claim identifier (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)                Filed on

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                                    Proof of Claim                                    page 1

**Exhibit "4"**

**Page 52**

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6.**Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  9299 |

| | |
|---|---|
| 7.**How much is the claim?** | $ 100000.00    **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8.**What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money loaned and evidenced by Secured Note |

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☑ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**    Note and Schedule A

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ 100000.00

**Amount of the claim that is secured:**    $ 100000.00

**Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ 100000.00

**Annual Interest Rate** (when case was filed)    10    %

☑ Fixed
☐ Variable

| | |
|---|---|
| 10.**Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11.**Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                          Proof of Claim                          page 2

**Exhibit "4"**
**Page 53**

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
| --- | --- | --- | --- |
| | | ☐ Yes. *Check all that apply:* | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/7/2025

MM / DD / YYYY

/s/  Theresa Y. Leachman

Signature

Print the name of the person who is completing and signing this claim:

Name    Theresa Y. Leachman

First name    Middle name    Last name

Title    Trustee

Company    Justus H. and Theresa Y. Leachman Family Trust

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    121 Oak Avenue

Number    Street

Greenbrae, CA 94904

City    State    ZIP Code

Contact phone    415–464–1077    Email    tyleachman@comcast.net

**Exhibit "4"**

**Page 54**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$100,000                                                                    San Rafael, California

January 28, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to  Justus H. and Theresa Y. Leachman Family Trust dated November 9, 2004 (Beneficiary) a security interest in a multiple of transactions equal too, but not less than, the Present Value of $100,000 at the  prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $100,000 or greater on the date of  inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary  acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain  transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a  Present Value security of not less than $100,000 through maturity. CFS shall exercise care that all attached transaction shall contain a  level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive   Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $833.33 (Eight-hundred t h i r t y - t h r e e  a n d 3 3 / 1 0 0 ).   Annual accumulative payments received shall equal $10,000 based on ten-percent (10%) annualized interest.

Maturity is 3 years form Note inception ( January 28, 2027]. This note will renew with the same terms and  conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The  prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

*David Stone*
David Stone (Jan 2, 2024 15:52 PST)
David R. Stone d.b.a.
Cornerstone Financial Services

Theresa Y. Leachman (Jan 2, 2024 13:44 HST)
Justus H. and Theresa Y. Leachman Family Trust
dated November 9, 2004

**Exhibit "4"**
**Page 55**

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated_____by David R. Stone d.b.a.
Cornerstone Financial Services and <u>Justus H. and Theresa Y. Leachman Family Trust dated November 9, 2004</u>

|   |   | Transaction | Present Value |
|---|---|---|---|
| 1 |   | Alson Hall | $ 107,425.32 |
| TOTAL |   |   | $ 107,425.32 |

Exhibit "5"

**Fill in this information to identify the case:**

Debtor 1    David Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Central District of California**

Case number:  **25-12353**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

5/9/2025

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Kevin Cavalli

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    Cavalli Family Trust Dated October 7, 2021

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Kevin Cavalli | |
| Name | Name |
| 2129 W San Remo Drive Meridian, ID 83646 | |
| Contact phone        7757221323 | Contact phone |
| Contact email    kcavalli1973@gmail.com | Contact email |
| Uniform claim identifier (if you use one): | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

**Exhibit "5"**
**Page 57**

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 700000.00   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Secured Interest Promissory Notes |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe:   Commercial Trucks and Trailers<br><br>**Basis for perfection:**   Financing Statement<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ 700000.00<br>**Amount of the claim that is secured:**   $ 700000.00<br>**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ 700000.00<br><br>**Annual Interest Rate** (when case was filed)   10   %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                 Proof of Claim                 page 2

**Exhibit "5"**

**Page 58**

**12.** **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/9/2025

MM / DD / YYYY

/s/  Kevin Cavalli

Signature

Print the name of the person who is completing and signing this claim:

Name    Kevin Cavalli

First name    Middle name    Last name

Title    Creditor

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    2129 W San Remo Drive

Number   Street

Meridian, ID 83646

City   State   ZIP Code

Contact phone    7757221323    Email    kcavalli1973@gmail.com

---

Official Form 410                     Proof of Claim                     page 3

**Exhibit "5"**

**Page 59**

5/9/2025    Gmail - Cornerstone Financial

 Gmail

Kevin Cavalli <kcavalli1973@gmail.com>

## Cornerstone Financial

**Kevin Cavalli** <kcavalli1973@gmail.com>    Fri, May 9, 2025 at 3:27 PM
Draft

To Whom It May Concern,

At the time Dave Stone filed for Chapter 7 Bankruptcy and closed his business, Cornerstone Financial, I had two active notes in place. Both were fully executed on April 13th, 2023. One was for $200,000 at 8%, monthly simple interest, and the other was for $500,000 at 10%. The total monthly interest payment to me was $5,500. I received my first interest direct deposit on May 16th, 2023, and my last on March 18th, 2025. I received a total of 23 payments for $126,500.

I am still due my original, principal balance of $700,000. Copies of both promissory notes are attached for your review. The $200,000 note, which was initially in effect for 12 months, auto renewed in April of 2024, and then again in April of 2025. The $500,000 note was for three years, and would have auto-renewed in April of 2026, unless I notified Cornerstone of my intent to cancel 90 days prior to maturity.

The news of being swindled out of my hard earned money has been devastating. I retired not long ago, and am now back looking for jobs. I can only pray I am able to recover as much as possible. I know I am not alone, but I also know that many creditors have been with Dave for years, and have received interest payments that are close to, or surpass, their initial investment. I was not so lucky. I am a net loser in this venture

Please let me know if you have any other questions.

Kevin Cavalli

**Exhibit "5"**
**Page 60**



**Cornerstone**
**Financial Services**
A National Leader in Commercial
Truck and Trailer Financing

| | |
|---|---|
| LEGAL NAME: | Cavalli Family Trust Dated October 7, 2021 |
| CONTACT: | Kevin Cavalli |
| MAILING ADDRESS: | 2129 W San Remo Drive, Meridian, ID 83646 |
| CELL PHONE: | 775-722-1323 |
| E-MAIL ADDRESS: | kcavalli1973@gmail.com |
| SS # OR TAX ID: | ███-9534    (for 1099 purposes) |

PREFEERED PAYMENT METHOD:

PHYSICAL CHECK SENT OR AUTO-TRANSFER (ACH) TO YOUR ACCOUNT. IF ACH IS PREFERRED PLEASE PROVIDE THE NAME OF THE BANK, ROUTING NUMBER AND ACCOUNT # BELOW:

ACCOUNT NAME: Cavalli Family Trust DTD October 7, 2021

BANK NAME_____ U..S. Bank

ROUTING # ███████

ACCOUNT # ███████

| | |
|---|---|
| BENEFICIARY NAME: | Cavalli Trust |
| SS# or Tax ID: | N/A |
| RELATIONSHIP: | N/A |
| PERCENTAGE: | 100% |

SIGNATURE(S) OF ACCOUNT HOLDER(S):

Kevin Cavalli  04/13/2023
_____
Date

4310 Redwood Hwy; Suite 100; San Rafael, CA  94903
Phone: 415-479-6530 / Fax: 415-479-6525
www.trucktrailerfinance.com

DO NOT DESTROY THIS NOTE: When paid, this note with Equipment Finance Agreements Schedule "A" attached, securing same, must be surrendered to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.
10% (Ten-Percent) Annual Interest Only, Paid Monthly

$500,000 (Note 2)                    San Rafael, California                    April 13, 2023

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) promises to pay to Cavalli Family Trust Dated October 7, 2021 (Beneficiary), simple annual interest only, paid monthly, at the annual rate of ten-percent (10%) with all principal due on maturity. Sum Principal shall become due and payable three (3) years from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $500,000 or greater on the date of inception. All transactions attached shall contain monthly level payment amortizations payable to and received by CFS.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a present value security of not less than $500,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request.

