LAILA RAIS, #311731
lrais@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
LARRY SIMONS

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>DAVID ROBERT STONE,<br><br>Debtor. | Case No. 6:25-bk-12353-SY<br><br>Chapter 7<br><br>SUPPLEMENTAL AND AMENDED INVESTORS' DECLARATIONS IN SUPPORT OF NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE: LIMITING DEBTOR'S CLAIMED EXEMPTION IN REAL PROPERTY LOCATED AT 49841 CANYON VIEW DR, PALM DESERT, CA 92260 PURSUANT TO 11 U.S.C. § 522(q)<br><br>[MOTION – DOCKET NO. 546]<br><br><u>Hearing Date:</u><br>Date:   June 4, 2026<br>Time:   9:30 a.m.<br>Place:  Courtroom 302<br>        3420 Twelfth Street<br>        Riverside, CA 92501 |

/ / /

/ / /

/ / /

/ / /

/ / /

INVESTORS' DECLARATIONS IN SUPPORT OF MOTION LIMITING DEBTOR'S CLAIMED EXEMPTION

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Larry D. Simons, the duly-appointed and acting Chapter 7 Trustee ("Trustee") of the bankruptcy estate of David Robert Stone, submits the following investors' declarations in support of Trustee's Notice of Motion and Motion (1) Limiting Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Dr, Palm Desert, CA 92260 Pursuant to 11 U.S.C. § 522(q):

| Exhibits[1] | Investors |
|---|---|
| 40 | Sheila S. Volarvich |
| 41 | "Joel" Michael Joel Stone Revocable Trust |
| 42 | Robert Allen Vogl |
| 43 | George Francis Crispo |
| 44 | Eugene G. Ladrech[2] and Sharon L. Ladrech |
| 45 | Ronald C. Ladrech (POA – Eugene G. Ladrech) |

Dated: June 2, 2026                MARSHACK HAYS WOOD LLP

By: /s/ Laila Rais
_____
LAILA RAIS
SARAH HASSELBERGER
Attorneys for Chapter 7 Trustee,
LARRY D. SIMONS

---

[1] *See* Investors' Declarations filed as Docket No. 547, for numbers 1-22, and Supplemental Investors' Declarations filed as Docket No. 566, for numbers 23-33. *See* Supplemental and Amended Investors' Declarations filed as Docket No. 583, for numbers 34-35. *See* Supplemental and Amended Investors' Declarations filed as Docket No. 592, for numbers 36-39.

[2] Eugene G. Ladrech, Power of Attorney for Ron Ladrech ("POA").

1

INVESTORS' DECLARATIONS IN SUPPORT OF MOTION LIMITING DEBTOR'S CLAIMED EXEMPTION

# Exhibit "40"

**DECLARATION OF Investor Sheila S. Volarvich**

I, Sheila S. Volarvich, trustee of the Sheila S. Volarvich Revocable Living Trust, declare and state as follows:

My name is Sheila Spurlock Volarvich, I am 72 years old and I live in Roseville, California. I am not a professional investor. I am a retired Banking professional. I worked very hard for over 40 years to accumulate enough money to retire.

I make this declaration in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I would happily do so under oath.

I first heard about David Stone and/or Cornerstone Financial Services ("CFS") in or around 2015 through my twin sister Sharon Ladrech and her husband Eugene Ladrech. They were excited about this investment opportunity and had been invested for several years, earning high rates of returns on their investment. I researched the CFS website and did what I thought was my due diligence. I was most impressed by the confirmed payment history of their friends, Bob Cavelli and George Crispo who had been invested in this company for several decades. Naively, I felt that the investment was secure and sound, based upon my research and what I heard from the other investors.

I never spoke with David Stone directly, instead I was directed to coordinate my investments with his Office Manager, Dawn Stanley. Ms. Stanley explained the investment opportunity and assured me that the investment was secured with truck leases that were dedicated solely to my investment funds, which was consistent with the information that I had viewed on the Cornerstone website. I was not familiar with the intricacies of security filings and requirements, so I did not have any understanding on how to verify the information that was given to me regarding the security of my note/s. Dawn Stanley. told me that my money would be put to work through CFS's truck leasing operations and that other investors were in the same position. I did not receive any legal disclosure documents, prospectus, or warning that this was an unregistered investment. I was never told that Mr. Stone was registered with any government agency to sell investments. I had no reason to doubt this. I sincerely believed that my note was fully secured with Cornerstone truck leases that were dedicated to my Note. as detailed on the Cornerstone website and as indicated on Schedule A on my Promissory Note.

Based on what Dawn Stanley told me, I invested $125,000 on August 31, 2017 which I sent by wire transfer to CFS on that date. That money was a portion of the funds that I had designated for retirement.

Stone issued me a written promissory note in the principal amount of $125,000 at an interest rate of 10%. A copy of the note is filed with my Bankruptcy claim. The note did contain an automatic-renewal provision requiring me to give 90 days' prior written notice if I wanted to receive my principal back at maturity.

I did provide more investment funds to CFS on 3/14/2018 in the amount of $175,000 from my designated retirement funds because the initial investment was paying well and I felt comfortable with my investment. Once again, I invested an additional $200,000 in December 2020 that I had inherited from my Mom. I had received information from my sister that the company was doing well and continued to expand. She described Dave Stone's extravagant lifestyle with many descriptors and I truly did not have any reason to be doubtful. Unfortunately, I was so impressed with this opportunity that I did refer this investment to three (3) of my friends, who also invested in Cornerstone, and of course lost all of their funds as well. I deeply regret the referrals to Kathleen Dexter, Pamela Endsley and Vicki Walsh, two (2) of which have filed claims in this case.

I did receive the promised returns faithfully until the end of March 2025. I have NOT been repaid $500,000 of my original investment. Stone also provided me with IRS Form 1099s for tax years each year I had the investments, which I paid state and federal taxes on that interest income.

It is clear to me, that I am a victim of serious fraud. I handed over real money, $500,000 of my own funds to David Stone or CFS for the express purpose of investing in CFS to earn above-market returns. This was not a gift and not a loan. It was an investment.
My money was pooled together with the money of other investors. Stone controlled the pool. I had no individual, segregated account, no ability to trace or direct my specific dollars, and no say in how the funds were managed or deployed. The returns relied entirely with how Stone managed the common pool of investor funds. The entire point was to earn a profit based on what Stone did with the money. I had no role in running CFS, no vote on how funds were invested, and no access to its underlying operations. I was entirely passive and entirely dependent on Stone's efforts and decisions. I contributed capital and waited for my returns.

Stone sold me a security. I am unaware of him registering it with any government agency, and was not provided any disclosures of any kind.

I understand that (a) Stone is claiming a homestead exemption on his $5 million home located at 49841 Canyon View Drive, Palm Desert, California 92260, in this bankruptcy case; (b) under 11 U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000. What Stone did to me, and all of his investors, was very typical of securities fraud. He offered and sold investments he had no legal right to sell, made material misrepresentations about how my money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and never actually perfected any of the security interests he promised. The debt he owes me exists directly because of that fraud.

I respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like me, who trusted him with our savings, are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

David Stone stole a large portion of my retirement savings, which reduced my annual earnings by more than 50%. This has ABSOLUTELY created a substantial deficit in my monthly budget. I can no longer meet my monthly obligations of utilities, mortgage, food, insurance etc. I planned to use the invested funds to support my monthly obligations and hoped to help my children fund my grandchildren's higher education.

I declare that the foregoing is true and correct.

*Sheila S Volarvich*

Executed on April 20, 2026
at Roseville, California

I respectfully **ask** this Court to find that **11** U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like me, who trusted him with our savings, are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

David Stone stole a large portion of my retirement savings, which reduced my annual earnings by more than 50%. This has ABSOLUTELY created a substantial deficit in my monthly budget. I can no longer meet my monthly obligations of utilities, mortgage, food, insurance etc. I planned to use the invested funds to support my monthly obligations and hoped to help my children fund my grandchildren's higher education.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct. Executed on June 2, 2026 , at Roseville, CA.


*Sheila S Volarvich*                                    *June 2, 2026*

Sheila S Volarvich                                        Date

# Exhibit "41"

## DECLARATION OF [INVESTOR FULL NAME]

I, Michael Joel Stone, declare and state as follows:

### WHO I AM

1.      My name is Michael Joel Stone. I am 73 years old and I live in San Rafael, CA. I am not a professional investor - I am in the food business. I worked hard for the money I lost in this matter.

2.      I make this declaration in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

### HOW I CAME TO INVEST WITH STONE

3.      I first heard about David Stone and/or Cornerstone Financial Services ("CFS") in or around May 2008, through having a warehouse next store to his office. Stone came across as professional, trustworthy, and knowledgeable about investing.

4.      Stone told me he had a special investment program that would earn me 9-10% per year on my money. He said he would handle everything - that I did not need to make any decisions. He presented the investment as safe, reliable, and secured by commercial truck leases and equipment finance agreements that CFS owned and managed.

5.      Stone told me that my money would be put to work through CFS's truck leasing operations and that other investors were in the same program. He told me all the loans were collateralized by the tractors, and I would always be protected by these loans and collateral. He made it sound like a proven, low-risk opportunity saying his bad debt was lower than 3%, but he had GPS on all the tractors and would just repossess them if the loan was not paid. I did not receive any legal disclosure documents, prospectus, or warning that this was an unregistered investment. He never told me he was registered with any government agency to sell investments. I had no reason to doubt him.

1

INVESTOR DECLARATION

### WHAT I INVESTED AND WHAT I WAS PROMISED

6. Based on what Stone told me, I invested $250,000 on 8-9-2010 and $500,000 on 5-8-2018 which I sent by check to Cornerstone Financial. That money represented a significant amount of monies I had saved over the years.

7. Stone issued me a written promissory note in the principal amount of $250,000 at an interest rate of 10% per year. A copy of the note is filed with the bankruptcy court. The note did not contain an automatic-renewal provision requiring me to give 90 days' prior written notice ifI wanted to receive my principal back at maturity.

8. Stone told me - in writing and/or verbally - that my investment was secured by a specific portfolio of trucks and equipment lease agreements, that those security interests had been properly filed and recorded, and that no other investor had a prior or competing claim to the same collateral. I relied on those representations in deciding to invest. Attached are copies of documents and communications I received from Stone regarding the collateral and safety of the investments.

### WHAT ACTUALLY HAPPENED

9. I did not receive the returns I was promised. After I invested in 2012, I never got a penny back on my investment let alone the principal. I eventually learned that what Stone was running was not a legitimate investment program.