THIS NOTE PAYS INTEREST ONLY, MONTHLY, IN THE AMOUNT OF $4,166.67. ANNUAL ACCUMILTIVE PAYMENTS RECEIVED SHALL EQUAL $50,000 (FIFTY-THOUSAND DOLLARS AND 00/100 CENTS) BASED ON TEN-PERCENT (10%) ANNUALIZED INTEREST THROUGH MATURITY. MATURITY IS APRIL 13, 2026.

This Note will renew with the same terms and conditions unless notification is received by CFS 90days prior to Note maturity with Beneficiaries intent to liquidate. This Note is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services                    Cavalli Family Trust Dated October 7, 2021

*David R. Stone*                    Apr 14, 2023          *OC*                    Apr 14, 2023
David R. Stone (Apr 14, 2023 17:15 PDT)              Kevin Cavalli (Apr 14, 2023 18:25 MDT)
David R. Stone d.b.a.              Date              Kevin Cavalli              Date
Cornerstone Financial Services

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated <u>April 13, 2023</u> by David R. Stone d.b.a.
Cornerstone Financial Services and the Cavalli Family Trust Dated October 7, 2021

|   | Investment | Present Value |
|---|---|---|
| 1 | Fundora Mojena, Yosmel | 66,293.39 |
| 2 | Duarte, Jesus R. #2 | 48,265.85 |
| 3 | Castillo, Elmer A. | 46,424.87 |
| 4 | De La Garza, Daniel | 93,417.79 |
| 5 | Osorio Betancourt, Victor M. | 52,901.42 |
| 6 | Randhawa, Harpreet | 61,920.49 |
| 7 | Henry, Allen P. | 70,507.24 |
| 8 | Moe, Patrick S. | 21,612.77 |
| 9 | Collins, Byron K. | 72,929.37 |
| Total Present Value: | | 534,273.19 |

This Schedule "A" attached, adjusted quarterly through maturity and equal
to not less than $500,000.00 in present value.

**Exhibit "5"**

DO NOT DESTROY THIS NOTE: When paid, this note with Equipment Finance Agreements Schedule "A" attached, securing same, must be surrendered to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.
8% (Eight-Percent) Annual Interest Only, Paid Monthly

$200,000 (Note 1)                    San Rafael, California                    April 13, 2023

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) promises to pay to Cavalli Family Trust Dated October 7, 2021 (Beneficiary), simple annual interest only, paid monthly, at the annual rate of eight-percent (8%) with all principal due on maturity. Sum Principal shall become due and payable one (1) year from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $200,000 or greater on the date of inception. All transactions attached shall contain monthly level payment amortizations payable to and received by CFS.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a present value security of not less than $200,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request.

THIS NOTE PAYS INTEREST ONLY, MONTHLY, IN THE AMOUNT OF $1,333.33.  ANNUAL ACCUMILTIVE PAYMENTS RECEIVED SHALL EQUAL $16,000 (SIXTEEN -THOUSAND DOLLARS AND 00/100 CENTS) BASED ON EIGHT-PERCENT (8%) ANNUALIZED INTEREST THROUGH MATURITY.  MATURITY IS APRIL 13, 2024.

This Note will renew with the same terms and conditions unless notification is received by CFS 90 days prior to Note maturity with Beneficiaries intent to liquidate.  This Note is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services                    Cavalli Family Trust Dated October 7, 2021

*David R. Stone*                    Apr 14, 2023            *ae*                    Apr 14, 2023
David R. Stone (Apr 14, 2023 17:15 PDT)                Kevin Cavalli (Apr 14, 2023 18:25 MDT)
David R. Stone d.b.a.            Date            Kevin Cavalli            Date
Cornerstone Financial Services

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated <u>April 13, 2023</u> by David R. Stone d.b.a.
Cornerstone Financial Services and the Cavalli Family Trust Dated October 7, 2021

|   | Investment | Present Value |
|---|------------|--------------|
| 1 | Valenzuela Orozco, Cayetano | 151,498.56 |
| 2 | Fuentes Garcia, Ignacio | 78,791.55 |
| Total Present Value: | | 230,290.11 |

This Schedule "A" attached, adjusted quarterly through maturity and equal
to not less than $200,000.00 in present value.

**Exhibit "5"**
**Page 65**

Exhibit "6"

**Fill in this information to identify the case:**

Debtor 1   David Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **25-12353**

FILED

**U.S. Bankruptcy Court**
**Central District of California**

5/16/2025

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Pizza, Jack

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor        John J Pizza

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Pizza, Jack | |
| Name | Name |
| 4 Luzanne Circle<br>San Anselmo, CA 94960 | |
| Contact phone    415-686-0361 | Contact phone _____ |
| Contact email    pizzafam17@gmail.com | Contact email _____ |
| Uniform claim identifier (if you use one): _____ | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
                                                                                                                MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Exhibit "6"**
**Page 66**

Case 6:25-bk-12353-SY    Claim 12-1    Filed 05/16/25    Desc Main Document    Page 2 of 3

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 100000.00    **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Secured Promissary Note dated September 17, 2021

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
   **Nature of property:**
   ☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☑ Other. Describe:    Balance owing to Debtor in leased trucks

   **Basis for perfection:**    _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $ 103449.00

   **Amount of the claim that is secured:**    $ 100000.00

   **Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $ 100000.00

   **Annual Interest Rate** (when case was filed)    10    %

   ☑ Fixed
   ☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property:    _____

**Exhibit "6"**

**Page 67**

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|---|

A claim may be priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/16/2025
                    MM / DD / YYYY

/s/  Jack Pizza

Signature

Print the name of the person who is completing and signing this claim:

Name          Jack Pizza

              First name      Middle name      Last name

Title         _____

Company       _____

              Identify the corporate servicer as the company if the authorized agent is a servicer

Address       4 Luzanne Circle
              _____
              Number   Street
              San Anselmo, CA 94960
              _____
              City   State   ZIP Code

Contact phone   415–686–0361          Email   pizzafam17@gmail.com

**Exhibit "6"**
**Page 68**

## NOTE

DO NOT DESTROY THIS NOTE: When paid, this Note with Equipment Finance Agreements Schedule "A" attached, securing same, must be surrendered to Beneficiary upon maturity.