10. To date, I have not received my $750,000 of my original investment, plus the returns I was promised. Stone never provided me any tax forms of any sort,

### WHY THIS WAS A SECURITY

11. I want to explain, in my own words, why I believe this was a securities investment and not simply a personal loan. I handed over real money - $750,000 of my own savings - to David Stone or CFS for the express purpose of investing in CFS to earn above-market returns. This was not a gift and not a standard bank loan. It was an investment,

12. My money was pooled together with the money of other investors, Stone controlled the pool. I had no individual, segregated account, no ability to trace or direct my

2
INVESTOR DECLARATION

specific dollars, and no say in how the funds were managed or deployed. My return - or loss - rose and fell entirely with how Stone managed the common pool of investor funds.

13.    The entire point was to earn a profit based on what Stone did with the money. I had no role in running CFS, no vote on how funds were invested, and no access to its underlying operations. I was entirely passive and entirely dependent on Stone's efforts and decisions. I contributed capital and waited for my retuRNs.

14.    Stone sold me a security and I am unaware of him registering it with any government agency and do not believe that he provided me with all legally required disclosures.

### WHY THIS MATTERS FOR THE BANKRUPTCY

15.    I understand that (a) Stone is claiming a homestead exemption on his $5 million home located at 49841 Canyon View Drive, Palm Desert, CalifoRNia 92260, in this bankruptcy case; (b) under 11 U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000.

16.    What Stone did to me - and to the other investors in this case - was securities fraud. He offered and sold investments he had no legal right to sell, made material misrepresentations about how my money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and never actually perfected any of the security interests he promised. The debt he owes me exists directly because of that fraud.

17.    I respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like me - who trusted him with our savings - are left with nothing. He should not be permitted to use bankruptcy laws to insulate himself from the consequences of his own fraud.

### THE IMPACT ON ME

18.    This is the biggest loss I've incurred in my lifetime.  This shattered my trust in

3

INVESTOR DECLARATION

someone who presented himself as a trustworthy person and business. This affected my whole family and a substantial amount of what I planned for in retirement. What he portrayed it to be was not true.

It was a scam and it affected a community of people who thought they could trust him and his business associates.

Under penalty of perjury and under the laws of the United States of America,

I declare that the foregoing is true and correct. Executed on *June 2, 2026*

150 Shoreline Hwy, Mill Valley, CA

4

# Exhibit "42"

## DECLARATION OF ROBERT ALLEN VOGL

I, Robert Allen Vogl, declare and state as follows:

My name is Robert Allen Vogl. I am 66years old and I live in Fairfax, CA. I am not a professional investor — I am retired entrepreneur having built and run businesses for 40 years. I worked very, very hard for the money that I lost in this matter.

I make this declaration in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

I first heard about David Stone and/or Cornerstone Financial Services ("CFS") in or around 2015 through a friend of mine, George Crispo, who had invested money with Cornerstone. Mr. Crispo explained to me that he had known Stone socially, primarily through golf, for about 15-20 years and watched as a number of his friends had invested with Stone over the years and were enjoying 10-12% returns. Mr. Crispo relayed to me that Stone had claimed that he had never missed a payment in the 20+ years that he had owned his company. Prior to investing in Cornerstone, Mr. Crispo had investigated CFS, including visiting a couple of its locations. He had quizzed Stone on all aspects of the business and Stone's responses gave Mr. Crispo confidence that this was indeed a legitimate and safe investment. I retired in 2023 and was looking for investment opportunities to supply me with income to live off of. CFS looked and sounded intriguing, so I had a conversation with Dawn Stanley.

Ms. Stanley explained how the investment worked. CFS would pay 8% for a 1 year note, 9% for a 2 year note, and 10% for a 3 year note. I could take my interest payments monthly, quarterly, or let them reinvest to increase my principal balance. She explained to me that if I were to invest, my note would be secured by a specific portfolio of trucks lease agreements, that those security interests had been properly filed and recorded, and that no other investor had a prior or competing claim to the same collateral.

She also explained how the business model worked and why a consistent 10% return was viable. The Company lent money out at 30-40% interest rates, and had low overhead, so paying 10% was very sustainable. The extent of my involvement with the Company was to give them money and receive an income. Based on what I was told, this checked all the boxes- it was safe, reliable, proven over 30 years and secured.

Based on what Dawn Stanley told me, I invested $ 250,000 on February 8,2024, and $200,000 on November 5, 2024. In both cases I wired the money to Cornerstone Financial Services. That money represented a meaningful percentage of the money I was counting on for my monthly income in retirement.

Exhibit "42"
Page 10

Stone issued me written promissory notes in the principal amount of $250,000 and $200,000, both at an interest rate of 10% per year (please see Exhibit A). Both notes contain an "Exhibit A" that lists the specific truck leases that secured that note. Both notes contain an automatic-renewal provision requiring me to give 90 days' prior written notice if I wanted to receive my principal back at maturity.

From March of 2024 to March of 2025, I received the monthly interest payments.  On April 14, 2025, when I hadn't received my April payment, I sent an email to Dawn Stanley inquiring when I might receive payment. I received an auto generated response that she was no longer with Cornerstone and to contact Dave Stone (please see Exhibit B). The next day Stone declared bankruptcy.

It was at this point that I reviewed the bankruptcy documents and started having contact with other investors. This is when it became apparent to me that Stone's lavish lifestyle wasn't being funded by the profits of Cornerstone but rather by the principle of our collective notes that we had been assured where to be used to fund truck leases.

When comparing notes with another investor, Scott Cunningham thru his "Chocolate Mountain Farms LLC", we discovered that each of our notes were secured by the exact same truck lease, even though our Notes were initiated less than two months apart. This was when we had proof that Stone was cross collateralization the Notes and not using them for the documented and legally agreed upon purpose of new truck leases. This was also when we realized that the documented collateral on our notes had been falsified. To us, this seemed a clear indication that Stone was committing fraud and a likely indicator of a Ponzi Scheme (please see Exhibit C).

This was a securities investment and in no way shape or form a personal loan. I handed over $450,000 of my retirement money to David Stone for the express purpose of investing in CFS to earn a documented and guaranteed 10% return. This was an investment via a secured note, and anyone trying to argue that it wasn't, is creating a false narrative. My money was pooled together with the money of other investors. Stone controlled the pool. I, nor any of the other investors that I have had contacted with, had individual, segregated accounts, no ability to trace or direct my $450,000, and no say in how the funds were managed or deployed. My return — or loss — rose and fell entirely with how Stone managed the common pool of investor funds.

The entire point of my investment was to earn a return based on stated use of the funds. I had no role in running the Company. This was an entirely passive investment that was dependent on Stone's efforts and decisions. I contributed capital and waited for my documented returns. Stone sold me a security, and I am unaware of him registering it with any government agency and do not believe that he provided me with all legally required disclosures.

I understand that (a) Stone is claiming a homestead exemption on his $5 million home located at 49841 Canyon View Drive, Palm Desert, California 92260, in this bankruptcy case; (b) under 11 U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000.

After speaking with other creditors and attorneys, reviewing documents, and doing research, it is my fervent belief that Stone committed security fraud and operated a Ponzi Scheme. He offered and sold investments he had no legal right to sell, made material misrepresentations about how my money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and never actually perfected any of the security interests as he promised. The debt he owes me exists directly because of that fraud.

I respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like me — who trusted him with our savings — are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

I retired less than 1 year prior to investing with David Stone. The $450,000 that I have lost as a result of what I believe were fraudulent actions by David Stone was meant to be a meaningful part of the capital that I need to supply me with retirement income. Because of this, I have had to downsize and simplify my retirement lifestyle that I worked 40+ years to establish.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2, 2026 , at Fairfax, CA).

_____
Robert Vogl Declarant

**Exhibit A**

**Notes:**

**February 8, 2024**

**November 4, 2024**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$250,000                                                                                                     San Rafael, California

Start Date  February 8, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to The Robert A. Vogl Trust dated November 16, 2021 (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $250,000 at the  prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $250,000 or greater on the date of  inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain   transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $250,000 through maturity. CFS shall exercise care that all attached transactions shall contain a  level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive  Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $2,083.33 (Two-thousand e i g h ty - t h r e e a n d 33 /100). Annual accumulative payments received shall equal $25,000 based on ten-percent (10%) annualized interest.

Maturity is 3 years from Note inception (February 8, 2027). This note will renew with the same terms and  conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a. Cornerstone Financial Services          The Robert A. Vogl Trust dated November 16, 2021

 *David Stone*                                               *Robert Vogl*
David Stone (Feb 12, 2024 12:53 PST)                           Robert Vogl (Feb 8, 2024 17:51 PST)

David R. Stone                          Date               Robert A. Vogl                          Date

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated February 8, 2024, by David R. Stone d.b.a.
Cornerstone Financial Services and The Robert A. Vogl Trust dated November 16, 2021

| | | Transaction | Present Value |
|---|---|---|---|
| 1 | | Avila, Rivera | $    40,226.62 |
| 2 | | Conway, Michael | 43,067.48 |
| 3 | | Terrance, Tomlinson | 47,571.55 |
| 4 | | Orellana Batres, Juan | 39,823.74 |
| 5 | | Schiazza, Emmanuel | 50,599.31 |
| 6 | | Young, Eric | 40,581.13 |
| TOTAL | | | $   261,869.83 |

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$200,000                                                                                          San Rafael, California

Start Date  November 4, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to The Robert A. Vogl Trust dated November 16, 2021 (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $200,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $200,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $200,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $1,666.67 (One-thousand six-hundred sixt-six dollars and 67 /100). Annual accumulative payments received shall equal $20,000 based on ten-percent (10%) annualized interest.

Maturity is 3 years from Note inception (November 4, 2027). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a. Cornerstone Financial Services          The Robert A. Vogl Trust dated November 16, 2021

*David R. Stone*                                              *Robert Vogl*

David R. Stone (Nov 5, 2024 12:31 PST)                        Robert Vogl (Nov 4, 2024 09:37 PST)

David R. Stone                        Date                    Robert A. Vogl                        Date

Equipment Finance Agreement Schedule "A" attached to that certain
Note dated November 4, 2024, by David R. Stone d.b.a.
Cornerstone Financial Services and The Robert A. Vogl Trust dated November 16, 2021

| | | Transaction | Present Value |
|---|---|---|---|
| 1 | | Vera Caballero, Victor | 54,516.00 |
| 3 | | Lewis Jr, Alvin | 46,728.00 |
| 6 | | Diaz Velazquez, Rafael | 117,450.00 |
| TOTAL | | | 218,694.00 |

# Exhibit B
# Email from Dawn Stanley

| | |
|---|---|
| **From:** | Dawn Stanley |
| **To:** | Robert Vogl |
| **Subject:** | Out of Office Notice Re: Question |
| **Date:** | Monday, April 14, 2025 2:22:24 PM |

**Subject:** Out of Office

Hello,

Thank you for your email. Due to personal reasons, as of March 20, 2025 I am no longer employed with  Cornerstone Financial Services and am unable to respond to emails at this time.