$100,000.00                          San Rafael, California                          September 17, 2021

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) promises to pay to John J. Pizza and Patricia T. Pizza, as Trustees of The Pizza Family Trust dated August 10, 2004, as amended (Beneficiary), simple annual interest at the annual rate of 10% (ten-percent) with interest paid annually and sum principal due and payable three (3) years from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of a single or multiple transactions equal to $100,000.00 or greater on the date of inception. All transactions attached shall contain monthly level payment amortizations payable to and received by CFS.  CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a present value security of not less than $100,000.00 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality typical of all general business. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future date through maturity and upon request.

This note earns annualized interest only in the amount of $10,000.00 (ten-thousand dollars and 00/100 cents), based on 10% (ten-percent). Annualized interest is due and payable annually on September 17 of that given year while the Note is in effect.  Maturity is September 17, 2024.  This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

Form 1099 interest distributions will be provided by CFS, in favor of Beneficiary, according to applicable law.

This Note is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Promissory Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a.
Cornerstone Financial Services

*David R. Stone*
David R. Stone (Sep 20, 2021 10:05 PDT)
David R. Stone

John J. Pizza and Patricia T. Pizza,
as Trustees of The Pizza Family Trust
dated August 10, 2004, as amended

Patty Pizza (Sep 16, 2021 16:27 PDT)
John J. Pizza

*Patricia Pizza*
Patricia Pizza (Sep 16, 2021 16:27 PDT)
Patricia T. Pizza

**Exhibit "6"**
**Page 69**

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated September 17, 2021 by David R. Stone d.b.a.
Cornerstone Financial Services and Beneficiary

| | | | Transaction | Present Value |
|---|---|---|---|---|
| 1 | | | Francisco Gomez | $ 103,449.68 |
| Total | | | | $ 103,449.68 |

Exhibit "7"

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1   David Stone | |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court   **Central District of California** | |
| Case number:  **25−12353** | |

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

6/5/2025

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Robert Terheyden

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor
_____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Robert Terheyden | |
| Name | Name |
| 7 Burning Tree Dr. | |
| Novato, CA 94949 | |
| Contact phone _____4158282652_____ | Contact phone _____ |
| Contact email ____rob@clipperint.com____ | Contact email _____ |
| Uniform claim identifier (if you use one): _____ | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Exhibit "7"**
**Page 71**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
- [ ] No
- [x] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**   $   450000.00

**Does this amount include interest or other charges?**
- [x] No
- [ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Investments

**9. Is all or part of the claim secured?**
- [ ] No
- [x] Yes. The claim is secured by a lien on property.
  **Nature of property:**
  - [ ] Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
  - [ ] Motor vehicle
  - [x] Other. Describe:   Multiple transactions

  **Basis for perfection:**   Notes

  Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

  **Value of property:**   $   493165.37

  **Amount of the claim that is secured:**   $   450000.00

  **Amount of the claim that is unsecured:**   $   0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

  **Amount necessary to cure any default as of the date of the petition:**   $   450000.00

  **Annual Interest Rate** (when case was filed)   12   %

  - [x] Fixed
  - [ ] Variable

**10. Is this claim based on a lease?**
- [x] No
- [ ] Yes. **Amount necessary to cure any default as of the date of the petition.** $

**11. Is this claim subject to a right of setoff?**
- [x] No
- [ ] Yes. Identify the property: _____

**Exhibit "7"**

**Page 72**

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| --- | --- | --- | --- | --- |

| | ☐ Yes. *Check all that apply:* | Amount entitled to priority |
| --- | --- | --- |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     6/5/2025

                     MM / DD / YYYY

/s/  Robert Terheyden

Signature

Print the name of the person who is completing and signing this claim:

Name          Robert Terheyden

              First name     Middle name     Last name

Title

Company

              Identify the corporate servicer as the company if the authorized agent is a servicer

Address       7 Burning Tree Dr.

              Number   Street
              Novato, CA 94949

              City   State   ZIP Code

Contact phone    4158282652         Email        rob@clipperint.com

**Exhibit "7"**

**Page 73**



**Cornerstone
Financial Services**
A National Leader in Commercial
Truck and Trailer Financing

LEGAL NAME: ROBERT M. TERHEYDEN, Trustee of the ROBERT M. TERHEYDEN
FAMILY TRUST dated August 23, 2022

NAME: Robert Terheyden

MAILING ADDRESS: 7 Burning Tree Drive, Novato, CA 94949

CELL PHONE: 415-828-2652

E-MAIL ADDRESS: rob@clipperint.com

SS # OR TAX ID: (for 1099 purposes)

PREFEERED PAYMENT
METHOD:

PHYSICAL CHECK SENT OR AUTO-TRANSFER (ACH) TO YOUR
ACCOUNT. IF ACH IS PREFERRED PLEASE PROVIDE THE NAME OF
THE BANK, ROUTING NUMBER AND ACCOUNT # BELOW:

ACCOUNT NAME: Robert Terheyden

BANK NAME: Wells Fargo

ROUTING # _____

ACCOUNT # _____

BENEFICIARY NAME: ROBERT M. TERHEYDEN FAMILY TRUST dated August 23, 2022

SS# or Tax ID: N/A

RELATIONSHIP: N/A

PERCENTAGE: 100%

SIGNATURE(S) OF ACCOUNT HOLDER(S):

Robert Terheyden, Trustee

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$250,000                                                                                  San Rafael, California

Start Date: June 27, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone d.b.a. Cornerstone Financial Services (CFS) hereby assigns to <u>ROBERT M. TERHEYDEN, Trustee of the ROBERT M. TERHEYDEN FAMILY TRUST dated August 23, 2022</u>  (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $250,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $250,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $250,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $2,500.00 (Two-thousand five-hundred dollars and 00/100). Annual accumulative payments received shall equal $30,000.00 based on twelve percent (12%) annualized interest.

Maturity is 3 years from Note inception (<u>June 27, 2027</u>). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a.                                    ROBERT M. TERHEYDEN, Trustee of the ROBERT d.b.a.
Cornerstone Financial Services                          M. TERHEYDEN FAMILY TRUST dated August 23, 2022

*David Stone*                                           *Rob T.*
David Stone ( Jun 26, 2024 12:11 PDT)
_____                         _____
David R. Stone                                          Robert Terheyden, Trustee

**Exhibit "7"**
**Page 75**

Equipment Finance Agreement Schedule "A" attached to that certain Note dated <u>June 27, 2024 </u>by David R. Stone
d.b.a. Cornerstone Financial Services  and

ROBERT M. TERHEYDEN, Trustee of the ROBERT M TERHEYDEN FAMILY TRUST dated August 23, 2022

|   | Transaction | Present Value |
|---|---|---|
| 1 | Villarreal, Edgar | 43,213.50 |
| 2 | Jackson, Carlos | 68,304.29 |
| 3 | Lopez, Leticia | 71,582.69 |
| 4 | Garcia, Andy | 92,226.89 |
| TOTAL | | 275,327.37 |

**Exhibit "7"**
**Page 76**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$200,000                                                                                  San Rafael, California

Start Date: December 12, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone d.b.a. Cornerstone Financial Services (CFS) hereby assigns to ROBERT M. TERHEYDEN, Trustee of the ROBERT M. TERHEYDEN FAMILY TRUST dated August 23, 2022   (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the sum value of $200,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a sum value of multiple transactions equal to $200,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a sum value security of not less than $200,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $2,000.00 (Two-thousand dollars and 00/100). Annual accumulative payments received shall equal $24,000.00 based on twelve percent (12%) annualized interest.