For assistance, please contact David Stone at 415-722-5700 or email at dstone@trucktrailerfinance.com or stone5700@yahoo.com.

Thank you for your understanding.

Best regards,
Dawn Stanley

Exhibit "42"
Page 19

# Exhibit C

# Proof of Cross Collateralization



The $200K for my November note was sent to Cornerstone via ACH. Other than a screenshot of my account, the only other evidence that Wells Fargo can provide is the tracer number associated with the transaction. They tell me that this number can we used at the Federal Reserve to obtain further proof that Cornerstone received the funds, however, I was told that one would need a warrant or subpoena for them to release that information.

When you look at our notes you will see that they are said to be "secured by Schedule A" which is a list of the truck leases that our notes were supposed to be secured by. Aside from the fact that no such security exits, which is proof of fraud in its own right, you will note that both of our notes are "secured" by the same truck lease to "Rafael Diaz Velazquez" for the same dollar amount of $117,450. Technically, since our notes were two months apart, the loan balance should have been less on Scott's note than on mine.

Please also note that the total dollar amount of "security" is $254,950 for Scott Cunningham's note of $250,000 and $218,694 for my note of $200,000. There isn't enough "free board" space of additional collateral beyond our respective note amounts for this to legitimately serve as security for both of our notes, which should serve as proof of fraudulent cross-collateralization. In any legitimate instances of cross-collateralization, only the $ amount of the truck lease that is serving as collateral for that specific note should be included on Schedule A. We have not had the chance to look at other notes to see if there are other instances like this.

Here are a list of the truck leases that supposedly secured our two notes:

Vogl Note:

| Name | $ amount on Note | $ amount on page 46 of bk filing | Date of truck loan per bk filing |
|---|---|---|---|
| Rafael Diaz Velazquez | $117,450 | $106.575 | 9/27/2024 |
| Victor Vera Caballero | $54.516 | $46.728 | 10/23/2024 |
| Alvin Lewis Jr. | $46,728 | $24,170 | 9/18/2024 |

Cunningham Note:

| Name | $ amount on Note | $ amount on page 46 of bk filing | Date of truck loan per bk filing |
|---|---|---|---|
| Rafael Diaz Velazquez | $117,450 | $106.575 | 9/27/2024 |
| Michael T Dalco Jr. | $137,500 | $59,737 | 10/7/2024 |

While the Velazquez and Cabellero leases show an approximate "normal" principal reduction for a 5-year lease period over the 5-6 months that elapsed from the loan origination until Stone declared bankruptcy. However, the Lewis and Dalco leases show a reduced lease balance that is approximately half of the amount of collateral amount provided to us on our respective Schedule A's (43.4% for Dalco and 51.7% for Lewis). We can only think of two scenario's where that could be justified. One would be if it was a one year lease (however we thought Stone testified that his leases were 3-5 years). Or two, they made a substantial principal pay down between the date of our notes, and the date of bankruptcy. Since we don't have access to any of Cornerstone's records, we have no idea what actually happened. But the forensic accountant might want to look into this.



**FILED**

JUL 3 1 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

**Fill in this information to identify the case:**

Debtor 1    David Robert Stone

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California

Case number  6:25- bk- 25-12353-SY

## Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Scott E. Cunningham
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Barnes & Thornburg LLP
Name

2029 Century Park E #300
Number   Street

Los Angeles          CA          90067
City                State        ZIP Code

Contact phone  (310) 284-3785

Contact email  paul.laurin@btlaw.com

Where should payments to the creditor be sent? (if different)

Scott E. Cunningham
Name

52962 K E Rd
Number   Street

Molina          CO          81646
City            State        ZIP Code

Contact phone  (760) 250-4774

Contact email  sc9k@live.com

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.   Claim number on court claims registry (if known) _____

Filed on _____
         MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.   Who made the earlier filing? _____

Official Form 410                              Proof of Claim                                    page 1

Exhibit "42"
Page 22

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $_____ 750,000.00. **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

9. **Is all or part of the claim secured?**

☐ No

☑ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:    Lease/Loan Payments

**Basis for perfection:**    Note Attached

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☑ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Exhibit "42"
Page 23

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    07/11/2025
                    MM / DD / YYYY

Signature    *Scott E Cp*

**Print the name of the person who is completing and signing this claim;**

| Name | Scott | E | Cunningham |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Owner | | |
| Company | Chocolate Mountain Farms LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 52962 K E Rd | | |
| | Number         Street | | |
| | Molina | CO | 81646 |
| | City | State      ZIP Code | |
| Contact phone | 760-250-4774 | Email | sc9k@live.com |

Exhibit "42"
Page 24

**Debtor:**       **David Robert Stone DBA Cornerstone Financial Services**

**Case No.:**     **6-25-bk-12353-SY**
               **United States Bankruptcy Court**
               **Central District of California**

## ATTACHMENT TO PROOF OF CLAIM

By filing this Proof of Claim, Claimant does not waive its right to seek further relief from this Court for any pre-petition or post-petition amounts, including, without limitation, attorneys' fees, additional fees, costs, expenses and punitive damages, and any other amounts which were incurred, accrued or arose and which are recoverable, or may be included, by Claimant relating to this Proof of Claim under applicable law.

The filing of this Proof of Claim is not an acknowledgement or admission that the Bankruptcy Court has jurisdiction over Claimant's claims against the Debtor, and Claimant reserves all rights with respect thereto.

The filing of this Proof of Claim shall not constitute or be deemed to be a waiver or release of any claims or rights of Claimant against any other person or entity liable for all or a part of the claim described herein.

Claimant reserves the right to supplement or amend this Proof of Claim for the purpose of including specific or additional sums as additional pre-petition items, and to state a total amount that is or would be owed by Debtor to Claimant.

Claimant respectfully does not consent to, and reserves the right to object to, the exercise of jurisdiction by the Bankruptcy Court over any and all aspects of, and/or any proceedings relating to any subject of, this Proof of Claim. Also, without limiting the generality of the foregoing, Claimant respectfully retains and reserves any and all rights Claimant otherwise may have to (a) object and not submit to the jurisdiction of the Bankruptcy Court for any particular purpose, matter, or proceeding, (b) seek entry of final orders in non-core matters only after a *de novo* review by a District Judge, (c) trial by jury on any issue so triable in any contested matter or adversary proceeding arising in or related to the Debtors' bankruptcy case, or (d) request that the District Court withdraw the reference in any matter or proceeding subject to mandatory or discretionary withdrawal. Further, Claimant retains and reserves any rights, claims, actions, setoffs or recoupments to which Claimant is or may be entitled, in law or in equity, with respect to the Debtor or its assets in the bankruptcy case, and retains and reserves any and all rights, claims, actions, and remedies they have or may have with respect to all persons and entities other than the Debtor.

Claimant further reserves the right to amend, supplement, and/or modify this Proof of Claim (and the documents that accompany or support same) from time to time as may be necessary to reflect any additional damages incurred in litigating this case.

1

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to
Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$250,000                                                                        San Rafael, California

**01/02/2025**

Start Date:_____

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to Chocolate Mountain Farms, LLC (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $250,000 at the prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed. Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $250,000 or greater on the date of inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a Present Value security of not less than $250,000 through maturity. CFS shall exercise care that all attached transactions shall contain a level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $2,500.00 (Two-thousand five hundred dollars and 00/100). Annual accumulative payments received shall equal $30,000 based on twelve-percent (12%) annualized interest. Maturity is 3 years from Note inception (_____, 2027). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a.                                       Chocolate Mountain Farms, LLC
Signature: *David R. Stone*                                 Signature: *SakCC*
           David R. Stone (Jan 14, 2025 15:20 PST)
    Email: dstone@trucktrailerfinance.com                      Email: sc9k@live.com

David R. Stone, Owner                                      Scott Cunningham            Title
Cornerstone Financial Services

Schedule "A" attached to that certain Note dated **01/02/2025** by

David R. Stone d.b.a. Cornerstone Financial Services and Chocolate Mountain Farms, LLC

| | Transaction | Present Value |
|---|---|---|
| 1 | Diaz Velazquez, Rafael | 117,450.00 |
| 2 | Dalco Jr, Michael T. | 137,500.00 |
| TOTAL | | 254,950.00 |

# Cunningham 250k Note 2 0125

Final Audit Report                                                                      2025-01-14

| | |
|---|---|
| Created: | 2025-01-02 |
| By: | Dawn Stanley (DSTANLEY@TRUCKTRAILERFINANCE.COM) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAASSiJ4cBIElQKSI_cx7jOO4YjFqeBnmoE |

## "Cunningham 250k Note 2 0125" History

📄 Document created by Dawn Stanley (DSTANLEY@TRUCKTRAILERFINANCE.COM)
   2025-01-02 - 8:14:18 PM GMT- IP address: 50.78.102.118

📧 Document emailed to dstone@trucktrailerfinance.com for signature
   2025-01-02 - 8:14:21 PM GMT

📧 Document emailed to scott cunningham (sc9k@live.com) for signature
   2025-01-02 - 8:14:22 PM GMT

📄 Email viewed by scott cunningham (sc9k@live.com)
   2025-01-02 - 10:26:50 PM GMT- IP address: 184.52.110.28

✍️ Document e-signed by scott cunningham (sc9k@live.com)
   Signature Date: 2025-01-02 - 10:31:20 PM GMT - Time Source: server- IP address: 184.52.110.28

📄 Email viewed by dstone@trucktrailerfinance.com
   2025-01-14 - 11:19:49 PM GMT- IP address: 50.78.102.118

✍️ Signer dstone@trucktrailerfinance.com entered name at signing as David R. Stone
   2025-01-14 - 11:20:53 PM GMT- IP address: 50.78.102.118

✍️ Document e-signed by David R. Stone (dstone@trucktrailerfinance.com)
   Signature Date: 2025-01-14 - 11:20:55 PM GMT - Time Source: server- IP address: 50.78.102.118

⊘ Agreement completed.
   2025-01-14 - 11:20:55 PM GMT

 **Adobe Acrobat Sign**

DO NOT DESTROY THIS NOTE: When paid, this note shall be marked as such and returned to
Beneficiary upon maturity.

NOTE SECURED BY EFA Schedule "A" attached.

$500,000                                                                    San Rafael, California

Start Date:  May 3, 2024

FOR VALUE RECEIVED and in accordance with the terms and conditions as stated herein, the undersigned, David R. Stone, d.b.a. Cornerstone Financial Services (CFS) hereby assigns to Chocolate Mountain Farms, LLC (Beneficiary) a security interest in a multiple of transactions equal too, but not less then, the Present Value of $500,000 at the  prevailing rate stated herein for a three (3) year term. Principal and Interest will be paid to Beneficiary as indicated below from Note inception, unless mutually renewed.  Inception shall be the date incorporated herein.