Maturity is 3 years from Note inception (December 12, 2027). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a.
**Signature:** Cornerstone Financial Services                    ROBERT M. TERHEYDEN, Trustee of the ROBERT d.b.a.
                                                                  M TERHEYDEN FAMILY TRUST dated August 23, 2022
**Signature:**

**Email:** dstone@trucktrailerfinance.com                        **Email:** rob@clipperint.com

_____                                   _____
David R. Stone                                                   Robert Terheyden, Trustee

By my signature below Beneficiary authorizes CFS to deduct $200,000 from Beneficiary Wells Fargo account ending in 6240 on or after December 12, 2024.
        **Signature:**
        _____
        **Email:** rob@clipperint.com

Equipment Finance Agreement Schedule "A" attached to that certain Note dated <u>December 12, 2024</u> by
David R. Stone d.b.a. Cornerstone Financial Services and
ROBERT M. TERHEYDEN, Trustee of the ROBERT M TERHEYDEN FAMILY TRUST dated August 23, 2022

| | | Transaction | Sum Value |
|---|---|---|---|
| 1 | | Vera Caballero, Victor | 54,516.00 |
| 2 | | Garibay Medina, Juan C. | 59,400.00 |
| 3 | | Durazo, Alfonso F. | 41,600.00 |
| 4 | | Gomez, Jose G. and Baltazar, Jose L. | 62,322.00 |
| TOTAL | | | 217,838.00 |

Exhibit "8"

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | David Robert Stone |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 6:25-bk-12353-SY |



**FILED**

JUN - 9 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Marc Sebastian<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>Marc Sebastian<br>Name<br>607 Fairway Dr<br>Number    Street<br>Novato        Ca        94949<br>City        State        ZIP Code<br><br>Contact phone (415) 407-9720<br>Contact email _____<br><br>Uniform claim identifier (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| | | **Where should payments to the creditor be sent? (if different)**<br>Marc Sebastian<br>Name<br>607 Fairway Dr<br>Number    Street<br>Novato        Ca        94949<br>City        State        ZIP Code<br><br>Contact phone (415) 407-9720<br>Contact email marcsebastian1969@outlook.com |
| 4. | Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/_____<br>                                                                                              MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Exhibit "8"**
**Page 79**

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

   ☐ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___  ___  ___  ___

7. **How much is the claim?**   $_____500,000.00. **Does this amount include interest or other charges?**

   ☐ No
   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   <u>Money was given as an investment, with 10% paid monthly in interes</u>

9. **Is all or part of the claim secured?**

   ☐ No
   ☑ Yes.   The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   ☑ Motor vehicle
   ☐ Other. Describe:   <u>notes on multiple semi trucks</u>

   **Basis for perfection:**   <u>my 1099 from cornerstone and multiple emails from Dawn</u>
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**   $_____500,000.00
   **Amount of the claim that is secured:**   $_____500,000.00

   **Amount of the claim that is unsecured:** $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**   $_____500,000.00

   **Annual Interest Rate** (when case was filed) _10.00_%
   ☑ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**

    ☐ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

11. **Is this claim subject to a right of setoff?**

    ☐ No
    ☐ Yes. Identify the property: _____

**Exhibit "8"**
**Page 80**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

*\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.*

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    06/04/2025
                    MM / DD / YYYY

**Marc Sebastian**
Signature

Print the name of the person who is completing and signing this claim:

Name        Marc Steven Sebastian
            First name        Middle name        Last name

Title        _____

Company    _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    607 Fairway Dr
            Number        Street

            Novato                    Ca            94949
            City                     State         ZIP Code

Contact phone    (415) 407-9720        Email    marcsebastian1969@outlook.com

**Exhibit "8"**
**Page 81**

☐ CORRECTED (if checked)

| | | |
|---|---|---|
| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br><br>**Cornerstone Financial Services**<br>**4310 Redwood Hwy; Ste 100**<br><br>**San Rafael, CA 94903**<br>**(415) 479-6530** | Payer's RTN (optional) | OMB No. 1545-0112<br><br>Form **1099-INT**<br>(Rev. January 2024)<br>For calendar year **2024** | **Interest Income** |
| | 1 Interest income<br>$ 50000.04 | | |

| | | |
|---|---|---|
| | 2 Early withdrawal penalty<br>$ | Copy B<br><br>**For Recipient** |
| PAYER'S TIN<br>**68-0013405** | RECIPIENT'S TIN<br>**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** | 3 Interest on U.S. Savings Bonds and Treas. obligations<br>$ | |
| RECIPIENT'S name<br>**Marc Sebastian** | 4 Federal income tax withheld<br>$ | 5 Investment expenses<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| Street address (including apt. no.)<br>**607 Fairway Dr** | 6 Foreign tax paid<br>$ | 7 Foreign country or U.S. territory | |
| | 8 Tax-exempt interest<br>$ | 9 Specified private activity bond interest<br>$ | |
| City or town, state or province, country, and ZIP or foreign postal code<br>**Novato, CA 94949** | 10 Market discount<br>$ | 11 Bond premium<br>$ | |
| FATCA filing requirement ☐ | 12 Bond premium on Treasury obligations<br>$ | 13 Bond premium on tax-exempt bond<br>$ | |
| Account number (see instructions) | 14 Tax-exempt and tax credit bond CUSIP no. | 15 State  16 State identification no.  17 State tax withheld<br>$<br>$ | |

Form **1099-INT** (Rev. 1-2024)        (keep for your records)        www.irs.gov/form1099int        Department of the Treasury - Internal Revenue Service

## Instructions for Recipient

The information provided may be different for covered and noncovered securities. For a description of covered securities, see the Instructions for Form 8949. For a taxable covered security acquired at a premium, unless you notified the payer in writing in accordance with Regulations section 1.6045-1(n)(5) that you did not want to amortize the premium under section 171, or for a tax-exempt covered security acquired at a premium, your payer must generally report either (1) a net amount of interest that reflects the offset of the amount of interest paid to you by the amount of premium amortization allocable to the payment(s), or (2) a gross amount for both the interest paid to you and the premium amortization allocable to the payment(s). If you did notify your payer that you did not want to amortize the premium on a taxable covered security, then your payer will only report the gross amount of interest paid to you. For a noncovered security acquired at a premium, your payer is only required to report the gross amount of interest paid to you.

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**FATCA filing requirement.** If the FATCA filing requirement box is checked, the payer is reporting on this Form 1099 to satisfy its chapter 4 account reporting requirement. You may also have a filing requirement. See the Instructions for Form 8938.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Payer's Routing Transit Number (RTN).** A payer may include the RTN to identify the bank or financial institution where your account is held.