The Schedule "A" attachment shall represent a present value of multiple transactions equal to $500,000 or greater on the date of  inception. All transactions attached shall contain monthly payments, amortizations payable to and received by CFS. Beneficiary  acknowledges that he has entered into this Note willfully and with a clear understanding of the expected performance of those certain transactions as security and that CFS does not assess any costs of daily management of said transactions.

CFS, at their discretion only, shall adjust quarterly the Schedule "A" attachment with supplemental additional transactions to maintain a  Present Value security of not less than $500,000 through maturity. CFS shall exercise care that all attached transactions shall contain a  level of quality experienced by Beneficiary based on historical representations to date. Beneficiary shall receive a comprehensive  Schedule "A" of transactions attached upon inception and at any future point upon request through maturity.

This note pays interest only, paid monthly, in the amount of $5,000.00 (Five-thousand d o l l a r s  a n d  0 0 /100). Annual accumulative payments received shall equal $60,000 based on twelve-percent (12%) annualized interest. Maturity is 3 years from Note inception (May 3, 2027). This note will renew with the same terms and conditions unless notification is received by CFS 90-days prior to note maturity with beneficiaries' intent to liquidate.

This Note represents the entire security and is governed and construed in accordance with the laws of the State of California. The  prevailing party in any action to enforce the terms of this Note shall be entitled to the recovery of all costs, including attorney's fees.

David R. Stone d.b.a.                           Chocolate Mountain Farms, LLC
Cornerstone Financial

*David Stone*                                   *SottsCp*                          **member**
David Stone (May 3, 2024 09:40 PDT)
David R. Stone, Owner                           Scott Cunningham          Title
Cornerstone Financial Services

Schedule "A" attached to that certain Note dated May 3, 2024 by
David R. Stone d.b.a. Cornerstone Financial Services and Chocolate Mountain Farms, LLC

|   | Transaction | Present Value |
|---|---|---|
| 1 | Jose Santillan | 51,168.85 |
| 2 | Julian Muniz | 44,408.57 |
| 3 | Daniel Morfin Mancilla | 55,224.60 |
| 4 | Ana Castillo and Ricardo Mora | 45,101.04 |
| 5 | Kelly Stewart and Alexander Phillips | 58,000.47 |
| 6 | Jose Gomez Jr. | 61,416.28 |
| 7 | Darwin Osorio | 31,867.69 |
| 8 | Billy Alexander Jr. and Mary Wilkersin | 51,168.85 |
| 9 | Baljinder Singh | 73,100.76 |
| 10 | Walter Pena | 51,396.53 |
| TOTAL | | 522,853.640 |

### Cornerstone Financial Services
**A National Leader in Commercial Truck and Trailer Financing**

| | |
|---|---|
| **LEGAL NAME:** | Chocolate Mountain Farms, LLC |
| **NAME:** | Scott Cunningham |
| **MAILING ADDRESS:** | P.O. Box 177   Molina, Colorado 8164626- |
| **CELL PHONE:** | 760-250-4774 |
| **E-MAIL ADDRESS:** | Sc9k@live.com |
| **SS # OR TAX ID:** | 26-1310411   (for 1099 purposes) |

**PREFEERED PAYMENT METHOD:**

PHYSICAL CHECK SENT OR AUTO-TRANSFER (ACH) TO YOUR ACCOUNT. IF ACH IS PREFERRED PLEASE PROVIDE THE NAME OF THE BANK, ROUTING NUMBER AND ACCOUNT # BELOW:

ACCOUNT NAME: Chocolate Mountain Farm LLC

BANK NAME: Mechanics Bank

ROUTING #: 122238420

ACCOUNT #: 321379557

| | |
|---|---|
| **BENEFICIARY NAME:** | Scott Cunningham |
| **SS# or Tax ID:** | 26-1310411 |
| **RELATIONSHIP:** | Member |
| **PERCENTAGE:** | 100% |

**SIGNATURE(S) OF ACCOUNT HOLDER(S):**

_Scott SCP_

Scott Cunningham

4310 Redwood Hwy; Suite 100; San Rafael, CA  94903
Phone: 415-479-6530 / Fax: 415-479-6525
www.trucktrailerfinance.com

Exhibit "42"
Page 31

# Exhibit "43"

**DECLARATION OF GEORGE FRANCIS CRISPO**

My name is George Crispo, I am 84 years old retired dentist and I live in Fairfax ,CA. I am not a professional investor. I worked very hard for the money that I saved and accrued over my 32 years of practicing dentistry. Virtually the entire amount that I saved throughout my career, has evaporated as a result of this fraudulent investment with Cornerstone Financial Services.

I make this declaration in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

I personally met Dave Stone approximately 40 years ago. He was a member of my golf club and we shared numerous acquaintances. He started Cornerstone Financial services truck leasing and financing in the early 1990s and he was paying 14% to his investors at the time. In fact, one of his personal license plates read " UMAKE14" and another read "IPAY14".

He lived a lavish and highly flashy lifestyle and I chose not to invest with Dave Stone when the opportunity to do so in Cornerstone first arose. Around 2015 as a causal relationship developed through mutual friends and golf, I became curious as to validity of his claims that he had never missed a payment to his investors. Stone approached me and told me he would find an opportunity for me to invest in Cornerstone Financial Services, CFS, and earn 10% fully secured by the trucks he was financing. I invested $500,000 and did in fact receive my 10% return paid to me on a quarterly basis. I dealt primarily with his CFO and CFS Co-founder Dawn Stanley and she assured me that my money was safe, and my note was fully secured.

I continued to invest when I would divest myself of various some real estate holdings and place that money with CFS after asking Dawn or Stone how the outlook for truck financing was. They continued to assure me that the business was going well and opportunities for more investment would be available in the near future. I continued to receive my quarterly interest payments on all my notes. As a result, I decided to continue to place money with CFS on an almost regular basis. At one point, after talking with Dawn Stanley, I placed my approximately $250,000 IRA with CFS. Dawn assured me that she would handle all the cumbersome paperwork and again, the new notes would be fully secured, like all my other notes.

Page **1** of **4**

Exhibit "43"
Page 32

My investments grew to a point where I had over $6 million in CFS and based on what Stone and Dawn told me when I asked them, I was confident that all that money was safe, secured and fully collateralized, as were all the other investors that I had frequent contact with.

I was seeing Stone socially or on the golf course at least once a month in the years 2020, 2021, 2022, 2023 and 2024 and I would always ask him how my money was doing. He always said things were looking good with maybe a small bump in the road here or there, but the future outlook for the business continued to be good.

Then in late 2022 he offered me $25,000 cash for every $1 million of new money with a new investor that I introduced him to, and he would pay them 12% on that new money. Stone said that all I had to do was set up a phone interview and tell the new perspective investor how reliable CFS had been and how I received all my payments on time. He also wanted me to vouch for what a good investment CFS was. At this point, I introduced him to my family's company, Cannery Row Company. Stone tried to persuade them to invest 2 million and they would receive 12% annually fully collateralized. Thankfully they declined.

Stone again reached out to me in 2023 for more leads, promising me $1000 cash for every hundred thousand dollars investment by a new investor or $25,000 cash for every million dollars that every new investor brought in through my introduction. He made contact with a close friend of mine and tried to get them to invest 1 million to start, and they would receive 12%- again promising them that the note was fully secured. My friend declined but told me after that Stone was very convincing and somewhat aggressive but provided all the answers to his questions.

I found it a little strange that Stone was being so aggressive in searching for new investors and new money and when I asked Stone about this new approach, he said that new opportunities arose for CFS to expand its operations.

 In early February 2025 I played golf with Stone at Madison Club in La Quinta and as always, I asked how my invest was and how the business was doing. He responded to me, without looking up from his phone, that I didn't have to worry, and that he was working with some lenders and some restructuring was going on. He made no mention of any problems or issues, nor did he say anything about the impending Chapter 7 Bankruptcy that he was, in retrospect, obviously planning on filing in the near future.

Page **2** of **4**

I did not receive my March 28, 2025 payment from CFS and when I called the CFS office on March 29th, the phone went unanswered. I then emailed Dawn Stanley and got an auto generated reply that she was "no longer available" and could no longer be contacted through CFS. No explanation was offered. We, meaning all the CFS investors that I had contact with, were more than stunned when we received the BK notice via a text message at approximately 4:45 PM April 14, 2025.

In my opinion, what Stone perpetrated constitutes Security fraud, and what I personally perceive as Ponzi Scheme activity. My investments were presented as "Secured Notes" as is evidenced by the name and title of the notes- "NOTE SECURED BY EFA Schedule "A"". These notes were presented as Investments secured by the financing CFS provided its customers. "Exhibit A" was a list of very specific individual leases that we were told (and shown) that secured our investments. These documents show conclusive proof that this was a securities investment and not simply a personal loan. I invested real money — over $6,000,000 of my own savings — to David Stone or CFS for the express purpose of investing in CFS to earn 10% returns. There can be no argument that this was a gift- it was an investment.

My money was pooled together with the money of other investors. Stone controlled the pool. I had no individual, segregated account, no ability to trace or direct my specific dollars, and no say in how the funds were managed or deployed. My return — or loss — rose and fell entirely with how Stone managed the common pool of investor funds.

The entire point was to earn a profit based on what Stone did with the money. I had no role in running CFS, no vote on how funds were invested, and no access to its underlying operations. I was entirely passive and entirely dependent on Stone's efforts and decisions. I contributed capital and waited for my returns.

Stone sold me a security and my belief was that he was in compliance with all the legal rules regulations necessary to do so.  At no time did Stone/ CFS ever provide me with any legally required disclosures.

I understand that (a) Stone is claiming a homestead exemption on his multi million dollar home located in Palm Desert, California in this bankruptcy case; (b) under 11 U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000.

What I believe that Stone did to me — and to the other investors in this case — was blatant and obvious securities fraud. He offered and sold investments he had no legal right to sell, made material misrepresentations about how my money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and were never actually perfected as promised.

The debt he owes me exists directly because of his fraudulent activity. I respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like me — who trusted him with my life long savings — are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

We, the investors, are all more than devastated financially and emotionally by the deceit and fraud perpetrated on all of us. Many knew him well socially and even considered him a friend. The pain is real and felt by all that he'd befriended and defrauded. For many of these investors, Stone took their life savings so he could continue his beyond lavish lifestyle, all the time telling his investors that their money was safe and secure. Personally, this has caused me great financial and emotional distress. Overnight, on April 14, 2025, the major part of my income and savings was taken from me. Justice must be served. Stone must not be able to profit from his illegal and deceitful behavior. He must be held accountable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2, 2026 , at Fairfax, CA).