**Box 1.** Shows taxable interest paid to you during the calendar year by the payer. This does not include interest shown in box 3. May also show the total amount of the credits from clean renewable energy bonds, new clean renewable energy bonds, qualified energy conservation bonds, qualified zone academy bonds, qualified school construction bonds, and build America bonds that must be included in your interest income. These amounts were treated as paid to you during the calendar year on the credit allowance dates (March 15, June 15, September 15, and December 15). For more information, see Form 8912. See the instructions above for a taxable covered security acquired at a premium.

**Box 2.** Shows interest or principal forfeited because of early withdrawal of time savings. You may deduct this amount to figure your adjusted gross income on your income tax return. See the Instructions for Form 1040 to see where to take the deduction.

**Box 3.** Shows interest on U.S. Savings Bonds, Treasury bills, Treasury bonds, and Treasury notes. This may or may not all be taxable. See Pub. 550. This interest is exempt from state and local income taxes. This interest is not included in box 1. See the instructions above for a taxable covered security acquired at a premium.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold if you did not furnish your TIN or you did not furnish the correct TIN to the payer.

See Form W-9. Include this amount on your income tax return as tax withheld.

**Box 5.** Any amount shown is your share of investment expenses of a single-class REMIC. This amount is included in box 1. Note: This amount is not deductible.

**Box 6.** Shows foreign tax paid. You may be able to claim this tax as a deduction or a credit on your Form 1040 or 1040-SR. See your tax return instructions.

**Box 7.** Shows the country or U.S. territory to which the foreign tax was paid.

**Box 8.** Shows tax-exempt interest paid to you during the calendar year by the payer. See how to report this amount in the Instructions for Form 1040. This amount may be subject to backup withholding. See Box 4 above. See the instructions above for a tax-exempt covered security acquired at a premium.

**Box 9.** Shows tax-exempt interest subject to the alternative minimum tax. This amount is included in box 8. See the Instructions for Form 6251. See the instructions above for a tax-exempt covered security acquired at a premium.

**Box 10.** For a taxable or tax-exempt covered security, if you made an election under section 1278(b) to include market discount in income as it accrues and you notified your payer of the election in writing in accordance with Regulations section 1.6045-1(n)(5), shows the market discount that accrued on the debt instrument during the year while held by you, unless it was reported on Form 1099-OID. For a taxable or tax-exempt covered security acquired at or after original issue, shows market discount that accrued during the year. See Pub. 550 and the Instructions for Schedule B (Form 1040) to determine the net amount includible in income on Form 1040 or 1040-SR with respect to the U.S. Treasury obligation. If an amount is not reported in this box for a U.S. Treasury obligation that is a covered security acquired at a premium and the payer is reporting premium amortization, the payer has reported a net amount of interest in box 3. If the amount in box 12 is greater than the amount of interest paid on the U.S. Treasury obligation, see Regulations section 1.171-2(a)(4).

**Box 11.** For a taxable covered security (other than a U.S. Treasury obligation), shows the amount of premium amortization allocable to the interest payment(s), unless you notified the payer in writing in accordance with Regulations section 1.6045-1(n)(5) that you did not want to amortize bond premium under section 171. If an amount is reported in this box, see the Instructions for Schedule B (Form 1040) to determine the net amount of interest includible in income on Form 1040 or 1040-SR with respect to the security. If an amount is not reported in this box for a taxable covered security acquired at a premium, the payer has reported a premium amortization for the covered security acquired at a premium, the payer has reported a premium amortization allocable to it. If the amount has not been reported and you believe it should have been reported to you, then you may want to make a constant yield election for market discount under section 1276(b). Report the accrued market discount on your income tax return as directed in the Instructions for Form 1040. Market discount on a tax-exempt security is includible in taxable income as interest income.

**Box 12.** For a U.S. Treasury obligation that is a covered security, shows the amount of premium amortization allocable to the interest

payment(s), unless you notified the payer in writing in accordance with Regulations section 1.6045-1(n)(5) that you did not want to amortize bond premium under section 171. If an amount is reported in this box, see the Instructions for Schedule B (Form 1040) to determine the net amount of interest includible in income on Form 1040 or 1040-SR with respect to the U.S. Treasury obligation. If an amount is not reported in this box for a U.S. Treasury obligation that is a covered security acquired at a premium and the payer is reporting premium amortization, the payer has reported a net amount of interest in box 3. If the amount in box 12 is greater than the amount of interest paid on the U.S. Treasury obligation, see Regulations section 1.171-2(a)(4).

**Box 13.** For a tax-exempt covered security, shows the amount of premium amortization allocable to the interest payment(s). If an amount is reported in this box, see Pub. 550 to determine the net amount of tax-exempt interest reportable on Form 1040 or 1040-SR. If an amount is not reported in this box for a tax-exempt covered security acquired at a premium, the payer has reported a net amount of interest in box 8 or 9, whichever is applicable. If the amount in box 13 is greater than the amount of interest paid on the tax-exempt covered security, the excess is a nondeductible loss. See Regulations section 1.171-2(a)(4)(ii).

**Box 14.** Shows CUSIP number(s) for tax-exempt bond(s) on which tax-exempt interest was paid, or tax credit bond(s) on which taxable interest was paid or tax credit was allowed, to you during the calendar year. If blank, no CUSIP number was issued for the bond(s).

**Boxes 15-17.** State tax withheld reporting boxes.

**Nominees.** If this form includes amounts belonging to another person(s), you are considered a nominee recipient. Complete a Form 1099-INT for each of the other owners showing the income allocable to each. File Copy A of the form with the IRS. Furnish Copy B to each owner. List yourself as the "payer" and the other owner(s) as the "recipient." File Form(s) 1099-INT with Form 1096 with the Internal Revenue Service Center for your area. On Form 1096, list yourself as the "filer." A spouse is not required to file a nominee return to show amounts owned by the other spouse.

**Future developments.** For the latest information about developments related to Form 1099-INT and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099INT.

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

**Exhibit "8"**
**Page 82**

**Wednesday, June 4, 2025 at 11:07:42 AM Pacific Daylight Time**

**Subject:** RE: Cornerstone
**Date:**    Tuesday, October 3, 2023 at 1:34:20 PM Pacific Daylight Time
**From:**    dstanley@trucktrailerfinance.com
**To:**       Marc Sebastian

Hi Marc; I will be sending your Note, information request and wire instructions out shortly. It
will come from Adobe Echo Sign so look for that email. Let me know if you have any questions.

Thank You
Dawn Stanley

**From:** Marc Sebastian <marcsebastian1969@outlook.com>
**Sent:** Tuesday, October 3, 2023 10:01 AM
**To:** dstanley@trucktrailerfinance.com
**Subject:** Re: Cornerstone

Good morning Dawn. The name of my trust is : The Sebastian Family Trust 2013.

You are correct for $500k. I will can have money transferred from Goldman directly I believe. I don't
believe Lisa needs to sign anything.
Thank you
Marc S. Sebastian


On Oct 2, 2023, at 1:44 PM, dstanley@trucktrailerfinance.com wrote:


Good Afternoon Marc;

I am back and ready to go on the new Investment. Just to confirm you will be doing
an initial $500k correct?  A few questions so I can get the Note started;

What is the exact name of the trust you want the note titled in and what day would
you like to wire the funds?