George Crispo

June 2, 2026
Date

**Page 4 of 4**

Exhibit "43"
Page 35

# Exhibit "44"

My name is Eugene G Ladrech. I am 79 years old and I live in La Quinta, Ca. I am not a professional investor — I am a retired small business owner. I sold the motel that I co owned with my brothers in 2004 and invested the proceeds in some multi family residences in varied locations that did fairly well for us, but did not provide us with the monthly income we needed in retirement so when a different kind of investment opportunity was presented to me by Dave Stone and Cornerstone Financial to invest in secured truck leases and get guaranteed monthly income I was eventually convinced to invest the meager profits from the turnover of each of those real estate investments into Cornerstone Financial over the next 3-5 years. My wife is Sharon L Ladrech, 72 yrs old, also living in La Quinta, Ca and we are making this declaration together, regarding our investments with Dave Stone, dba Cornerstone Financial.

We make this declaration in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property Located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of our own personal knowledge, and if called upon to testify thereto, we could and would competently do so under oath.

We first heard about David Stone and/or Cornerstone Financial Services ("CFS") in or around May, 2015, through two mutual friends who lived in my golf community in La Quinta. George Crispo had known Dave Stone for a long time and was a regular golf buddy of his at their common golf club in Marin County, California. He did a lot of research on Stone's business model and explained that Stone had been in the business for more than 30 years and had never missed a payment in all of those years so George had decided he would begin to invest with Cornerstone Financial. Since another golf friend from our community, Bob Cavalli, confirmed with me that he, too, had known Dave for years and had already been invested with him for over 30 years, that he was enjoying his retirement and living off of the interest income from this investment. So with that, Gene met with Dave and golfed in a foursome with these three soon after. Dave was very convincing about how well his business model worked and bragged about not having any personal debt, which was quite impressive since he owned two multi-million dollar homes, an expensive boat, and many luxury vehicles. He was also a member of three private golf clubs. Stone came across as very business savvy, and incredibly successful. Since we had just lost a portion of our real estate investment in a Delaware Statutory Trust where the general partner chose to sell off the property in a low market, we were taken in by this promise of 10% on my money and decided to invest this $400,000 with Mr. Stone. The interest payments, indeed, showed up each month without fail and Dave claimed that he only took investments through referrals from 'clan members' and then only when he had enough new truck leases to warrant more investor money. This led us to believe that our investment would be security interest secured by specific truck leases assigned to us alone and that this interest would then be a perfected security interest as described in the promissory note we believed this to be a secured investment. Dave was managing every aspect of the investment without any need for input from us. A year later when we asked about investing another $300,000, Stone's right hand woman, Dawn, told us that she would let us know when there might be a window for taking in more funds. She then accepted the money the next month. I continued to socialize with Dave

and sometimes in a couples situation as well as in golf settings. I ended up increasing my initial investment over the years to a total of $1,300,000 unfortunately. Sharon's sister, mother and two personal friends also made investments with Cornerstone from our referrals.

On numerous occasions when I asked Dave about how the business was doing he made it sound like it continued to be a proven, low-risk opportunity. I did not receive any legal disclosure documents, prospectus, or warning that this was an unregistered investment. He never told us he was registered with any government agency to sell investments. We had no reason to doubt that he was conducting business in the proper secure way that he had promised.

Based on what Stone continually told me about how business was thriving as recently as 2023 and 2024, we invested a total of $1.3 million over the course of about 8 years, issued in varying amount promissory notes and all at the 10% interest rate. All notes had a three year maturity date and came due on that date unless it was mutually agreed upon to renew them. The notes are filed in our claim with the bankruptcy court. That money represented the vast majority of retirement savings in addition to the $200,000 note that my wife inherited from her mother when she died in 2020. This has impacted our lives so much that we will likely have to downsize our largest remaining asset, our home in addition to looking for other ways to pare expenses. We are very worried about the possibility that we will outlive our remaining money.

To date, we have not received back any of the $1.3 million investment. Stone provided us with IRS Form 1099s for tax years 2015-2024, reporting interest income of varying amounts since there were different total amounts invested in those years and we paid income tax on those earnings.

We believed this to be a securities investment and not simply a personal loan. We handed over real money — $1.1million of our own savings and $200,000 of my wife's inheritance — to David Stone or CFS for the express purpose of investing in CFS to earn above-market returns. This was not a gift and not a standard bank loan. He explained to me that he charged the truckers around 30% interest on their loans because they had poor credit and that was why he could pay his investors 10% interest on their investment. This is how business model worked and why it was a sound investment.

Our money was pooled together with the money of other investors. Stone controlled the pool. I had no individual, segregated account, no ability to trace or direct my specific dollars, and no say in how the funds were managed or allocated. Our return was dependent entirely upon how Stone managed the common pool of investor funds. I was entirely passive and dependent on Stone's efforts and decisions since I had no knowledge of the trucking business. I contributed capital and waited for my returns. Stone sold me a security and I am unaware of him registering it with any government agency and do not believe that he provided me with all legally required disclosures.

I understand that (a) Stone is claiming a homestead exemption on his $5 million home located at 49841 Canyon View Drive, Palm Desert, California 92260, in this bankruptcy case; (b) under 11

U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000.

What Stone did to us— and to the other investors in this case — was securities fraud as that has been explained to us. He offered and sold investments he had no legal right to sell, made material misrepresentations about how my money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and never actually perfected any of the security interests he promised. I know that Stone pledged the same collateral to multiple people on some of his promissory notes because my wife, Sharon, studied the notes of several investors in her capacity as chairperson of our creditor group and found evidence that the same truck leases were pledged to multiple investors in amounts that exceeded the total amount of the truck lease. So it seems that Stone did not have enough dollars in truck leases to cover the dollars in investments he was taking in. The debt he owes us seems to exists directly because of that fraud.

We respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded. People like us — who trusted him with our savings — are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, Executed on June 2,2026 in La Quinta, Ca.

Eugene G Ladrech,                                    Declarants

*Eugene J Ladrech*  6-2-26

Sharon L Ladrech,        *Sharon L Ladrech*   6-2-26

# Exhibit "45"

## DECLARATION OF RONALD C. LADRECH

I, Eugene G Ladrech, have the POA for my brother, Ronald C Ladrech who is a fellow creditor of the David Stone bankruptcy. Since my brother has dementia and is unable to make financial and life decisions for himself, I have been in charge of decisions for him since the summer of 2022. This is when I realized he was having trouble paying bills. He alloweAd me to make all healthcare and financial decisions then without any reticence whatsoever and did eventually sign the Power of attorney document on June 7, 2023 giving me full legal authority for his financials. After numerous doctor visits, tests, evaluations and a referral visit to a neurologist, Ron's primary doctor, Dr. Perry Schall, diagnosed Ron with cognitive disorder. Dr. Schall signed a physician's declaration of incapacity for Ronald on Oct. 30th, 2023, copies of both documents are hereto attached. I have been very close with my brother for over 79 years and we have made many of the same investments over the years, collaborating together. In 2015, we, unfortunately, made the same decision to invest in Cornerstone Financial in 2015. I make this declaration, in my capacity as POA for Ron in support of the Chapter 7 Trustee's Motion to Limit Debtor's Claimed Exemption in Real Property located at 49841 Canyon View Drive, Palm Desert, California 92260, Pursuant to 11 U.S.C. § 522(q) ("Motion"). The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath as his spokesperson. Ron Ladrech is no longer able to testify, due to his progressively advancing dementia.

We both heard about David Stone and/or Cornerstone Financial Services ("CFS") in or around January 2015, through golf friends who had connections with Stone and one of which, had already invested for many years with Stone. When both Ron and I met Dave Stone he came across as professional, trustworthy, and knowledgeable about investing.

Stone told us he had a special investment program that would earn 10% per annum on our money. He said he would handle everything — that I did not need to make any decisions. He presented the investment as safe, reliable, and secured by commercial truck leases and equipment finance agreements that CFS owned and managed. Ron did his due diligence, researching this investment opportunity. I will attach a copy of the handwritten notes that Ron took in a notebook back in 2015 describing his research before investing in Cornerstone. Ron had a habit of note-taking as he was thorough about his research of many investment opportunities and of course, at this point of his life, he had full capacity as his dementia did not start until after he had a stroke in 2020. I happened upon this notebook while looking for the copies of his notes to attach to his claim this summer. Of particular significance is Ron's note about a conversation he had with Dawn Stanley on 7-22-2015 about the risk assessment of investing retirement funds in truck deals. His notes state that Dawn claimed that this is safe because she has her husband's entire retirement account invested in truck deals and 'she trusts it because she is in charge of it'. I will attach a photo that I took of this notebook page. I am aware that Sheila Volarvich researched the BK filing for debts to the current and former husband of Dawn Stanley and found that neither husband was a creditor of the Stone bankruptcy so it is unclear as to whether the statement Dawn made about her husband's retirement investment was accurate or if it was made to persuade Ron to invest.

Stone told me and my brother that our money would be put to work through CFS's truck leasing operations and that other investors were in the same program. He made it sound like a proven, low-risk opportunity. We did not receive any legal disclosure documents, prospectus, or warning that this was an unregistered investment. He never told me he was registered with any government agency to sell investments. We had no reason to doubt him.

Based on what Stone told Ron and me in separate conversations and after comparing notes with each other we both invested.  Ron invested a total of $1.3 million in Cornerstone Financial. That money represented a large part of Ron's financial portfolio, using funds he had from the sale of his Marin county residence and then later more funds from a limited partner real estate venture that he cashed out of.  The interest payments kept flowing in so Ron had no reason to doubt that Stone's business was legitimate.

Stone issued Ron written promissory notes in the principal amount of $1,050,000 at an interest rate of 10% per year up until Nov 2024.  The multiple notes are included in Ron's claim, filed in the bankruptcy case. In addition to those notes is an additional $250,000 note that I procured for Ron in Nov. '24 because Dave Stone made a call for additional funds in the summer of 2024, promising a 12% return.  This call for additional funds came in email form to both Ron' email (which I was monitoring) and my email, but unfortunately I trash emails on a weekly basis to keep my computer clean so I do not have a copy.  At this point Ron had full time caregivers and his care expense had exceeded $96,000 per year and I worried that Ron might outlive his money so the allure to make more income to help offset high expenses caused me to transfer some Charles Schwab assets to another Cornerstone note.  I cashed out that investment and took out the Nov 2024 $250k note, increasing Ron's total investment to $1.3 million.  The loss of this major portion of Ron's retirement has caused significant risk to Ron's ability to have quality care here at at the end of his life.  As his primary decision maker, I feel terrible guilt for this investment decision.
Stone told Ron and me in writing (with the wording on each promissory note) and verbally that our investment was secured by a specific portfolio of trucks and equipment lease agreements, that those security interests had been properly filed and recorded, and that no other investor had a prior or competing claim to the same collateral. Ron and I relied on those representations in deciding to invest. Attached are copies of documents and communications I received from Dawn Stanley regarding the collateral and safety of the investments.  I was able to retrieve an email from Dawn to Ron on April 27, 2015 which is encouraging Ron to complete his first investment contract with Cornerstone, emphasizing that there are 'full contracts and original titles for all transactions on the schedule A (2nd page of the Note)'

Ron did not receive the returns he was promised. He received 5 interest payments on the new 12% note and continued payments on the other notes until the end of March 2025 because of the April bankruptcy filing. It certainly appears that what Stone was running was not a legitimate investment program.