I have attached wire instructions as well.

Once I have trust information I will create the Note and send out for your electronic
signature. If there will be any other signers (i.e.; your wife) let me know her name
and email address. Along with the Note I will send an information request to
gather all other pertinent information including 1099 fed ID information.

Always available for any questions you may have.

**Exhibit "8"**
**Page 83**

Dawn Stanley
415-531-4968

<Wire Instructions-Westamerica 3.docx>

Exhibit "9"

**Fill in this information to identify the case:**

Debtor 1      David Robert Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   6:25-bk-12353



FILED
JUN 16 2025
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Barbara A. Stenning
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   *BARBARA STENNING*

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Barbara Stenning
Name

82400 West Mc Carroll Drive
Number        Street

Indio            CA        92201
City            State        ZIP Code

Contact phone   (760) 777-0117

Contact email _____

Where should payments to the creditor be sent? (if different)

Name

Number        Street

City            State        ZIP Code

Contact phone _____

Contact email   bstenning@realizeurvision.com

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
          MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                    **Proof of Claim**                    page 1

**Exhibit "9"**
**Page 85**

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  9  2  9  9

**7. How much is the claim?**    $_____1,259,327.34. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_total Secured promissory notes and unpaid interest not in bk7 AND NOT PAID_

**9. Is all or part of the claim secured?**

☐ No
☑ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    LargeTruck loans to borrowers and loan amounts for each note

**Basis for perfection:**    financing statements

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $____1,259,327.34
**Amount of the claim that is secured:**    $____1,259,327.34
**Amount of the claim that is unsecured:** $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $____1,259,327.34

**Annual Interest Rate** (when case was filed) _10.00_ %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: $80,558.34 _OWed IN INTEREST ON NOTE 8 NOT PAID_

---

**Exhibit "9"**
**Page 86**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/30/2025
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Barbara | Ann | Stenning |
|---|---|---|---|
| | First name | Middle name | Last name |

Title  _____

Company  _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  82400 West Mc Carroll Drive
         Number    Street

         Indio                    Ca        92201
         City                     State     ZIP Code

Contact phone  (760) 777-0117        Email  bstenning@realizeurvision.com

---

**Exhibit "9"**
**Page 87**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

Note 7 Source of Funds

| Note 2 Payoff | 266,200.00 |
| Note 4 Payoff | 165,653.94 |
| Note 5 Payoff | 241,841.10 |
| Note 6 Payoff | 155,073.97 |
| Total to Note 7 | 828,769.01 |

Start Date: February 5, 2024

San Rafael, California

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to  Barbara Stenning  (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $828,769.01 at the prevailing rate stated herein for a two (2) year term.  Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $828,769.01 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $828,769.01 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $6,906.41 (Six-thousand nine-hundred six dollars and 41/100). Annual accumulative payments received shall equal $82,876.90 based on ten percent (10%) annualized interest.

Maturity is 2 years form Note inception (  February 5, 2026 ).  This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with Beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services

*David Stone*

David Stone (Jan 22, 2024 10:28 PST)

David R. Stone, Owner          Date

Barbara Stenning

*Barbara Stenning*

Barbara Stenning (Jan 19, 2024 15:47 PST)

Barbara Stenning          Date

DO NOT DESTROY THIS NOTE: When paid, this note must be surrendered to Beneficiary.

**NOTE SECURED BY EQUIPMENT FINANCE AGREEMENTS (EFA) with Schedule "A" attached.**
**10% (ten-percent) Annual Interest, Interest and Principal due on Maturity**

$200,000  *NOTE 2*                  San Rafael, California                  February 5, 2019

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) promises to pay to Barbara Stenning, Beneficiary, simple annual interest at the annual rate of 10% (ten-percent) with all interest and Principal due on maturity. Sum Principal and Interest shall become due and payable three (3) years from Note inception, unless mutually renewed by notice. Inception shall be the date incorporated herein.

The Schedule "A" attached shall represent a present value of multiple transactions equal to $200,000.00 or greater on the date of inception. All transactions attached shall contain monthly level payment amortizations payable to and received by CFS. CFS charges no fees for the management of this Note.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a present value security of not less than $200,000.00 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality typical of all general business through early termination or full payout. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This Note earns interest-only, compounded annually, in the amount of $66,200 ($20,000.00/year one, $22,000.00/year two, $24,200.00/year three), based on 10% (ten-percent). Maturity is February 5, 2022. This Note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to Note maturity with Beneficiaries intent to liquidate.

This Note is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

_____          _____
David R. Stone d.b.a.                                      Barbara Stenning
Cornerstone Financial Services

**DO NOT DESTROY THIS NOTE:** When paid, this note must be surrendered to Beneficiary.

*NOTE 4*

NOTE SECURED BY EQUIPMENT FINANCE AGREEMENTS (EFA) with Schedule "A" attached.
10% (ten-percent) Annual Interest, Interest and Principal due on Maturity

$135,827.67                    San Rafael, California                    January 1, 2020

Source of Funds are from Note 1 (Interest Transfer of $135,827.67)

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) promises to pay to Barbara Stenning, Beneficiary, simple annual interest at the annual rate of 10% (ten-percent) with all interest and Principal due on maturity. Sum Principal and Interest shall become due and payable three (3) years from Note inception, unless mutually renewed by notice. Inception shall be the date incorporated herein.

The Schedule "A" attached shall represent a present value of multiple transactions equal to $135,827.67 or greater on the date of inception. All transactions attached shall contain monthly level payment amortizations payable to and received by CFS. CFS charges no fees for the management of this Note.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a present value security of not less than $135,827.67 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality typical of all general business through early termination or full payout. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This Note earns interest-only, compounded annually, in the amount of $44,958.96 ($13,582.77/year one, $14,941.04/year two, 16,435.15/year three), based on 10% (ten-percent). Maturity is January 1, 2023. This Note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to Note maturity with Beneficiaries intent to liquidate.

This Note is an integral part of the overall security. Any violation as to the terms and conditions of this Note is grounds for default by Beneficiary or its assigns and with all legal remedies available to Beneficiary. The prevailing party in any action shall be entitled to the recovery of all costs, including attorney's fees.

*David R. Stone*
David R. Stone (Jan 16, 2020)
David R. Stone d.b.a.
Cornerstone Financial Services

*BSt*
Barbara Stenning (Jan 16, 2020)
Barbara Stenning

**Exhibit "9"**
**Page 90**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

<u>$240,0000 (Note 5)</u>                                                                                    San Rafael, California

Source of Funds are from Note 3 (Principal Transfer of $240,000)

Start Date: January 8, 2021

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to <u>Barbara Stenning</u> (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $240,000 at the prevailing rate stated herein for a three (3) year term.  Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $240,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $240,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $2,000 (Two-thousand dollars and 00/100). Annual accumulative payments received shall equal $24,000 based on ten percent (10%) annualized interest.