To date, Ron received interest payments on his 1.3 million dollar investment through March 2025. Stone also provided IRS Form 1099s for tax years 2015-2024 reporting interest income on which I paid income taxes — taxes on money that, I now understand, was never actually earned through legitimate business .

From my conversations with Ron prior to his incapacity we both believed our investments in Cornerstone were securities investments and certainly not a personal loan. We handed over real money $1.3 million each to David Stone or CFS for the express purpose of investing in CFS to earn above-market returns. This was not a gift and not a standard bank loan. It was an investment.

The money was pooled together with the money of other investors. Stone controlled the pool. Ron had no individual, segregated account, no ability to trace or direct his specific dollars, and no say in how the funds were managed or deployed. His return — or loss — depended entirely upon how Stone managed the common pool of investor funds.

The entire point was to earn a profit based on what Stone did with the money. Ron had no role in running CFS, no vote on how funds were invested, and no access to its underlying operations. He was entirely passive and entirely dependent on Stone's efforts and decisions. He contributed capital and waited for returns.

Stone sold him a security and I am unaware of him registering it with any government agency and do not believe that he provided Ron with all legally required disclosures.

I understand that (a) Stone is claiming a homestead exemption on his $5 million home, (which still hasn't sold despite being reduced in price to $3,190,000) located at 49841 Canyon View Drive, Palm Desert, California 92260, in this bankruptcy case; (b) under 11 U.S.C. § 522(q), a debtor cannot shield an unlimited amount of home equity from creditors if the debtor owes money as a result of securities fraud or related financial misconduct; and (c) in such cases the law caps that exemption at $214,000.

What Stone did to Ron and me — and to the other investors in this case — was securities fraud in my opinion.. He offered and sold investments he had no legal right to sell, made material misrepresentations about how our money would be secured and managed, pledged the same collateral to multiple investors while representing to each of us that our security interests were exclusive, and never actually perfected any of the security interests he promised. My wife, Sharon Ladrech, is one of the chairpersons for our investor group of creditors and looked at the notes of several creditors and found cross collateralization with Robert Vogl's notes and of another creditor, Scotty Cunningham. Additionally, there were no truck leases on the bankruptcy filing matching the truck lease names on Rob Terheyden's note of May 2024 and his Dec. 2024 note listed the truck leases as a much higher value than they were listed in the BK filing, apparently in an effort to match the notes value. This leads me to believe that there was a lot of fraud being committed in the Cornerstone Financial dealings and the fact that Dave Stone was actively pursuing more investment

money late in 2024 while he was looking into filing bankruptcy seems to me to be proof of fraud. The debt he owes Ron exists directly because of that fraud, it would seem.

I respectfully ask this Court to find that 11 U.S.C. § 522(q) applies in this case and to limit Stone's homestead exemption to $214,000. It would be deeply unfair for Stone to shield his home equity from the very people he defrauded, people like Ron — who trusted him with their savings — are left with nothing. He should not be permitted to use the bankruptcy laws to insulate himself from the consequences of his own fraud.

Because of the tremendous loss Ron has suffered by Dave Stone's mishandling of his investment I have been forced to sell Ron's house and move him into a small apartment. The cost of his full time caregivers continues to increase and he would have outlived his money if I hadn't made these changes. Since the rent he now pays for that apartment is $3,000 a month, in addition to the $9,000 a month care expense it has made it very difficult to manage for Ron, given the loss of income $10,833 from the interest Ron was receiving per month from the Cornerstone investment. Of course, the loss of the $1.3 million of principal is even more devastating and so I may be forced to move Ron into a less desirable living situation in order to make ends meet. This incredible loss has put a tremendous financial and emotional strain on me, Ron and my wife, Sharon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2nd, 2026 at La Quinta, Ca.

_Eugene G Ladrech_   6-2-26
Eugene G Ladrech

# General Durable Power of Attorney
## of Ronald C. Ladrech

I, Ronald C. Ladrech, also known as Ronald Clement Ladrech, and also known as Ron Ladrech, of La Quinta, California, am creating a Durable Power of Attorney under the laws of the State of California. I revoke all Powers of Attorney previously granted by me as Principal and terminate all agency relationships created by me except:

powers granted by me under any Advance Health Care Directive;

powers granted by me on forms provided by financial institutions granting the right to write checks on, deposit funds to, and withdraw funds from accounts to which I am a signatory; and

powers granting access to a safe-deposit box.

MY AGENT MAY NOT EXERCISE THE AUTHORITY GRANTED UNDER THIS POWER OF ATTORNEY UNTIL THE EVENTS DESCRIBED IN ARTICLE TWO HAVE OCCURRED.

Sent from my iPad

## Article One
## Appointment of Agent

### Section 1.01    Initial Agent

I appoint Eugene G. Ladrech to serve as my Agent.

### Section 1.02    Successor Agent

If Eugene G. Ladrech fails to serve, I appoint Edward A. Ladrech to serve as successor Agent.

### Section 1.03    Default of Designation

If no one is serving as my Agent under this power of attorney, Edward A. Ladrech may appoint a successor Agent by written instrument acknowledged before a notary public and attached to this power of attorney.

### Section 1.04    Prior or Joint Agent Unable to Act

A successor Agent or an Agent serving jointly with another Agent may establish that the acting Agent or joint Agent is no longer able to serve as Agent by signing an affidavit that states that the Agent is not available or is incapable of acting. The affidavit must be supported by a death certificate of the Agent, a certificate showing that a guardian or conservator has been appointed for the Agent, a letter from the Agent stating his or her unwillingness to act or delegating his or her power to the successor Agent, or a physician's letter stating that the Agent is incapable of managing his or her own affairs. If the Agent designated in the affidavit objects in writing to the affidavit within 10 days of receiving the

General Durable Power of Attorney of Ronald C. Ladrech
Page 1

Exhibit "45"
Page 43



**EISENHOWER HEALTH**

ARGYROS 365 PRIMARY CARE
45280 SEELEY DRIVE
LA QUINTA CA 92253
Phone: 760-610-7300

October 30, 2023

Patient:     **Ronald Clement Ladrech**
Date of Birth: **12/26/1940**
Date of Visit: **10/30/2023**

To Whom It May Concern:

Mr.Ronald Ladrech is my patient at Eisenhower Health.

He has developed progressive cognitive and memory impairment consistent with dementia.

It is my medical opinion that Ronald Ladrech is incapacitated and no longer able to make financial decisions for himself.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Perry Schall, MD

CC: No Recipients

5/25/15 Cat. Dawn will draw up
contracts for the two by weekend June 1.
they could not exceed 150 @ 8%
on demand - keep 8% Quiet - should
have been 5%. hard to bank more
than 150 liquid.

7-22-15 Gave Dawn another 150,000 to cover
Car w dead Parked $1  1310 Redwood Hwy Suite 100
Directions: Redw 101 Smith Ranch Rd   1st R
follow Redwood hwy all way around until u
reach the Vineyard sign 4300-4330.
Turn left there & go strait to 4310 ^114 Blk → Last side
History: Dawn has her husbands entire retirement
acc't in truck deals - "I miss it because I'm in
charge of it"
old days lotus 4 lilyface group, Restaurant yacht
etc.   Been w Dawn for 20 yrs
Survived 2008 - maybe he are included as 20
trucks up 4 Auction -
Now have 2 trucks for sale

**From:** ronl18@aol.com
**Date:** April 29, 2015 at 2:49:44 PM PDT
**To:** dstanley@trucktrailerfinance.com
**Subject: Re: Cornerstone**

Dawn- have not received the proceeds from my previous investment as yet. The money should be available the first part of May.
I would like to meet Dave Stone first. Will he be in the desert during the month of May? Ron

-----Original Message-----
From: Dawn Stanley <dstanley@trucktrailerfinance.com>
To: ronl18 <ronl18@aol.com>
Sent: Mon, Apr 27, 2015 3:44 pm
Subject: Cornerstone
Hi Ron;
I am glad to see your continuing interest as an Investor. I have attached the 2 page Note that shows an interest-only *monthly* receivable on the $400,000.00. Once you have reviewed the contract please contact me with any questions. You will notice that I chose the start date as May 5, 2015. I did this to allow time for you to get the money wired. If for some reason we receive the dollars sooner I will calculate an interim interest payment and issue you that interest payment outside of the contract on May 5, 2015 so don't worry if it gets here early. I have also attached wire instructions.
As a reminder, we have full contracts and original titles for all the transactions listed on the Schedule "A" (2nd page of Note) but I don't like to overwhelm inboxes with the magnitude of those files. If you want a concise package on each deal let me know and I will forward those either by email or I can send hard copy packages to your address. I am happy to give you as little or as much paperwork as you feel comfortable with.
Thank You and again, call with questions.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **SUPPLEMENTAL AND AMENDED INVESTORS' DECLARATIONS IN SUPPORT OF NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE: LIMITING DEBTOR'S CLAIMED EXEMPTION IN REAL PROPERTY LOCATED AT 49841 CANYON VIEW DR, PALM DESERT, CA 92260 PURSUANT TO 11 U.S.C. § 522(q)**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 2, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **June 2, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR – CHANGE OF ADDRESS: DK. NO. 289**
DAVID ROBERT STONE
74923 HWY. 111. P.O. BOX 531
INDIAN WELLS, CA 92210

☒  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 2, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**HONORABLE SCOTT H. YUN – VIA OVERNIGHT MAIL**
**PRESIDING JUDGE'S COPY**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
3420 TWELFTH STREET, SUITE 345 / CRTRM 302
RIVERSIDE, CA 92501-3819

**VIA EMAIL**
ADAM TRACY - aptracy@yahoo.com

BRENDT VOLARVICH - sheilavolarvich@yahoo.com

DESERT EQUITY GROUP, C/O THOMAS HILL - tomhill@pacific.net

DEBORAH SVOBODA – deborahsvoboda@msn.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 2, 2026 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED

- **INTERESTED PARTY COURTESY NEF:** Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **INTERESTED PARTY COURTESY NEF:** Lynda T Bui    lbui@shulmanbastian.com, ecf.filings@shbllp.com
- **ATTORNEY FOR SECURED CREDITOR, WEST AMERICA BANK: Charles L Doerksen cld@doerksentaylor.com**
- **ATTORNEY FOR SECURED CREDITORS KATAAB LATEEF, KHATEEB AFSAR LATEEF, PATRICIA ANN LATEEF:** Anthony Dutra    adutra@hansonbridgett.com, ssingh@hansonbridgett.com
- **ATTORNEY FOR SECURED CREDITOR ELIZABETH MONTGOMERY:** Christopher Hart chart@nutihart.com, admin@nutihart.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE:** Sarah Rose Hasselberger    shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Stella A Havkin    stella@havkinandshrago.com, shavkinesq@gmail.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE:** D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **INTERESTED PARTY COURTESY NEF:** Bernard J Kornberg    bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **ATTORNEY FOR CREDITOR FRANK P. GIORGI REVOCABLE TRUST:** Chris D. Kuhner c.kuhner@kornfieldlaw.com
- **INTERESTED PARTY COURTESY NEF:** Paul J Laurin    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com;jose.barajas@btlaw.com
- **INTERESTED PARTY COURTESY NEF:** Lyric Menges    lyric.menges@btlaw.com, slmoore@btlaw.com
- **ATTORNEY FOR CREDITOR PORSCHE FINANCIAL SERVICES, INC. DBA BENTLEY FINANCIAL SERVICES AND PORSCHE LEASING LTD.:** Stacey A Miller    smiller@tharpe-howell.com
- **ATTORNEY FOR CATHERINE THOMAS AND CHARLES DIMICK: Leah Anne O'Farrell**  lofarrell@btlaw.com, slmoore@btlaw.com;marisa.howell@btlaw.com
- **ATTORNEY FOR CREDITOR JANET SIMKINS: Maria K Pum**    maria.pum@procopio.com, barb.young@procopio.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE:** Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CARSTEN ANDERSEN: Gregory A Rougeau**    grougeau@brlawsf.com
- **INTERESTED PARTY COURTESY NEF:** Vicki L Schennum    schennumlaw@icloud.com
- **CHAPTER 7 TRUSTEE:** Larry D Simons (TR)    larry@janus.law, c119@ecfcbis.com;nancy@lsimonslaw.com;simonsecf@gmail.com;keila@janus.law
- **ATTORNEY FOR CREDITOR JANET SIMKINS:** William A Smelko    William.Smelko@procopio.com, anant.pandadiya@procopio.com,calendaringbankruptcy@procopio.com
- **ATTORNEY FOR DEBTOR DAVID ROBERT STONE:** Michael G Spector    mgspector@aol.com, mgslawoffice@aol.com
- **INTERESTED PARTY COURTESY NEF:** Edward A Treder    cdcaecf@bdfgroup.com
- **U.S. TRUSTEE:** United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR WELLS FARGO BANK, N.A.:** Darlene C Vigil    cdcaecf@bdfgroup.com
- **ATTORNEY FOR ERIC STEINBERG:** Reilly D Wilkinson    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

**20 LARGEST UNSECURED CREDITOR**
JACQUIE KAY SOLOMON TRUST
1922 MATZEN RANCH CIRLLE
PETALUMA, CA 94954-8595

**20 LARGEST UNSECURED CREDITOR / POC ADDRESS**
JACQUIE KAY SOLOMON TRUST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**NEW ADDR PER DK 384
SECURED CREDITOR**
BRUGGENKAMP, LINDA
9 S ROSCOE BLVD
PONTE VEDRA BEACH, FL 32082

**NEW ADDR PER DK 69
SECURED CREDITOR / POC ADDRESS**
TERHEYDEN, ROBERT
7 BURNING TREE DRIVE
NOVATO, CA 94949

**NEW ADDRESS PER PHONE CALL FROM JOHN MENGARELLI 08-25-25
SECURED CREDITOR**
PACIFIC PREMIER TRUST
JOHN MENGARELLI
930 TAHOE BLVD. SUITE 802-649
INCLINE VILLAGE, NV, 89451

**NEW ADDRESS PER PHONE CALL FROM JOHN MENGARELLI 08-25-25
SECURED CREDITOR**
PACIFIC PREMIER TRUST
BAMBI MENGARELLI
930 TAHOE BLVD. SUITE 802-649
INCLINE VILLAGE, NV, 89451

**SECURED CREDITOR / POC ADDRESS**
BRUGGENKAMP, LINDA
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR**
ALICE GARRETT TRUST
450 E STRAWBERRY #56
MILL VALLEY, CA 94941-3227

**SECURED CREDITOR**
ANDERSEN, AMY
1994 VALPARAISO AVE
MENLO PARK, CA 94025-6055

**SECURED CREDITOR**
ANDERSEN, CARSTEN
22 CHAPEL COVE DRIVE
SAN RAFAEL, CA 94901-1548

**SECURED CREDITOR**
BELLECI MEDIA PRODUCTIONS LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
570 GUERRERO STREET #2
SAN FRANCISCO, CA 94110-1083

**SECURED CREDITOR / POC ADDRESS**
CATHERINE A THOMAS GST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
CATHERINE A THOMAS
REVOCABLE   TRUST DATED 3/01
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
CRISPO, GEORGE
98 HILLSIDE DRIVE
FAIRFAX, CA 94930-2040

**SECURED CREDITOR**
CUNNINGHAM, SCOTT
CHOCOLATE MOUNTAIN FARMS
PO BOX 177
MOLINA, CO 81646-0177

**SECURED CREDITOR / POC ADDRESS**
SCOTT CUNNINGHAM
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR**
DEXTER, KATHLEEN
1177 UTOPIA PLACE
SAN JOSE, CA 95127-4424

**SECURED CREDITOR**
DIMICK, DANIELLE
IRREVOCABLE TRUST
PO BOX 3656
INCLINE VILLAGE, NV 89450-3656

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

| | | |
|---|---|---|
| **SECURED CREDITOR**<br>DIMICK, DANIELLE<br>REVOCABLE TRUST<br>PO BOX 3656<br>INCLINE VILLAGE, NV 89450-3656 | **SECURED CREDITOR / POC ADDRESS**<br>ENDSLEY, PAMELA<br>112 TIBURON CT<br>APTOS, CA 95003-5833 | **SECURED CREDITOR / POC ADDRESS**<br>ERENKOV, DMITRY<br>PO BOX 792<br>BETHEL ISLAND, CA 94511-0792 |
| **SECURED CREDITOR / POC ADDRESS**<br>ERIC STEINBERG<br>C/O SCHEER LAW GROUP, LLP<br>155 N. REDWOOD DR. SUITE 100<br>SAN RAFAEL, CA 94903 | **SECURED CREDITOR**<br>GIORGI SR, FRANK<br>137 GOODHILL ROAD<br>GREENBRAE, CA 94904-2643 | **SECURED CREDITOR / POC ADDRESS**<br>HUBELY, SUSAN<br>163 STARLITE DRIVE<br>SAN MATEO, CA 94402-3638 |
| **SECURED CREDITOR / POC ADDRESS**<br>JAMES EDWARD GILLESPIE III<br>11 THORNTON COURT<br>NOVATO, CA 94945-1777 | **SECURED CREDITOR / POC ADDRESS**<br>JANET H. SIMKINS INDIVIDUALLY AND AS TRUSTEE OF THE JANET H. SIMKINS SURVIVOR'S TRUST<br>C/O PROCOPIO, CORY, HARGREAVES & SAVITCH LLP<br>525 B STREET, SUITE 2200<br>SAN DIEGO, CA 92101 | **SECURED CREDITOR / POC ADDRESS**<br>JOHN F RUSSI GST<br>C/O BARNES & THORNBURG LLP<br>2029 CENTURY PARK E #300<br>LOS ANGELES CA 90067 |
| **SECURED CREDITOR / POC ADDRESS**<br>KHATEEB AFSAR LATEEF<br>C/O HANSON BRIDGETT LLP, ATTN: ANTHONY DUTRA<br>425 MARKET STREET, 26TH FLOOR<br>SAN FRANCISCO, CA 94105 | **SECURED CREDITOR / POC ADDRESS**<br>KLAUSEN, PIA<br>629 KOHLER DRIVE<br>WEST BEND, WI 53090-9036 | **SECURED CREDITOR**<br>LADRECH, GENE<br>50545 VERANO DRIVE<br>LA QUINTA, CA 92253-9012 |
| **SECURED CREDITOR / POC ADDRESS**<br>LADRECH, GENE<br>C/O GREGORY A. ROUGEAU<br>BRUNETTI ROUGEAU LLP<br>235 MONTGOMERY ST., STE 830<br>SAN FRANCISCO, CA 94104 | **SECURED CREDITOR / POC ADDRESS**<br>LADRECH, RONALD<br>79800 SANDIA STREET<br>LA QUINTA, CA 92253-4584 | **SECURED CREDITOR**<br>LATEEF, KATAAB<br>8 IDLEWOOD ROAD<br>GREENBRAE, CA 94904-2753 |
| **SECURED CREDITOR / POC ADDRESS**<br>LEACHMAN FAMILY TRUST<br>121 OAK AVE<br>GREENBRAE, CA 94904-1571 | **SECURED CREDITOR / POC ADDRESS**<br>MARK GRAVITCH<br>75 CENTURY DRIVE<br>MILL VALLEY, CA 94941 | **SECURED CREDITOR**<br>MCGRATH, MICHAEL<br>4830 NEAL AVE<br>STILLWATER, MN 55082-1070 |
| **SECURED CREDITOR / POC ADDRESS**<br>MCGRATH, MICHAEL<br>C/O BARNES & THORNBURG LLP<br>2029 CENTURY PARK E #300<br>LOS ANGELES CA 90067 | **SECURED CREDITOR / POC ADDRESS**<br>MICHELLE M RUSSI GST<br>C/O BARNES & THORNBURG LLP<br>2029 CENTURY PARK E #300<br>LOS ANGELES CA 90067 | **SECURED CREDITOR**<br>PACIFIC PREMIER TRUST<br>DANA KLUSSMAN<br>450 E STRAWBERRY #56<br>MILL VALLEY, CA 94941-3227 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR / POC ADDRESS**
PACIFIC PREMIER TRUST
GEORGE CRISPO
98 HILLSIDE DRIVE
FAIRFAX, CA 94930-2040

**SECURED CREDITOR**
PACIFIC PREMIER TRUST
JANET SIMKINS
1750 AVENIDA DEL MUNDO #609
CORONADO, CA 92118-3054

**SECURED CREDITOR**
PACIFIC PREMIER TRUST
KIM MCGUINNESS
26 MARIN ST
SAN RAFAEL, CA 94901-4938

**SECURED CREDITOR / POC ADDRESS**
PACIFIC PREMIER TRUST
LEN BISS
38250 N 102ND STREET
SCOTTSDALE, AZ 85262-3055

**SECURED CREDITOR**
PACIFIC PREMIER TRUST
PAMELA ENDSLEY
112 TIBURON CT
APTOS, CA 95003-5833

**SECURED CREDITOR**
PACIFIC PREMIER TRUST
RICHARD KLUSSMAN
450 E STRAWBERRY #56
MILL VALLEY, CA 94941-3227

**SECURED CREDITOR / POC ADDRESS**
PATRICK J RUSSI GST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR**
RUSSI, JOHN
2006 RUSSI FAMILY TRUST
35 GROVE CREEK COURT
LAFAYETTE, CA 94549-2200