Maturity is 3 years form Note inception ( <u>January 8, 2024</u> ).  This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with Beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services                          Barbara Stenning

_____          _____
David R. Stone, Owner          Date                    Barbara Stenning          Date

Exhibit "9"
Page 91

Equipment Finance Agreement Schedule "A" attached to that certain Note 5
dated January 8, 2021 by David R. Stone d.b.a. Cornerstone Financial Services and
Barbara Stenning

|   | Transaction | Present Value |
|---|---|---|
| 1 | Luis Gonzalez | $  38,177.03 |
| 2 | Michael Thomas | 26,222.41 |
| 3 | Charles Green | 56,608.39 |
| 4 | Jorge Miranda | 41,280.78 |
| 5 | Melvin Whittington | 21,005.25 |
| 6 | Alejandro Garcia | 80,107.90 |
| TOTAL | | $  263,401.76 |

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

<u>$140,0000 (Note 6)</u>                                                                                  San Rafael, California

Source of Funds are from Note 3 (Transfer of $120,000) and new money received in the amount of $20,000

Start Date: January 8, 2021

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to <u>Barbara Stenning</u> (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $140,000 at the prevailing rate stated herein for a three (3) year term.  Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $140,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $140,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This Note earns interest-only, compounded annually, in the amount of $52,960.00 ($16,000.00/year one, $17,600.00/year two, 19,360.00/year three), based on 10% (ten-percent).  Maturity is <u>January 8, 2024</u>.  This Note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to Note maturity with Beneficiaries intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services                              Barbara Stenning


_____          _____
David R. Stone, Owner          Date                   Barbara Stenning          Date

Equipment Finance Agreement Schedule "A" attached to that certain Note 6
dated January 8, 2021 by David R. Stone d.b.a. Cornerstone Financial Services and
Barbara Stenning

|   | Transaction | Present Value |
|---|---|---|
| 1 | Jose Bonilla | 77,931.08 |
| 2 | Jamie Gonzalez | 53,087.60 |
| TOTAL | | 131,018.68 |

**Exhibit "9"**
**Page 94**

**DO NOT DESTROY THIS NOTE:** When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

**NOTE SECURED BY EFA Schedule "A" attached.**

$350,000 (Note 8)                                                                                    San Rafael, California

Start Date: February 7, 2023

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to  Barbara Stenning (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $350,000 at the prevailing rate stated herein for a three (3) year term.  Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $350,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that they have entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $350,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This Note earns interest-only, compounded annually, in the amount of $115,850 ($35,000/year one, $38,500/year two, 42,350/year three), based on 10% (ten-percent).  Maturity is  February 7, 2026.  This Note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to Note maturity with Beneficiaries intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

Cornerstone Financial Services                              Barbara Stenning

*David R. Stone*                                             *Barbara Stenning*
David R. Stone (Feb 8, 2023 12:09 PST)                       Barbara Stenning (Feb 6, 2023 16:38 PST)

David R. Stone, Owner           Date                         Barbara Stenning           Date

Equipment Finance Agreement Schedule "A" attached to that certain Note 8
dated February 7, 2026 by David R. Stone d.b.a.
Cornerstone Financial Services and Barbara Stenning

|   | Transaction | Present Value |
|---|---|---|
| 1 | Cynthia Alvidrez Pacheco | 94,548.73 |
| 2 | Cordova Rico, Jaime L | 98,491.54 |
| 3 | Sergio Valles & Veronica N. Flores | 81,153.18 |
| 4 | Fredericks Jr., Kenneth H. | 95,279.06 |
| TOTAL | | 369,472.51 |

Exhibit "9"
Page 96

Exhibit "10"

| **Fill in this information to identify the case:** | |
|---|---|
| Debtor 1   David Stone | |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court   **Central District of California** | |
| Case number:  **25−12353** | |

FILED

**U.S. Bankruptcy Court**
**Central District of California**

6/23/2025

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1:   Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Patricia Ann Lateef<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Patricia Ann Lateef<br>Name<br><br>c/o Hanson Bridgett LLP<br>Attn: Anthony Dutra<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br><br>Contact phone    4159955141<br><br>Contact email<br>adutra@hansonbridgett.com<br><br>Uniform claim identifier (if you use one): | **Where should payments to the creditor be sent?** (if different)<br><br>Patricia Ann Lateef<br>Name<br><br>8 Idlewood Road<br><br>Kentfield, CA 94904<br><br>Contact phone<br><br>Contact email |

| | | |
|---|---|---|
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) | Filed on ____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? | |

**Exhibit "10"**
**Page 97**

Case 6:25-bk-12353-SY    Claim 23-1    Filed 06/23/25    Desc Main Document    Page 2 of 3

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $      240000.00        **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>      Secured Promissory Notes |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☑ Other. Describe:      Receivables<br><br>**Basis for perfection:**  _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**          $      240000.00<br>**Amount of the claim that is secured:**   $      240000.00<br>**Amount of the claim that is unsecured:**   $      0.00      (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate** (when case was filed)   10   %<br><br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                          Proof of Claim                          page 2

**Exhibit "10"**
**Page 98**

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| | | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   6/23/2025

MM / DD / YYYY

/s/  Anthony James Dutra

Signature

Print the name of the person who is completing and signing this claim:

Name   Anthony James Dutra

First name   Middle name   Last name

Title   Attorney at Law

Company   Hanson Bridgett LLP

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   425 Market Street, 26th Floor

Number   Street

San Francisco, CA 94105

City   State   ZIP Code

Contact phone   4159955141   Email   adutra@hansonbridgett.com

**Exhibit "10"**

**Page 99**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$120,000                                                                    San Rafael, California

October 19, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to Khateeb Afsar and Patricia Ann Lateef (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $120,000 at the prevailing rate stated herein for a three (3) year term.  Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $120,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $120,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid quarterly, in the amount of $3,000 (Three-thousand dollars). Annual accumulative payments received shall equal $12,000 based on ten-percent (10%) annualized interest.

       Khateeb Afsar and Patricia Ann Lateef located at Merrill Lynch – Account # _____          .

Beneficiary is ___ Holden Joseph Lateef _____ .

Maturity is 3 years form Note inception (October 19, 2027).  This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.


_____           _____  8/26/24
David R. Stone d.b.a.                        Khateeb Afsar Lateef          Date
Cornerstone Financial Services

                                           _____  8/26/24
                                           Patricia Ann Lateef            Date

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated October 19, 2024 by David R. Stone d.b.a.
Cornerstone Financial Services and Khateeb Afsar Lateef

|   |   | Transaction | Present Value |
|---|---|---|---|
| 1 |   | Hilton Hopkinson | 54,225.70 |
| 2 |   | Basil Mbuba | 69,328.70 |
| TOTAL |   |   | 123,554.40 |

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$120,000                                                                                                  San Rafael, California

Start Date:     October 23, 2022

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a.
Cornerstone Financial Services (CFS) hereby assigns to Khateeb Afsar and Patricia Ann Lateef (Beneficiary) a security interest in a multiple
of transactions equal too, but not less then, the Present Value of $120,000 at the prevailing rate stated herein for a three (3) year term.
Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be
the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $120,000 or greater on the date of
inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary
acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain
transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a
Present Value security of not less than $120,000 through maturity. CFS shall exercise care that all attached transaction shall contain a
level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive
Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid quarterly, in the amount of $3,000 (Three-thousand dollars). Annual accumulative payments received
shall equal $12,000 based on ten-percent (10%) annualized interest.  Payments are to be made to the account of

_____Khateeb Afsar and Patricia Ann Lateef located at Merrill Lynch – Account #_____.

Beneficiary is_____Holden Joseph Lateef_____.