**SECURED CREDITOR / POC ADDRESS**
SEBASTIAN, MARC
607 FAIRWAY DRIVE
NOVATO, CA 94949-5805

**SECURED CREDITOR**
SHEILA VOLARVICH LIVING TRUST
216 JOHNGALT COURT
ROSEVILLE, CA 95678-7579

**SECURED CREDITOR / POC ADDRESS**
SHEILA VOLARVICH LIVING TRUST
C/O GREGORY A. ROUGEAU
BRUNETTI ROUGEAU LLP
235 MONTGOMERY ST., STE 830
SAN FRANCISCO, CA 94104

**SECURED CREDITOR**
SIMKINS, JANET
1750 AVENIDA DEL MUNDO #609
CORONADO, CA 92118-3054

**SECURED CREDITOR**
STANLEY, DAWN
5897 MELITA RD
SANTA ROSA, CA 95409-5643

**SECURED CREDITOR / POC ADDRESS**
STEINBERG, ERIC
39 GEARY AVE
FAIRFAX, CA 94930-1224

**SECURED CREDITOR / POC ADDRESS**
STEINBERG, PHILLIP
2190 SKY DRIVE
CLARKDALE, AZ 86324-3729

**SECURED CREDITOR / POC ADDRESS**
STENNING, BARBARA
82400 WEST MCCARROLL DRIVE
INDIO, CA 92201-0369

**SECURED CREDITOR**
STONE, ANNA
49841 CANYON VIEW
PALM DESERT, CA 92260-6775

**SECURED CREDITOR / POC ADDRESS**
STONE, ANNA
C/O RICHARD G. HESTON
19700 FAIRCHILD RD, STE 280
IRVINE, CA 92612

**SECURED CREDITOR**
STONE, MICHAEL
1499 LUCAS VALLEY ROAD
SAN RAFAEL, CA 94903-1102

**SECURED CREDITOR / POC ADDRESS**
STONE, MICHAEL
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
THE PAMELA A ENDSLEY REVOCABLE TRUST
PAMELA A ENDSLEY, TRUSTEE
112 TIBURON CT
APTOS, CA 95003

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SECURED CREDITOR**
THOMAS GST, CATHERINE
774 MAYS BLVD
#10-710
INCLINE VILLAGE, NV 89451-9669

**SECURED CREDITOR**
THOMAS, ALAN
1360 HIGH STREET
ALAMEDA, CA 94501-3160

**SECURED CREDITOR**
THOMAS, ALAN
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR**
THOMAS, CATHERINE
774 MAYS BLVD
#10-710
INCLINE VILLAGE, NV 89451-9669

**SECURED CREDITOR**
THOMAS, RYAN
R & C NGU
79945 DOUBLE EAGLE WAY
LA QUINTA, CA 92253-5061

**SECURED CREDITOR / POC ADDRESS**
TIMOTHY M RUSSI GST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
VOGL, ROBERT
98 HILLSIDE DRIVE
FAIRFAX, CA 94930-2040

**SECURED CREDITOR / POC ADDRESS**
WOODS, LAVONNE
1177 SUNSET CLIFFS BLVD
SAN DIEGO, CA 92107-4014

**SECURED CREDITOR / POC ADDRESS**
CHARLES D DIMICK REVOCABLE
TRUST DATED 2/2/01
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
DANIELLE M DIMICK
IRREVOCABLE TRUST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
DANIELLE M DIMICK REVOCABLE
TRUST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
JOHN F RUSSI SOLELY AS
TRUSTEE FOR THE 2006 RUSSI
FAMILY TRUST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC ADDRESS**
JOSEPH R RUSSI GST
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**CREDITOR / POC ADDRESS**
MARY KIMBALL MCGINNIS
C/O KIM MCGINNIS
26 MARIN ST
SAN RAFAEL CA 94901

**CREDITOR / POC ADDRESS**
FRANK P. GIORGI REVOCABLE
TRUST
C/O CHRIS D. KUHNER, ESQ.
KORNFIELD, NYBERG, BENDES,
KUHNER & LITTLE, PC
1970 BROADWAY, SUITE 600
OAKLAND, CA 94612

**CREDITOR / POC ADDRESS**
PIZZA, JACK
4 LUZANNE CIRCLE
SAN ANSELMO, CA 94960-1050

**RTD 09-02-25 UTF
SECURED CREDITOR**
~~DESERT EQUITY GROUP~~
~~TOM HILL~~
~~78291 DEACON DRIVE~~
~~SAN ANTONIO, TX 78291~~

**RTD 09-02-25 UTF
SECURED CREDITOR / POC
ADDRESS**
~~DESERT EQUITY GROUP~~
~~78291 DEACON DRIVE WEST~~
~~LA QUINTA, CA 92253~~

**RTD 09-02-25 UTF
SECURED CREDITOR**
~~DUVALL, WILLIAM~~
~~PO BOX 294~~
~~KENTFIELD, CA 94914-0294~~

**RTD 09-03-25 UTF
SECURED CREDITOR**
~~THOMPSON, STEVE~~
~~PO BOX 14568~~
~~ODESSA, TX 79768-4568~~

**RTD 09-04-25 UTF
SECURED CREDITOR / POC
ADDRESS**
~~WALSH, VICKI~~
~~1740 CROCKER LANE~~
~~LINCOLN, CA 95648-8366~~

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**RTD 09-05-25 UTF**
**SECURED CREDITOR / POC**
**ADDRESS**
~~SVOBODA, DEBORAH~~
~~157 HEADLANDS COURT~~
~~SAUSALITO, CA 94965-1091~~

**RTD 09-08-25 UTF**
**SECURED CREDITOR**
~~JOHN RUSSI GST~~
~~774 MAYS BLVD #10-740~~
~~INCLINE VILLAGE, NV 89451-9669~~

**RTD 09-08-25 UTF**
**SECURED CREDITOR**
~~RUSSI GST, MICHELLE~~
~~774 MAYS BLVD #10-710~~
~~INCLINE VILLAGE, NV 89451-9669~~

**RTD 09-08-25 UTF**
**SECURED CREDITOR**
~~RUSSI GST, PATRICK~~
~~774 MAYS BLVD #10-710~~
~~INCLINE VILLAGE, NV 89451-9669~~

**RTD 09-24-25 UTF**
**SECURED CREDITOR**
~~BAMBARELLI INVESTMENTS LLC~~
~~ATTN: OFFICER, A MANAGING OR~~
~~GENERAL AGENT, OR TO ANY OTHER~~
~~AGENT AUTHORIZED BY~~
~~APPOINTMENT OR LAW TO RECEIVE~~
~~SERVICE OF PROCESS~~
~~PO BOX 1365~~
~~CRYSTAL BAY, NV 89402-1365~~

**RTD 10-17-25 UTF**
**SECURED CREDITOR**
~~VOLARVICH, BRENDT~~
~~216 JOHNGALT COURT~~
~~ROSEVILLE, CA 95678-7579~~

**RTD 10-22-25 UTF**
**SECURED CREDITOR**
~~RUSSI GST, TIMOTHY~~
~~774 MAYS BLVD #10-710~~
~~INCLINE VILLAGE, NV 89451-9669~~

**RTD 7/16/25 UTF**
**SECURED CREDITOR**
~~PACIFIC PREMIER TRUST~~
~~JOHN MENGARELLI~~
~~PO BOX 1365~~
~~CRYSTAL BAY, NV 89402-1365~~

**RTD 7/17/25 UTF**
**20 LARGEST UNSECURED**
**CREDITOR / POC ADDRESS**
~~TRACY, ADAM~~
~~35 TAMALPIAS AVE~~
~~APT 2~~
~~ODESSA, TX 79768~~

**RTD 7/25/25 UTF**
**SECURED CREDITOR**
~~GRAVITCH, MARK~~
~~213 RIDGEWOOD~~
~~SAN RAFAEL, CA 94901-1138~~

**RTD 7/29/25 UTF**
**SECURED CREDITOR**
~~CAVALLI, KEVIN~~
~~2129 W SAN REMO DRIVE~~
~~MERIDIAN, ID 83646-3203~~

**RTS 04-06-26 UTF**
**20 LARGEST UNSECURED**
**CREDITOR / POC ADDRESS**
~~TRACY, ADAM P~~
~~35 TAMALPIAS AVE APT 2~~
~~SAN ANSELMO CA 94960~~

**SEE NEW ADDR**
**SECURED CREDITOR**
~~TERHEYDEN, ROBERT~~
~~9 BURNING TREE DRIVE~~
~~NOVATO, CA 94949~~

**NEW ADDR PER DK 383**
**20 LARGEST UNSECURED CREDITOR**
ANDROS, BLAKE
9 S ROSCOE BLVD
PONTE VEDRA BEACH, FL 32082

**20 LARGEST UNSECURED**
**CREDITOR**
LADEGAARD, THOMAS
5927 BALFOUR COURT
STE 202
CARLSBAD, CA 92008-7377

**CREDITOR / POC ADDRESS**
MUNSON, KATHERINE
105 BALTIMORE AVE
CORTE MADERA, CA 94925-1420

**SECURED CREDITOR / POC ADDRESS**
DESERT EQUITY GROUP INC.
C/O BARNES & THORNBURG LLP
2029 CENTURY PARK E #300
LOS ANGELES CA 90067

**SECURED CREDITOR / POC**
**ADDRESS**
WALSH, VICKI
643 WAGON WHEEL LANE
LINCOLN, CA 95648

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**20 LARGEST UNSECURED
CREDITOR / POC ADDRESS**
TRACY, ADAM
35 TAMALPIAS AVE
APT 2
ODESSA, TX 79768

**SECURED CREDITOR**
BAMBARELLI INVESTMENTS LLC
C/O JOHN MENGARELLI, AGENT FOR
SERVICE OF PROCESS
480 TUSCARORA RD
CRYSTAL BAY, NV 89402

**SECURED CREDITOR**
BAMBARELLI INVESTMENTS LLC
C/O MANAGING MEMBER:
MENGARELLI INVESTMENT TRUST
801 INTERNATIONAL PKWY, STE
500
LAKE MARY, FL 32746

**SECURED CREDITOR**
THOMPSON, STEVE
55 TROON DRIVE
ODESSA, TX 79762-8401

**SECURED CREDITOR**
CAVALLI, KEVIN
305 RENAISSANCE CT
RENO, NV 89523-6870

**SECURED CREDITOR**
DUVALL, WILLIAM
300 DEER ISLAND LN
NOVATO, CA 94945-3424

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**