Maturity is 3 years form Note inception (October 23, 2025).  This note will renew with the same terms and conditions unless notification
is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The
prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.


_____                                    _____
David R. Stone d.b.a.                                              Khateeb Afsar Lateef            Date
Cornerstone Financial Services

                                                                          _____
                                                                          Patricia Ann Lateef            Date

Exhibit "11"

**Fill in this information to identify the case:**

| Debtor 1 | David Stone |
|---|---|
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **Central District of California** |
| Case number: | **25−12353** |

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

6/23/2025

**Kathleen J. Campbell, Clerk**

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:    Identify the Claim**

| | |
|---|---|
| **1. Who is the current creditor?** | Khateeb Afsar Lateef |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No ☐ Yes. From whom? |

| **3. Where should notices and payments to the creditor be sent?** | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Khateeb Afsar Lateef | Khateeb Afsar Lateef |
| | Name | Name |
| | c/o Hanson Bridgett LLP Attn: Anthony Dutra 425 Market Street, 26th Floor San Francisco, CA 94105 | 8 Idlewood Road |
| | | Kentfield, CA 94904 |
| | Contact phone    4159955141 | Contact phone |
| | Contact email    adutra@hansonbridgett.com | Contact email |
| | Uniform claim identifier (if you use one): | |

| **4. Does this claim amend one already filed?** | ☑ No ☐ Yes. Claim number on court claims registry (if known) | Filed on _____ MM / DD / YYYY |
|---|---|---|
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No ☐ Yes. Who made the earlier filing? | |

| Official Form 410 | Proof of Claim | page 1 |
|---|---|---|

**Exhibit "11"**
**Page 103**

Case 6:25-bk-12353-SY   Claim 24-1   Filed 06/23/25   Desc Main Document   Page 2 of 3

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6.**Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7.**How much is the claim?** | $ __240000.00__   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8.**What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>    Secured Promissory Note _____ |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe:    Receivables _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ __240000.00__<br>**Amount of the claim that is secured:**    $ __240000.00__<br>**Amount of the claim that is unsecured:**    $ __0.00__   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)    __10__  %<br><br>☑ Fixed<br>☐ Variable |
| 10.**Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11.**Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                          Proof of Claim                          page 2

**Exhibit "11"**
**Page 104**

**12.** Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

☑ No
☐ Yes. *Check all that apply:*                                                                    **Amount entitled to priority**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).         $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).         $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).         $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).         $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).         $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies         $ _____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   6/23/2025
                   MM / DD / YYYY

/s/  Anthony James Dutra

Signature

Print the name of the person who is completing and signing this claim:

Name       Anthony James Dutra
           First name   Middle name   Last name

Title      Attorney at Law

Company    Hanson Bridgett LLP

           Identify the corporate servicer as the company if the authorized agent is a servicer

Address    425 Market Street, 26th Floor
           Number   Street
           San Francisco, CA 94105
           City   State   ZIP Code

Contact phone   4159955141        Email   adutra@hansonbridgett.com

**Exhibit "11"**
**Page 105**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$120,000                                                                              San Rafael, California

<u>October 19, 2024</u>

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to <u>Khateeb Afsar and Patricia Ann Lateef</u> (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $120,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $120,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $120,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid quarterly, in the amount of $3,000 (Three-thousand dollars). Annual accumulative payments received shall equal $12,000 based on ten-percent (10%) annualized interest.

____Khateeb Afsar and Patricia Ann Lateef located at Merrill Lynch – Account #_____.

Beneficiary is ____Holden Joseph Lateef_____.

Maturity is 3 years form Note inception (<u>October 19, 2027</u>). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

_____          _____  8/26/24
David R. Stone d.b.a.                       Khateeb Afsar Lateef          Date
Cornerstone Financial Services

                                            _____  8/26/24
                                            Patricia Ann Lateef           Date

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated October 19, 2024 by David R. Stone d.b.a.
Cornerstone Financial Services and Khateeb Afsar Lateef

|   | | Transaction | Present Value |
|---|---|---|---|
| 1 | | Hilton Hopkinson | 54,225.70 |
| 2 | | Basil Mbuba | 69,328.70 |
| TOTAL | | | 123,554.40 |

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$120,000                                                                                                      San Rafael, California

Start Date:    <u>October 23, 2022</u>

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to <u>Khateeb Afsar and Patricia Ann Lateef</u> (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $120,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $120,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $120,000 through maturity. CFS shall exercise care that all attached transaction shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid quarterly, in the amount of $3,000 (Three-thousand dollars). Annual accumulative payments received shall equal $12,000 based on ten-percent (10%) annualized interest.  Payments are to be made to the account of

_____Khateeb Afsar and Patricia Ann Lateef located at Merrill Lynch – Account #_____.

Beneficiary is_____Holden Joseph Lateef_____.

Maturity is 3 years form Note inception (<u>October 23, 2025</u>).  This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.


_____                                   _____
David R. Stone d.b.a.                                                      Khateeb Afsar Lateef          Date
Cornerstone Financial Services

                                                                              _____
                                                                              Patricia Ann Lateef           Date

Exhibit "12"

Fill in this information to identify the case:

Debtor 1 _David Robert Stone dba Cornerstone_
_Financial Services._

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _Central_ District of _California_

Case number _6:25-BK-12353-SY_



**FILED**

JUN 30 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

_Desert Equity Group Inc._
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

_Desert Equity Group Inc._
Name

_78291 Deacon Drive West_
Number      Street

_La Quinta    CA.    92253_
City        State       ZIP Code

Contact phone _760-391-3719_

Contact email _Tomhill@pacific.net_

Where should payments to the creditor be sent? (if different)

Name _____

Number      Street

City        State       ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):
_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

**Exhibit "12"
Page 109**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**    $ 250,000.00 . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

MONEY LOANED / NOTE SECURED BY EFA SCHEDULE "A" ATTACHED

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☒ Other. Describe: LEASE PAYMENT STREAMS EQUIPMENT FINANCE AGREEMENT

Basis for perfection: NOTE ATTACHED

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ 276,611.19

Amount of the claim that is secured:    $ 250,000.00

Amount of the claim that is unsecured:    $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ 250,000.00

Annual Interest Rate (when case was filed) 12 %

☒ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

**Exhibit "12"**
**Page 110**

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/05/2025
MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

Name   Thomas   Perry   Hill
First name   Middle name   Last name

Title   President

Company   Desert Equity Group Inc.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   78291 Deacon Drive West
Number   Street

La Quinta   Ca   92253
City   State   ZIP Code

Contact phone   760-391-3719   Email   Tomhill@pacific.net

Exhibit "12"
Page 111